**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FLOSPORTS, INC.,<br><br>Defendant. | Case No. 1:25-cv-01472 RGA |

**DEFENDANT FLOSPORTS, INC.'S**
**OPENING BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6)**

Dated: January 14, 2026.

**BLANK ROME LLP**

Adam V. Orlacchio (#5520)
Anna E. Currier (#6271)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 425-6431
adam.orlacchio@blankrome.com
anna.currier@blankrome.com

*Counsel for Defendant FloSports, Inc.*

# TABLE OF CONTENTS

**Pages(s)**


TABLE OF AUTHORITIES ..... ii

I. NATURE AND STAGE OF THE PROCEEDING ..... 1

II. SUMMARY OF ARGUMENT ..... 2

III. STATEMENT OF FACTS ..... 3

- A. The Parties' Businesses ..... 3
- B. FloSports' Legal Objections to Plaintiffs' Conduct ..... 4
- C. Social Media Posts About Plaintiffs' Conduct ..... 5

IV. LEGAL STANDARD ..... 6

V. LEGAL ARGUMENT ..... 7

- A. Count I (Defamation) against FloSports Should Be Dismissed Pursuant to Rule 12(b)(6) Because it Fails to State a Claim for Which Relief May Be Granted. ..... 7
  - i. Plaintiffs Fail to State a Claim of Defamation *Per Se* or *Per Quod* Against FloSports ..... 7
  - ii. Plaintiffs Fail to Identify a Statement that is Defamatory *Per Se*. ..... 8
  - iii. Plaintiffs Fail to Allege Special Damages with Heightened Particularity ..... 12
  - iv. Plaintiffs Fail to Establish the FloSports Defendant Made an Unprivileged Publication of a Defamatory Statement to a Third Party ..... 13
- B. Plaintiffs Fail to Allege Invasion of Privacy by False Light (Count II). ..... 21
- C. Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress Against FloSports (Count III). ..... 22
- D. Plaintiffs Fail to State a Claim for Tortious Interference with Prospective Business Relationships Against FloSports (Count IV). ..... 24
- E. Tortious Interference with Contractual Relations (Count V) ..... 25
- F. Plaintiffs Fail to State a Claim Under the Deceptive Trade Practices Act Against FloSports (Count VI). ..... 26
- G. Plaintiffs Fail to State a Claim of Misrepresentation under 17 USC § 512(f) (Count VII) ..... 27
- H. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count VIII) ..... 29

VI. CONCLUSION ..... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegiance Expl., LLC v. Davis*,
No. 02-13-00349-CV, 2016 WL 1164331 (Tex. App. Mar. 24, 2016) ....26

*Am. Med. Ass'n v. 3Lions Publ'g, Inc.*,
No. 14 C 5280, 2015 WL 1399038 (N.D. Ill. Mar. 25, 2015) ....27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....6

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
493 F.3d 841 (7th Cir. 2007) ....29

*Atturo Tire Corp. v. Toyo Tire Corp.*,
No. 14-CV-0206, 2022 WL 1470362 (N.D. Ill. May 10, 2022) ....20

*Baylor Scott & White v. Project Rose MSO, LLC*,
633 S.W.3d 263 (Tex. App. 2021) ....30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....6, 7

*Benton v. Little League Baseball, Inc.*,
181 N.E.3d 902 (Ill. App. Ct. 2020) ....22

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ....7

*Bookout v. Shelley*,
No. 02-22-00055-CV, 2022 WL 17173526 (Tex. App. Nov. 23, 2022) ....8

*Brinley Holdings Inc. v. RSH Aviation, Inc.*,
580 F. Supp. 3d 520 (N.D. Ill. 2022) ....24, 25

*Brown v. Montgomery*,
No. 20 CV 04893, 2024 WL 1243669 (N.D. Ill. Mar. 22, 2024) ....17

*Bryant v. Lucent Techs., Inc.*,
175 S.W.3d 845 (Tex. App. 2005) ....19

*Cantu v. Falcon Int'l Bank*,
No. 04-17-00467-CV, 2018 WL 1831651 (Tex. App. Apr. 18, 2018) ....24

*Cisco Systems, Inc., et al., v. Mushkin, Inc. et al.*,
2021 WL 3550515 (N.D. Tex. Aug. 11, 2021) ....................23

*Coghlan v. Beck*,
2013 IL App (1st) 120891 ....................13, 16, 18, 19

*Cook v. Winfrey*,
141 F.3d 322 (7th Cir. 1998) ....................23

*Cunningham v. Waymire*,
612 S.W.3d 47 (Tex. App. 2019) ....................23

*Dallas Morning News, Inc. v. Tatum*,
554 S.W.3d 614 (Tex. 2018) ....................7, 8, 10

*Darrigan v. Am. Prospect, Inc.*,
No. 02-24-00061-CV, 2025 WL 2423579 (Tex. App. Aug. 21, 2025) ....................11

*Doggett v. Travis L. Firm*,
P.C., 555 S.W.3d 127 (Tex. App. 2018) ....................21

*Dowd & Dowd, Ltd. v. Gleason*,
181 Ill. 2d 460 (1998) ....................24, 25

*Dubinsky v. United Airlines*,
708 N.E.2d 441 (1999) ....................8, 9, 10

*Fields v. Jackson*,
2017 WL 4150682 (N.D. Ill. 2017) (Lee, J.) ....................23

*Flores v. Aon Corp.*,
2023 WL 6333957 (Ill. Ct. App. 2023) ....................29

*Foster v. Principal Life Ins. Co.*,
806 F.3d 967 (7th Cir. 2015) ....................24, 25

*Goral v. Kulys*,
2014 IL App (1st) 133236 ....................7, 9, 10, 11

*Green v. Rogers*,
234 Ill.2d 478 (2009) ....................7, 10, 13, 17

*Hancock v. Variyam*,
400 S.W.3d 59 (Tex. 2013) ....................12

*Harrison v. Chicago Sun–Times, Inc.*,
341 Ill.App.3d 555 (2003) ....................18

*Hays v. Frost & Sullivan, Inc.*,
No. SA-23-CV-01490-FB, 2024 WL 4052741 (W.D. Tex. Aug. 16, 2024) ............................22

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
227 Ill.2d 381 (2008) ............................................................................................16

*Johnson v. Knowledge Learning Corp.*,
No. 3:08-CV-0468-P, 2008 WL 11348020 (N.D. Tex. June 24, 2008)..................................23

*Kapotas v. Better Gov't Ass'n*,
30 N.E.3d 572 (Ill. App. Ct. 2015) ..........................................................................8

*Kirchner v. Greene*,
294 Ill.App.3d 672 (1998) ....................................................................................15

*Kurczaba v. Pollock*,
742 N.E.2d 425 (Ill. App. Ct. 2000) ........................................................................20

*Kuwik v. Starmark Star Marketing & Administration, Inc.*,
156 Ill.2d 16 (1993) ........................................................................................20, 21

*Landers v. Landers*,
No. 02-19-00303-CV, 2021 WL 1570011 (Tex. App. Apr. 22, 2021)....................................30

*Lemons v. Chronicle Publishing Co.*,
253 Ill.App.3d 888 (1993) ....................................................................................18

*Levinsky's, Inc. v. Wal–Mart Stores, Inc.*,
127 F.3d 122 (1st Cir.1997).....................................................................................16

*Lewis v. Sch. Dist. #70*,
523 F.3d 730 (7th Cir. 2008) ..................................................................................22

*Lilith Fund for Reprod. Equity v. Dickson*,
662 S.W.3d 355 (Tex. 2023).....................................................................................16

*Love v. Simmons*,
2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ...................................................... *passim*

*Lyssenko v. Int'l Titanium Powder, LLC*,
No. 07 C 6678, 2008 WL 8625903 (N.D.Ill. May 6, 2008) ...............................................27

*Moore v. People for the Ethical Treatment of Animals, Inc.*,
402 Ill.App.3d 62 (2010) ......................................................................................18

*Moriarty v. Greene*,
315 Ill.App.3d 225 (2000) ....................................................................................15

*Muzikowski v. Paramount Pictures Corp.*,
322 F.3d 918 (7th Cir. 2003) ....................12

*Newspapers, Inc. v. Matthews*,
161 Tex. 284, 339 S.W.2d 890 (1960)....................9

*Osumdairo v. Glandian*,
591 F. Supp. 3d 353 (N.D. Ill. 2022) ....................11

*Parker v. Spotify USA, Inc.*,
569 F. Supp. 3d 519 (W.D. Tex. 2021)....................18

*Pepi Corp. v. Galliford*,
254 S.W.3d 457 (Tex. App. 2007)....................30

*Popko v. Continental Casualty Co.*,
355 Ill.App.3d 257 (2005) ....................20

*Reflection Window & Wall, LLC v. Talon Wall Holdings, LLC*,
2024 WL 1376135 (N.D. Ill. Mar. 31, 2024)....................8, 12

*Ridge Petroleum, Inc. v. Energy Ops, LLC*,
611 S.W.3d 36 (Tex. App. 2020)....................7

*Robertson v. Sw. Bell Yellow Pages, Inc.*,
190 S.W.3d 899 (Tex. App. 2006)....................15, 16

*Rossi v. Motion Picture Ass'n of America Inc.*,
391 F.3d 1000 – 05 (9th Cir. 2004) ....................29

*Scripps NP Operating, LLC v. Carter*,
573 S.W.3d 781 (Tex. 2019)....................18

*Seith v. Chicago Sun-Times, Inc.*,
371 Ill. App. 3d 124 (2007) ....................13, 21

*Soderlund Bros., Inc. v. Carrier Corp.*,
278 Ill. App. 3d 606 (1995) ....................24, 26

*Solaia Technology, LLC v. Specialty Publishing Co.*,
221 Ill.2d 558 (2006) ....................19

*Sunny Factory, LLC v. Chen*,
No. 21 C 3648, 2022 WL 742429 (N.D. Ill. Mar. 11, 2022) ....................28

*Swearnigen-El v. Cook Cnty. Sheriff's Dep't*,
602 F.3d 852 (7th Cir. 2010) ....................22

*Universal Gaming Grp. v. Taft Stettinius & Hollister LLP*,
2017 IL App (1st) 150878-U ........ *passim*

*Williams v. Cordillera Commc'ns, Inc.*,
26 F. Supp. 3d 624 (S.D. Tex. 2014) ........ 18

**Statutes**

Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2532 *et seq.* ........ 2, 26, 27

Digital Millenium Copyright Act, 17 USC § 512(f) ........ *passim*

Tex. Bus. & Com. Code Ann. § 17.46(8) ........ 27

**Other Authorities**

Fed. R. Civ. P. 9(g) ........ 12

Fed. R. Civ. P. 12(b)(6) ........ 2, 6, 7

Archived Midwest Wrestle – YouTube,
https://web.archive.org/web/20230330063230/https:/www.youtube.com/@MidwestWrestle/featured (last visited Jan. 14, 2026) ........ 1

Midwest Wrestle – YouTube,
https://www.youtube.com/@MidwestWrestle/featured (last visited Jan. 14, 2026) ........ 1

Restatement (Second) of Torts §573 (1977) ........ 12

## I. NATURE AND STAGE OF THE PROCEEDING

This action concerns social media commentary about the YouTube channel Midwest Wrestle, operated by Plaintiffs Nima Gharavi ("Gharavi") and Right Call Officials, Inc. (collectively, "Plaintiffs"). Midwest Wrestle streams videos of youth wrestling matches. Thumbnails of the videos on Midwest Wrestle show wrestlers in suggestive positions often with their genitals visible underneath their wrestling uniforms.[1] Like many other individuals on the Internet, Christian Pyles ("Pyles") and Jon Kozak ("Kozak"), who are employees of FloSports, Inc. ("FloSports," hereinafter, "FloSports" or "Defendant"), expressed concern on social media about youth wrestlers being featured in online videos without revealing Plaintiffs' names or any specific facts, or accusing Gharavi of committing a crime. Rather than heed these concerns, Plaintiffs filed a lawsuit against multiple defendants in the District Court for the Northern District of Illinois, Eastern Division.[2] In that action, Plaintiffs' asserted claims against three entity defendants, including FloSports, and against individual defendants Christian Pyles, Jon Kozak, Jessica Pressley, Willie Saylor, Allyson Schwab, Parick Mineo, Stephen Kolankowski, Joseph Corsini, and unidentified "John Does" 1–25.[3] The Northern District of Illinois Court ultimately dismissed FloSports, along with individual defendants Pyles and Kozak, due to lack of personal jurisdiction.[4] Plaintiffs have now re-filed their allegations against FloSports in Delaware District Court, alleging FloSports defamed them (Count I), invaded their privacy by false light (Count II), intentionally inflicted emotional distress (Count III), and tortiously interfered with their

---

[1] An archive of the Midwest Wrestle YouTube channel is available at https://web.archive.org/web/20230330063230/https://www.youtube.com/@MidwestWrestle/featured. Since filing this lawsuit, Plaintiffs' live page (https://www.youtube.com/@MidwestWrestle/featured) appears to have been edited.

[2] C.A. No. 1:24-cv-1969.

[3] *Id.* at D.I. 67 (Second Amended Complaint).

[4] *Id.* at D.I. 80.

prospective business relationships (Count IV) and contractual relations (Count V). They further accuse FloSports of violating the Uniform Deceptive Trade Practices Act (Count VI), the Digital Millennium Copyright Act (Count VII), and unjust enrichment (Count VIII).

## II. SUMMARY OF ARGUMENT

Plaintiffs' defamation claims should be dismissed pursuant to Rule 12(b)(6) because they fail to state a claim upon which relief may be granted. FloSports never identified Plaintiffs in any social media posts, but rather, wrote about two individuals: an anonymous official and an unnamed individual from Iowa. A review of the comments confirms that readers had no idea who the post was about, while others who were already aware of the situation identified Gharavi as the subject of the post and formed their own opinions about him after visiting his YouTube page. Further, FloSports did not allege Gharavi engaged in any specific crime and expressed only general opinions about the business model of enabling third-party embeddings of youth wrestling videos. Any facts expressed are either not defamatory, are subject to an innocent construction or, by Plaintiffs' own admissions in their Complaint, are true. Plaintiffs' claim for false light invasion of privacy fails for the same reasons as their defamation claims. Further, Plaintiffs' allegations about FloSports' conduct come nowhere close to the level of extreme and outrageous conduct that can state a claim for intentional infliction of emotional distress; such claims rarely prevail when based on defamatory statements alone. Additionally, Plaintiffs fail to state claims for tortious interference with business or contractual relationships because they neither articulate a specific opportunity they were denied, nor state facts connecting the conduct of FloSports with the denial of any particular business opportunity. Similarly, Plaintiffs cannot maintain a claim under the Deceptive Trade Practices Act because none of FloSports' statements disparaged the quality of Plaintiffs' goods or services, and because Plaintiffs fail to allege FloSports made a false or deceptive statement of fact. Plaintiffs also fail to state a misrepresentation claim under the Digital

Millennium Copyright Act, 17 USC § 512(f) ("DMCA") because they fail to allege what the misrepresentation was, merely concluding that FloSports falsely complained to YouTube about copyright infringement. Finally, Plaintiffs' unjust enrichment claim should be dismissed because unjust enrichment is not a standalone cause of action in Illinois or Texas, and Plaintiffs fail to allege FloSports financially benefitted from allegedly making statements about Plaintiffs' character or that any benefit retained is unjust.

Plaintiffs also argue that the Court should apply Illinois substantive law to Plaintiffs' state law claims because, under Delaware's choice of law rules, "the law of the state with the most significant relationship to the occurrence and the parties governs tort claims." Compl. ¶5. FloSports does not concede that solely Illinois law applies, and maintains that Texas has a more significant relationship to the occurrence and the parties: FloSports principal place of business is located in Austin, Texas, and the alleged defamatory statements were posted on the social media platform "X" (formerly Twitter), a company with its principal place of business in Texas. However, to the extent that Illinois and Texas law are not inconsistent, FloSports will rely on authority from both jurisdictions for the purposes of this Motion, Opening Brief and Memorandum of Law. To the extent there is an inconsistency between Illinois and Texas law, FloSports reserves the right to argue that Texas law applies. For these reasons, and as explained more fully below, the claims asserted against FloSports in the Complaint should be dismissed.

## III. STATEMENT OF FACTS

### A. The Parties' Businesses

FloSports is an online platform streaming exclusive sports content, including through partnerships with national and international sports organizations. Compl. ¶2; *see also* Flosports.com (last visited April 4, 2024). Pyles is FloSports' content director. *Id*. ¶27. He published content on the social media platform X (formerly Twitter) under the handle @CPyles8.

*Id*. This account is accessed by users across the United States. *Id*. Kozak is FloSports' ranker. *Id*. ¶28. According to Plaintiffs, he has published content on the social media platform InterMatWrestle.com under the username "Jon_Kozak," which is accessed by users across the United States. *Id*.

Gharavi is a wrestling official who established the YouTube channel "Midwest Wrestle," which is now operated by his company, Right Call Officials, Inc. *Id*. ¶1. Gharavi video records wrestling matches between high school and elementary school children. *Id*. ¶¶1, 12. Although his platform is called "Midwest Wrestle," the wrestling matches he posts are from all over the United States. *Id*. ¶1. Gharavi heavily edits the videos before he posts them. *Id*. ¶14. He films the videos both while working as a wrestling official registered with high school and elementary school wrestling associations and in his private capacity. *Id*. ¶1; *see also id*. at Ex. F (explaining Gharavi attends some wrestling events in his personal capacity to record the event, not officiate it). Gharavi claims to review and edit comments on the Midwest Wrestle platform for hours each day to ensure they are safe for young viewers. *Id*. ¶17. Gharavi does not claim to edit his videos with the same concerns in mind. Thumbnails of the videos on Midwest Wrestle show wrestlers in suggestive positions often with their genitals visible underneath their wrestling uniforms.[5] Gharavi allows third-party websites to embed Midwest Wrestle's videos on their sites. *Id*. ¶21. He knows Midwest Wrestle's videos of high school and elementary school children are embedded on pornographic websites. *Id*. ¶22. Although he claims he does not consent to the embedding of his videos on pornography websites, Gharavi is aware that it is common in the wrestling industry. *Id*. ¶ 23.

**B. FloSports' Legal Objections to Plaintiffs' Conduct**

[5] *See* https://web.archive.org/web/20230330063230/https://www.youtube.com/@MidwestWrestle/featured.

FloSports holds exclusive rights to film and stream content from a variety of sporting events. *See id*. at Ex. C (Cease and Desist Letter). To enforce these rights, FloSports sent YouTube a takedown notice regarding certain videos on the Midwest Wrestle YouTube channel. *Id*. Plaintiffs counterclaimed and YouTube took no action with respect to Plaintiffs' videos. Compl. ¶29. FloSports also sent Plaintiffs a letter demanding that they cease and desist filming and posting videos that interfere with FloSports' exclusive streaming rights and that they remove all existing videos that interfere with these rights. *Id*. at Ex. C. As FloSports were monitoring Plaintiffs' YouTube page for violations of their exclusive streaming rights, they noticed that Plaintiffs had altered some of the thumbnails of videos on the page. *Id*. at Ex. D. Accordingly, counsel for FloSports sent Plaintiffs a litigation hold notice, advising them to preserve all electronically stored information relating to the videos and thumbnails. *Id*.

### C. Social Media Posts About Plaintiffs' Conduct

Numerous individuals have posted on social media about Plaintiffs' conduct, expressing concern that Plaintiffs know their videos of youth and high school wrestling matches are being embedded on pornographic websites. *See e.g., id.* at Exs. F–G (containing social media posts at-issue in this litigation as well as comments in which other individuals express concerns about Plaintiffs' videos). As the content director for FloSports, Pyles is responsible for directing FloSports' social media content and uses the X (formerly Twitter) account @CPyles8 to post content on behalf of FloSports. Compl. ¶27. Kozak, on the other hand, is a ranker at FloSports, does not have any official job duties relating to FloSports' social media content. Compl. ¶28. On December 30, 2023, Pyles posted to his account @CPyles8, responding to a post by codefendant Schwab and stating he and FloSports have attempted to take legal action regarding two unidentified individuals. Compl. at Ex. F. Comments to Pyles' post include statements like: (1) "What are they doing? A little bit lost here," and (2) "Name names." *Id*. at Ex G. The same day,

Pyles responding to his previous post @CPyles8, stated that despite presenting evidence to law enforcement and governing bodies, both individuals were still at youth, high school and college wrestling events. *Id*. Comments to this post include: (1) "what is happening exactly?" (2) "What is happening?? I am clueless"; (3) "Name names"; and (4) "Name the guy." *Id*. Pyles made a third and final post on December 30, 2023, in which he stated that he's seen parents of unknown wrestlers thank one of the individuals for getting their children thousands of views without knowing what is actually happening. *Id*. He further states one of the individuals enables the embed function so the videos can be embedded on other sites. *Id*. This post received similar comments like: (1) "Why not just put his name out there?" and (2) "If you know who he is… why don't you just… call them out for who they are?" *Id*. On January 1, 2024, Kozak used his account, Jon_Kozak, to post to a message board on InterMat.com. *Id*. at ¶44; Ex. G. In his post, Kozak also responded to the posts made by Schwab and Pyles. In his post, Kozak states that the videos are embedded on pornographic websites and that efforts have been made to bring legal action against the content creator, who Kozak also did not identify. *Id*. As shown in Exhibit F to the Complaint, both before and after Kozak's post, numerous other individuals posted to the InterMat.com message board, expressing their own opinions about the situation after having personally visited Plaintiffs' YouTube page.

## IV. LEGAL STANDARD

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the sufficiency of the complaint. To survive a motion to dismiss, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise

a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, the plaintiff must have "nudged [its] claims across the line from conceivable to plausible[.]" *Twombly,* 550 U.S. at 570. Additionally, the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Love v. Simmons*, 2024 WL 809107, at *3–4 (N.D. Ill. Feb. 27, 2024) (internal citations omitted). "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Id.* (citing *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)). This principle extends to video recordings referenced in a complaint. *Love*, 2024 WL 809107, at *4 (N.D. Ill. Feb. 27, 2024).

## V. LEGAL ARGUMENT

### A. Count I (Defamation) against FloSports Should Be Dismissed Pursuant to Rule 12(b)(6) Because it Fails to State a Claim for Which Relief May Be Granted.

#### i. Plaintiffs Fail to State a Claim of Defamation *Per Se* or *Per Quod* Against FloSports

To state a defamation claim, the plaintiff must allege with particularity: "(1) that the defendant made a false statement about the plaintiff; (2) that the defendant made an unprivileged publication of that statement to a third party; and (3) that the publication caused damages." *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 41 (citing *Green v. Rogers,* 234 Ill.2d 478, 491 (2009)). Similarly, Texas law provides that a defamation claim must allege: 1) "the publication of a false statement of fact to a third party"; 2) the factual statements must be defamatory to plaintiff; 3) if plaintiff is a public figure, defendant acted with actual malice, or negligence if plaintiff is a private individual; 4) plaintiff must prove damages when not presumed." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018); *Ridge Petroleum, Inc. v. Energy Ops, LLC*, 611 S.W.3d 36, 46, n.6 (Tex. App. 2020). "In a defamation case, the threshold question is whether the words

used are reasonably capable of a defamatory meaning" *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018) (internal quotations and citations omitted).

Both Illinois and Texas recognize defamation claims come in two varieties: *per se* and *per quod*. "The difference between defamation *per se* and defamation *per quod* is whether the listener would need an explanation to understand the harm inflicted by the statement." *Love v. Simmons*, No. 23-CV-2392, 2024 WL 809107, at *4 (N.D. Ill. Feb. 27, 2024). Statements are defamatory *per se* "when the defamatory character of the statement is apparent on its face," meaning "the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Id.*, *quoting Kapotas v. Better Gov't Ass'n,* 30 N.E.3d 572, 587 (Ill. App. Ct. 2015); *see also Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018) (same). Defamation per quod occurs if "extrinsic facts are required to explain" a statements defamatory meaning. *Love*, 2024 WL 809107, at *4; *Dallas Morning News, Inc.,* 554 S.W.3d at 626 (Tex. 2018) (same). "For defamation *per se* claims, damages are presumed, but for defamation *per quod* claims, plaintiffs must plead and prove special damages." *Reflection Window & Wall, LLC v. Talon Wall Holdings, LLC*, 2024 WL 1376135, at *3 (N.D. Ill. Mar. 31, 2024); *see also Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 626 (Tex. 2018) (same).[6]

### ii. Plaintiffs Fail to Identify a Statement that is Defamatory *Per Se*.

Statements that do not identify a specific person can never be defamatory *per se* because they require extrinsic information in order determine the identity of the subject. *See Dubinsky v. United Airlines*, 708 N.E.2d 441, 447 (1999). In *Dubinsky*, plaintiff argued a statement that did not identify him was defamatory because it was to be read in conjunction with another document,

[6] While Texas recognizes the distinction between defamation *per se* and *per quod*, Texas generally refers to defamation *per se* as "textual defamation" and defamation *per quod* as "extrinsic defamation." *Bookout v. Shelley*, No. 02-22-00055-CV, 2022 WL 17173526, at *17 (Tex. App. Nov. 23, 2022) (citing *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 626 (Tex. 2018)).

which would make his identity "clear to any reader." *Id*. The court disagreed, finding "this assertion would preclude the publication from being considered defamatory *per se,* as only statements that are defamatory *per quod* may rely on extrinsic facts." *Id*.

Similarly here, Pyles' and Kozak's social media posts do not identify either Plaintiff. Indeed, Plaintiffs cite to Exhibits F and G in attempting to allege that Pyles and Kozak published defamatory statements about Gharavi on X. *See* Compl. ¶¶43–44. But, neither Pyles' nor Kozak's social media posts actually name Gharavi as the subject of the posts–thus, because defamation requires a defamatory statement *about the Plaintiff*, and Gharavi is necessarily considered an *unnamed subject* of the social media posts, Plaintiffs' defamation claim must fail. *See Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 41 (to state a defamation claim plaintiff must allege that defamatory statement was made about the plaintiff); *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 289, 339 S.W.2d 890, 893 (1960) (holding as a matter of law plaintiff cannot recover for defamation because the alleged defamatory articles did not identify Plaintiff). To the extent Plaintiffs may argue that Pyles' or Kozak's statements are defamatory *per se* because *other* individuals identify them in online posts, this argument is identical to the one considered and rejected in *Dubinksy*.

Critically, Plaintiffs have also failed to allege that Kozak's statements can be imputed to FloSports as a Defendant. Kozak is not named individually as a Defendant, and there is nothing in the Kozak's statements, as alleged by Plaintiffs, that indicate Kozak made statements on behalf of FloSports or is in anyway connected or affiliated with FloSports. *See* Compl. ¶28 (alleging Kozak authored posts on "IntermatWrestle.com" under username "Jon_Kozak" (with no reference to FloSports)); ¶44 (alleging upon information and belief Kozak authored social media statements

"acting in his capacity as [employee] of Defendant," but citing to Compl. Exs. B & F, which do not support Kozak was acting in his capacity as an employee of FloSports).

Plaintiffs' defamation *per se* claims against FloSports also fail because the social media posts do not fit within one of the categories of statements that Illinois or Texas considers defamatory *per se*: (i) statements that impute a person has committed a crime; (ii) statements that impute a person lacks ability or integrity in the performance of his job duties; and (iii) statements that otherwise prejudice a person in his profession or business. *Green v. Rogers,* 234 Ill.2d 478, 491 (2009); *see also Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018) (statements that (i) accuse someone of a crime; (ii) accuse someone of having "a foul or loathsome disease" or "engaging in serious sexual misconduct" and (iii) statements that "reflect on a person's fitness to conduct [their] business or trade" are considered defamatory *per se*).

**1. Statement Imputing a Crime of Moral Turpitude**

"[A] statement does not constitute defamation *per se* where the statement leaves the question of whether a crime was committed to government authorities rather than claiming that a crime had in fact occurred." *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 41, *citing Dubinsky*, 303 Ill. App. 3d at 321-22. In *Dubinsky*, the defendant's statement that whether RICO or other federal law applies "will be decided in civil court or by the Justice Department." *Dubinsky*, 303 Ill. App. 3d at 326. These statements did not impute that a person has committed a crime because the Justice Department determines whether to charge a RICO claim and the courts determine whether a crime has occurred. Thus, the statement was capable of innocent construction and not defamatory *per se* because it did not directly accuse the plaintiff of criminal activity. Here, neither FloSports alleged notification of authorities regarding Gharavi's conduct, nor Pyles' statement about that notification, constitutes defamation *per se* based on words that impute a person has committed a crime. Plaintiffs allege that Pyles' post confirms FloSports published statements about Gharavi's

"immoral and dangerous" conduct to "various authorities and wrestling leadership." Compl. ¶ 43(f). But, Pyles' post nowhere claims Gharavi's conduct was illegal, nor does it anywhere suggest or imply the "authorities" were law enforcement authorities. Nor does it state what laws FloSports reported Gharavi for violating, or to which authorities FloSports made these reports. Further, any statement alleging that Gharavi intentionally allows pornographic websites to embed his videos into their own websites does not directly accuse Plaintiffs of committing a particular crime. *Id*. ¶ 43(g). Pyles' post leaves it to the authorities to make this determination. *Goral*, 2014 IL App (1st) 133236, ¶ 41 (finding statement not defamatory *per se* where it was qualified by saying "[t]he appropriate authorities will sort this out" and that defendant "await[ed] word back from county authorities" regarding the information he gave them); *see also Darrigan v. Am. Prospect, Inc*., No. 02-24-00061-CV, 2025 WL 2423579, at *10 (Tex. App. Aug. 21, 2025) (plaintiff failed to establish defamation *per se* because statement did not refer to an actual crime, nor allege/reasonably imply "the commission of a crime").

**2. Statement Maligning a Person in His Trade or Business**

Plaintiffs also cannot show that FloSports published any statements that impute a lack of integrity in the performance of one's profession or otherwise prejudiced Plaintiffs in their business. In *Osumdairo v. Glandian*, 591 F. Supp. 3d 353, 360 (N.D. Ill. 2022), the court dismissed claims of defamation *per se* and false light regarding statements accusing plaintiffs of using illegal steroids because extrinsic information about the fitness business and plaintiffs' business model was required to understand how these statements were harmful to the plaintiffs' profession. Similarly, here, Plaintiffs fail to state a defamation *per se* claim based on statements that impugn a person's integrity in the performance of their profession or otherwise prejudice their business because extrinsic evidence would be required to understand how FloSports' statements were allegedly damaging to Plaintiffs' business model. *See id.* Plaintiffs' allegation that Defendant "knew or

should have known" that Gharavi enters into business relationships with third parties based on their YouTube page says nothing of whether Defendant's statements, on their own, described Plaintiffs' business model such that an ordinary reader would understand the harm to Plaintiffs' business without Plaintiffs' additional allegations regarding their line of work. *See* Compl. ¶49. Additionally, Plaintiffs conclusory allegation that Defendant "knew or should have known of Plaintiff's reputation in the wrestling community" and his business relationships due to same does not sufficiently explain how Defendant's statements specifically reflected on Gharavi's fitness to conduct his specific business or trade. *See Hancock v. Variyam*, 400 S.W.3d 59, 67 (Tex. 2013) ("disparagement of a general character . . . is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession.") (*citing* Restatement Second of Torts).

**iii. Plaintiffs Fail to Allege Special Damages with Heightened Particularity**

Any attempt to establish defamation *per quod* must fail because Plaintiffs do not allege sufficient facts to plead special damages with the particularity required by Rule 9. Under Rule 9(g), "general statements of loss are insufficient." *Reflection Window & Wall, LLC v. Talon Wall Holdings, LLC*, 2024 WL 1376135, at *7 (N.D. Ill. Mar. 31, 2024) (dismissing defamation *per quod* claims because allegations of damage to reputation and business of at least 150 million dollars were too vague to satisfy Rule 9). A plaintiff must itemize losses to plead specific damages of actual injury. *Id.* (quoting *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003). Plaintiffs allege Gharavi has suffered reputational harm and his future prospects for recording, endorsement and sponsorship opportunities have been diminished. Compl. ¶¶60, 73. But, Plaintiffs do not identify a specific event or opportunity that was revoked or denied because of any statement made by Defendant. Nor can they, given the volume of individuals who have commented on these issues. Indeed, the comments and other posts demonstrate that individuals

visited Plaintiffs' YouTube page and formed their own opinion about his conduct and intent. Plaintiffs' vague allegations about diminishment of future business prospects is nonspecific and fails to plead special damages with particularity. Thus, for these reasons alone, Plaintiffs fail to state a claim for defamation *per se* and Count I should be dismissed with prejudice.

**iv. Plaintiffs Fail to Establish the FloSports Defendant Made an Unprivileged Publication of a Defamatory Statement to a Third Party**

Plaintiffs also fail to allege defamation *per se* and *per quod* because the alleged statements contain expressions of opinion, are capable of innocent construction, are substantially true, and are subject to absolute and qualified privileges.

**1. The Social Media Posts Are Non-Defamatory Under the Innocent Construction Rule.**

Statements falling "into one of the categories of words that are defamatory *per se* are not actionable *per se* if they can be reasonably capable of an innocent construction." *Coghlan*, 2013 IL App (1st) 120891, ¶ 41, *citing Green,* 234 Ill.2d at 499; *see also Seith v. Chicago Sun-Times, Inc.*, 371 Ill. App. 3d 124, 138 (2007) (applying innocent construction rule to dismiss defamation and false light claims regarding articles reporting on politician's ties to organized crime).

Plaintiffs' allegations in Paragraphs 43 and 44 of the Complaint misconstrue Pyles' and Kozak's social media posts when they should instead be afforded innocent construction. Plaintiffs claim that Pyles' posts identify Gharavi as an official in the wrestling industry. Compl. ¶43(a). But, Pyles never identifies Gharavi by name in his post. Pyles' first two posts discuss two unidentified individuals, one "in Iowa" and one who is an "official." *See id*. at Ex. F at pp. 4, 6. Pyles' third post refers only to "this guy" without further clarification. *Id*. at p. 10. Under the innocent construction rule, Pyles' posts are not defamatory since they could reasonably be construed to pertain to either of two unidentified individuals. Likewise, Plaintiffs inaccurately summarize Kozak's post where they claim he referenced "Gharavi's YouTube." *Id*. at ¶44(a). Kozak's post

does not identify Plaintiffs by name, nor does it refer to YouTube or include any affiliation Kozak has with FloSports. Compl. Ex. G, p. 3.

Further, Pyles' statement that "its true evil" could be construed to refer to the child pornography industry–not Plaintiffs. *Compare id.* ¶43(c) *with* Ex. F, p. 4. Similarly, Plaintiffs misconstrue Pyles' statement about people "with twisted desires," claiming it is a reference to Gharavi. *Id*. ¶43(d). This is not a reasonable interpretation. Pyles discusses other content creators who "laud this guys work" without "knowing the incredible view counts… are from people with twisted desires." *See id.* Ex. G, p. 4. The statement about people with "twisted desires" refers to the people viewing wrestling videos on pornographic websites, not Plaintiffs.

Finally, contrary to Plaintiffs' assertion, nowhere in Pyles' social media post does he accuse Plaintiffs of intentionally allowing pornographic websites to embed his videos or profiting from pornographic websites embedding his videos. *See id*. ¶¶43(g)–(h). Pyles states that "comment counts are very low relative to the views because he leaves embed (and monetization) function on so the videos can be embedded on OTHER sites." Compl. Ex. F, p. 11 (emphasis in original). This cannot reasonably be construed to accuse anyone of intentionally allowing their clips to be embedded on *pornographic* websites. Under the innocent construction rule, the post has a non-defamatory meaning of monetizing videos embedded on any third-party website. The innocent construction rule emphasizes that statements must be considered "in context." *See Universal Gaming Grp.*, 2017 IL App (1st) 150878-U, ¶ 50 (construing attorney's statements in the context of periodic, educational emails from a law firm specializing in Illinois gaming law). Here, Pyles' statements must be understood in the context of social media. While the comments on Pyles' posts cannot be attributed to him for purposes of a defamation claim, many of them demonstrate that Pyles' statements are not specific enough to be defamatory and are capable of innocent

construction. These comments include statements like: "What are they doing? A little bit lost here," "what is happening exactly?" and "What is happening?? I am clueless." *See* Compl. Ex. F. Even informed readers participating in the online sports community could not ascertain the specific meaning of Pyles' post.

Finally, Plaintiffs misconstrue Kozak's social media post. Kozak's post states "[w]e've tried to strike his channel for copyright infringement because that's what we can actually prove." Compl. Ex. F, p. 15. Plaintiffs claim in this statement, Kozak admits that FloSports knowingly issued false DMCA takedown requests against Gharavi in retaliation for Gharavi's inappropriate behavior. *Id*. ¶ 44(b). That is plainly not a reasonable interpretation of Kozak's statement. Kozak never says the takedown requests were "knowingly false"–he says the opposite by explaining "we can actually prove" the violation. The Court should reject Plaintiffs' recasting of Pyles' and Kozak's social media posts and instead afford them their non-defamatory meaning under the innocent construction rule.

**2. The Social Media Posts Contain Mere Opinions and are Therefore Not Actionable.**

The social media posts are also the type of hyperbolic speech that courts find are inactionable opinions. "Only statements capable of being proven true or false are actionable; opinions are not." *Moriarty v. Greene,* 315 Ill.App.3d 225, 233 (2000) (citing *Kirchner v. Greene,* 294 Ill.App.3d 672, 680–81 (1998)); *see also Robertson v. Sw. Bell Yellow Pages, Inc*., 190 S.W.3d 899, 903 (Tex. App. 2006) (holding allegation of defamation must establish that defendant "published a false, defamatory statement of fact, rather than an opinion . . . whether a publication is an actionable statement of fact or a protected expression of opinion depends on a reasonable person's perception of the entirety of a statement . . . [w]hether a statement crosses the line between a protected expression of opinion and an actionable implied false statement of objective fact is a

question of law."). The First Amendment bars defamation actions "based on loose, figurative language that no reasonable person would believe presented facts." *Coghlan*, 2013 IL App (1st) 120891, ¶ 40, *citing Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,* 227 Ill.2d 381, 397–98 (2008) (defendant's characterization of parties associated with plaintiff "as the biggest crooks on the planet" not actionable because, viewed in context, it was exaggerated, figurative and hyperbolic speech protected by the first amendment); *Levinsky's, Inc. v. Wal–Mart Stores, Inc.,* 127 F.3d 122, 129 (1st Cir.1997) (defendant's reference to competitor as "trashy" not actionable); *see also Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 368 (Tex. 2023) (finding statements were protected opinion statements where declarant conveyed "his moral judgment" of plaintiffs' actions and could not reasonably mislead a reasonable person into thinking they were true–statements did not refer to any law or statute or that plaintiffs had been arrested or otherwise convicted of crimes).

A statement is protected from defamation under the First Amendment where an ordinary reader would not interpret it as stating an actual fact. *Levinsky's, Inc. v. Wal–Mart Stores, Inc.,* 127 F.3d 122, 129 (1st Cir.1997) (citing *Imperial Apparel, Ltd.,* 227 Ill.2d at 398); *see also Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 368 (Tex. 2023). The following criteria are considered in applying this test: "(1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc*., 227 Ill. 2d 381, 882 N.E.2d 1011 (2008); *see also Robertson v. Sw. Bell Yellow Pages, Inc*., 190 S.W.3d 899, 903 (Tex. App. 2006) (holding statement implied that individual was not competent was not a statement of fact but of opinion, or a general criticism that was not objectively verifiable and thus not actionable).

Plaintiffs allege Pyles' social media post is defamatory where he claims that FloSports has done "everything in its power" to eliminate Gharavi from the industry, characterizes Gharavi as "true evil," and calls him a "parasite." Compl. ¶43(b),(c),(e). These statements are the exact type of figurative speech that the First Amendment protects. Whether Pyles in fact did "everything in his power" to eliminate Gharavi from the industry is loose, figurative language that is not capable of being proven as fact. Same with calling Gharavi a parasite. It is reasonably interpretated as a figure of speech not a statement of fact. Likewise, whether Gharavi is "true evil" is not verifiable. *See also Universal Gaming Grp. v. Taft Stettinius & Hollister LLP*, 2017 IL App (1st) 150878-U, ¶47 (statement that plaintiff had "found religion" was loose, figurative language without any precise meaning or definition). Similarly, a statement that Gharavi "poses a danger to the community" is vague and not verifiable. Compl. ¶43(e); *see also Universal Gaming Grp.,* 2017 IL App (1st) 150878-U, ¶ 47 (finding attorney's statements that "scores of" business operators had "struggled with" the plaintiff's sales representatives in the past was ambiguous, imprecise, speculative, "broad and susceptible to many possible interpretations."). The social media context of these statements likewise confirms they are expressions of personal opinions, not statements of verifiable factual content.

Finally, Plaintiffs' claim "upon information and belief" that FloSports and Pyles published statements about Gharavi's "immoral and dangerous character" to the wrestling community (Compl. ¶¶39–40) is too unspecific to satisfy the "precision and particularity" required of defamation claims and contains mere opinions that cannot be proven factually true or false. *Green,* 234 Ill.2d at 491; *see also Brown v. Montgomery*, No. 20 CV 04893, 2024 WL 1243669, at *12 (N.D. Ill. Mar. 22, 2024) (dismissing defamation claims with prejudice where the plaintiff alleged on information and belief that various unspecified statements were made to certain individuals).

**3. FloSports' Statements Are Substantially True.**

Substantial truth is a defense to defamation in both Illinois and Texas. *Coghlan*, 2013 IL App (1st) 120891, ¶42 *citing Harrison v. Chicago Sun–Times, Inc.,* 341 Ill.App.3d 555, 563 (2003); *Williams v. Cordillera Commc'ns, Inc*., 26 F. Supp. 3d 624, 630 (S.D. Tex. 2014) ("Truth or substantial truth is a complete defense to a defamation claim."). Ultimately, a defamation claim cannot survive where "the 'gist' or 'sting' of the allegedly defamatory material is true." *Coghlan*, 2013 IL App (1st) 120891, ¶ 42 (quoting *Lemons v. Chronicle Publishing Co.,* 253 Ill.App.3d 888, 890 (1993)). While "substantial truth" can be a question for the jury, it is a question of law "where no reasonable jury could find that substantial truth had not been established." *Id*., *quoting Moore v. People for the Ethical Treatment of Animals, Inc.,* 402 Ill.App.3d 62, 71 (2010); *see also Universal Gaming*, 2017 IL App (1st) 150878-U, ¶ 39 (same). A statement has substantial truth even if it is not "technically accurate in every detail." *Coghlan*, 2013 IL App (1st) 120891, ¶ 42; *see also Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 529 (W.D. Tex. 2021) ("[t]he substantial truth doctrine precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details . . . minor inaccuracies do not amount to falsity so long as 'the substance, the gist, [and] the sting of the claim is justified.") (internal quotations and citations omitted). The court reviews "the entire context of the statement which may disclose that it is merely an opinion masquerading as fact." *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 795 (Tex. 2019)

Plaintiffs accuse Defendant of making statements that Plaintiffs admit in the Complaint are substantially true. Plaintiffs admit they are aware that third-party websites–including pornographic websites–re-post their videos. *See* Compl. ¶¶21–21 (describing Gharavi's knowledge that third-party websites repost his videos, including third-party websites that also contain pornographic

materials and other immoral and offensive content).[7] Thus, Kozak's statement that "[h]is videos (of minors) are embedded on porn sites" is substantially true. *Id.* at Ex. F, p.13,15. Plaintiffs' admissions also demonstrate the truth of the statement that Gharavi "leaves embed (and monetization function) on so the videos can be embedded on OTHER sites." *Id.* at Ex. F, p.10. Likewise, Kozak's statement that FloSports submitted takedown requests against Gharavi is substantially true. *Compare id.* ¶ 44(b) *with* Ex. C.

Accordingly, Plaintiffs fail to state a claim against FloSports for defamation because, *based solely on the facts plead in the Complaint*, each and every statement that could be verified by fact is substantially true.

**4. FloSports' Statements Are Privileged.**

"Finally, a defamatory statement is not actionable where it is subject to a privilege." *Coghlan*, 2013 IL App (1st) 120891, ¶ 43, citing *Solaia Technology, LLC v. Specialty Publishing Co.,* 221 Ill.2d 558, 585 (2006). A privilege may be "absolute" or "qualified." "To establish the affirmative defense of qualified privilege, a defendant must show that the alleged defamatory statement: (1) was made without malice; (2) concerned a subject matter of sufficient interest to the author or was in reference to a duty owed by the author; and (3) was communicated to another party with a corresponding interest or duty." *Bryant v. Lucent Techs., Inc.*, 175 S.W.3d 845, 851 (Tex. App. 2005).

"In Illinois an attorney or private party to litigation is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in

[7] In Plaintiffs' Second Amended Complaint filed in the District Court for the Northern District of Illinois, Eastern Division, Plaintiffs admitted that "**Mr. Gharavi has identified a number of websites <u>that have embedded the Midwest Wrestle YouTube videos</u> or otherwise re-posted his videos (the "Third-Party Websites")**. C.A. No. 1:24-cv-1969, D.I. 69, ¶27. (emphasis added).

which he participates as counsel, if it has some relation to the proceeding." *Atturo Tire Corp. v. Toyo Tire Corp.*, No. 14-CV-0206, 2022 WL 1470362, at *3 (N.D. Ill. May 10, 2022) (applying absolute litigation privileged to defamatory statements in settlement agreement). "[T]he pertinency requirement is not strictly applied." *Id.*, *quoting Bedin,* 2021 IL App (1st) 190723, at ¶ 40. The communication need only have "some relation" to a "proposed or pending proceeding." *Id.* (*quoting Kurczaba v. Pollock*, 742 N.E.2d 425, 438 (Ill. App. Ct. 2000)).

Here, FloSports' takedown notices are protected from defamation claims due to the absolute litigation privilege as they relate to a potential proceeding between FloSports and Plaintiffs. Compl. ¶29. So are the communications between Gharavi's and FloSports' counsel, discussing FloSports' claim in its takedown request that Gharavi's recordings violate its exclusive rights to stream certain wrestling matches. *Id.* ¶¶33-35; *see also id.* at Ex. C–E. And, this correspondence was not published to any third party, so it cannot form the basis for a defamation claim. Plaintiffs' decision to publish it as part of this lawsuit (electing to file publicly and not under seal) does not change this result. Plaintiffs fail to state a claim for defamation based on the takedown notices or correspondence exchanged among the parties.

The social media posts are subject to additional qualified privileges. To determine whether a qualified privilege exists, a court "looks only to the occasion itself for the communication and determines as a matter of law and general policy whether the occasion created some recognized duty or interest to make the communication so as to make it privileged." *Kuwik v. Starmark Star Marketing & Administration, Inc.,* 156 Ill.2d 16, 27 (1993). "This privilege is based on the policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information. *Id.* at 24 (citing S. Harper, F. James & O. Gray, The Law of Torts § 5.25, at 213 (2d ed. 1986)); *Popko v. Continental Casualty Co.,* 355 Ill.App.3d

257, 264 (2005) (recognizing that companies have a qualified privilege to investigate certain conduct by its employees). Here, the Court should find a qualified privilege exists, recognizing the importance of reporting exploitation within the wrestling community and online communities self-regulating by identifying inappropriate conduct, including alerting parents that videos of their minor children are being exploited. Defendants with qualified immunity are immune from defamation claims unless the plaintiff proves the defendant "either intentionally published the material while knowing the matter was false, or displayed a 'reckless disregard' as to the matter's falseness." *Kuwik,* 156 Ill.2d at 24. Reckless disregard means publishing a statement with "a high degree of awareness of probable falsity or entertaining serious doubts as to its truth." *Id.* at 24–25. Here, to the extent any of FloSports' statements contain facts, those facts are substantially true and admitted in the Complaint. Compl. ¶¶ 21–26.

Accordingly, Plaintiffs have failed to state a claim for defamation against Defendant, and Count I should therefore be dismissed with prejudice.

**B. Plaintiffs Fail to Allege Invasion of Privacy by False Light (Count II).**

To sufficiently allege invasion of privacy, "a plaintiff must plead: (1) he was placed in a false light before the public by the defendant; (2) the false light would be offensive to a reasonable person; and (3) the defendant acted with actual malice." *Seith v. Chicago Sun-Times, Inc*., 371 Ill. App. 3d 124, 139, 861 N.E.2d 1117, 1130 (2007). Because a false light claim requires the plaintiff to show the defendant made a *false* statement, it cannot survive when based on the same facts as a failed defamation *per se* claim. *Love v. Simmons*, No. 23-CV-2392, 2024 WL 809107, at *6 (N.D. Ill. Feb. 27, 2024). In Texas, invasion of privacy is an intentional tort that involves either: "(1) intrusion upon seclusion or solitude or into one's private affairs; (2) public disclosure of embarrassing private facts; and (3) wrongful appropriation of one's name or likeness." *Doggett v. Travis L. Firm*, P.C., 555 S.W.3d 127, 130 (Tex. App. 2018). Also, "Texas courts have held that

intrusion upon private affairs typically requires either a trespass or an attempt to discover or perceive private information." *Hays v. Frost & Sullivan, Inc.*, No. SA-23-CV-01490-FB, 2024 WL 4052741, at *11 (W.D. Tex. Aug. 16, 2024). Plaintiff's claim for invasion of privacy fails for the same reason that Plaintiff's defamation claim fails: it is not based on any statements "concerning" either Plaintiff, because the statements do not actually identify the Plaintiffs. Beyond failing this basic requirement, Plaintiffs' false light claim also fails because the FloSports' statements can be innocently construed and are based on vague opinions, not facts (embarrassing or otherwise) that cannot be proven true or false, and to the extent they state facts, they are substantially true. *See* Section (V)(A)(vi), *supra*. Indeed, Plaintiffs admit that by enabling embeddings of their videos, there is a risk the videos will be embedded on pornographic websites. Compl. ¶¶21–23. Accordingly, the statements cannot at face value refer to any private information, and the information references *do not even refer specifically to Plaintiffs*. Thus, Plaintiffs fail to state a claim for invasion of privacy by false light and Count II should be dismissed.

### C. Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress Against FloSports (Count III).

To prove an intentional infliction of emotional distress claim under Illinois law, a plaintiff must show that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Love*, 2024 WL 809107, at *12 (quoting *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010)). A plaintiff must meet the high standard of pleading conduct that "extend[s] beyond the bounds of human decency" such that it is "considered intolerable in a civilized community." *Id*. (*quoting Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008)); *see also Benton v. Little League Baseball, Inc.*, 181 N.E.3d 902, 926 (Ill. App. Ct. 2020). Similarly, in Texas, "a plaintiff must establish that: (1) the defendant

acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Cunningham v. Waymire*, 612 S.W.3d 47, 65 (Tex. App. 2019). Where an IIED claim is inserted as a "catchall" tort, based on the same allegations or conduct as a defamation claim (that is deficient), the IIED claim should be dismissed. *See Cisco Systems, Inc., et al., v. Mushkin, Inc. et al.*, 2021 WL 3550515, at *12 (N.D. Tex. Aug. 11, 2021) ("If Plaintiff cannot meet all of the elements of defamation, then her claim for intentional infliction of emotional distress fails, as defamation is the basis for her emotional distress.") (citing J*ohnson v. Knowledge Learning Corp*., No. 3:08-CV-0468-P, 2008 WL 11348020, at *3 (N.D. Tex. June 24, 2008)).

Finding a defamatory statement is extreme and outrageous is a "high hurdle." *Fields v. Jackson*, 2017 WL 4150682, at *5 (N.D. Ill. 2017) (Lee, J.) ("As the Seventh Circuit has recognized, Illinois courts have held that a plaintiff cannot prove a claim for intentional infliction of emotional distress based upon a defendant's defamatory statements, because such statements generally do not clear the high hurdle for extreme and outrageous conduct."); *see also Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998) (collecting cases). Here, Plaintiffs point to nothing beyond their failed defamation claims to demonstrate intentional infliction of emotional distress. Moreover, as is readily apparent from the social media posts attached to the Complaint, individuals on the Internet visited Plaintiffs' YouTube page and formed their own opinions. Any harm resulting from such statements was not reasonably foreseeable to or caused by FloSports. Similarly, any emotional distress Gharavi may have suffered from the alleged home invasion was not reasonably foreseeable to or caused by any statement of FloSports–Gharavi was not identified in either Pyles nor Kozak's posts, nor did they post his home address information. Accordingly, Plaintiffs fail to state a claim for intentional infliction of emotional distress and Count III should be dismissed.

**D. Plaintiffs Fail to State a Claim for Tortious Interference with Prospective Business Relationships Against FloSports (Count IV).**

"A claim of tortious interference with prospective economic advantage requires a plaintiff to prove (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022) (quoting *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015)).[8] A "reasonable expectancy" of a business opportunity is more than mere "hope or opportunity of a future business relationship." *Id*. The claim also requires "a showing of impropriety." *Id*. (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 485 (1998) ("[T]o prevail on the claim, a plaintiff must show not merely that the defendant has succeeded in ending the relationship or interfering with the expectancy, but 'purposeful interference' – that the defendant has committed some impropriety in doing so."). Examples include "fraud, deceit, intimidation, or deliberate disparagement." *Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606 (1995).

Plaintiffs allege the Defendant interfered with Gharavi's reasonable expectation of working as a wresting official at "events across the United States." Compl. ¶¶86–88. Plaintiffs do not identify any particular event in which Gharavi had a reasonable expectation of officiating but was denied because of Defendant. Plaintiffs merely allege "upon information and belief" that

[8] Texas' elements for a tortious interference with prospective business relationships claim are substantially similar: "To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Cantu v. Falcon Int'l Bank*, No. 04-17-00467-CV, 2018 WL 1831651, at *3 (Tex. App. Apr. 18, 2018).

Defendant, and Pyles and Kozak as representatives of Defendant, published statements about Gharavi's character to "members of the wrestling community" and "forwarded" false information about Gharavi's character to other wrestling coaches. *Id*. ¶¶39–40. Plaintiffs do not allege what these statements were, to whom they were made or whether or how they interfered with Gharavi obtaining future opportunities to officiate wrestling matches. To the extent Plaintiffs claim Pyles' or Kozak's social media posts caused wrestling organizations to cancel their contracts with Plaintiffs, Plaintiffs fail to allege Pyles or Kozak had knowledge of any of Plaintiffs' business relationships with particular wrestling organizations or intentionally interfered with them solely by posting statements on social media. Accordingly, Plaintiffs fail to state a claim for tortious interference and Count IV should be dismissed.

**E. Tortious Interference with Contractual Relations (Count V)**

"A claim of tortious interference with prospective economic advantage requires a plaintiff to prove (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022) (quoting *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015)). A "reasonable expectancy" of a business opportunity is more than mere "hope or opportunity of a future business relationship." *Id*. The claim also requires "a showing of impropriety." *Id*., citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 485 (1998) ("[T]o prevail on the claim, a plaintiff must show not merely that the defendant has succeeded in ending the relationship or interfering with the expectancy, but 'purposeful interference' – that the defendant

has committed some impropriety in doing so.”). Examples include “fraud, deceit, intimidation, or deliberate disparagement.” *Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606 (1995).[9]

Plaintiffs allege Defendant interfered with Gharavi’s reasonable expectation of working as a wresting official at “events across the United States.” Compl. ¶86. Plaintiffs do not identify any particular event in which Gharavi had a reasonable expectation of officiating but was denied because of Defendant. Plaintiffs merely allege “upon information and belief” that Defendant and its representatives published statements about Gharavi’s character to “members of the wrestling community” and “forwarded” false information about Gharavi’s character to other wrestling coaches. *Id*. ¶¶39–40. Plaintiffs do not allege what these statements were, to whom they were made or whether or how they interfered with Gharavi obtaining future opportunities to officiate wrestling matches. To the extent Plaintiffs claim Pyles’ or Kozak’s social media posts caused wrestling organizations to cancel their contracts with Plaintiffs, Plaintiffs fail to allege Pyles or Kozak had knowledge of any of Plaintiffs’ business relationships with particular wrestling organizations or intentionally interfered with them solely by posting statements on social media. Accordingly, Plaintiffs fail to state a claim for tortious interference with contractual relations and Count V should be dismissed.

### F. Plaintiffs Fail to State a Claim Under the Deceptive Trade Practices Act Against FloSports (Count VI).

---

[9] Texas’s standard for tortious interference with a contract is even higher – a plaintiff must show: “(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiffs injury, and (4) caused actual damages or loss.” *Allegiance Expl., LLC v. Davis*, No. 02-13-00349-CV, 2016 WL 1164331, at *15 (Tex. App. Mar. 24, 2016). Plaintiff’s certainly do not meet Texas’ standard for this claim because, as argued in Section E, Plaintiffs do not allege that any specific, existing contracts even existing which Defendant “willfully” interfered with, nor do Plaintiffs make any showing regarding damages.

Plaintiffs also cannot maintain a claim for violation of the DTPA. Although Plaintiffs do not specify which section of the DTPA they sue under, their allegations appear to allege disparagement to the quality of their goods or services pursuant to 815 ILCS 510/2(a)(8) and/or Tex. Bus. & Com. Code Ann. § 17.46(8). Compl. ¶ 103. "The UDTPA does not apply to statements that impugn a business's integrity, but do not implicate the quality of the business's goods or services." *Am. Med. Ass'n v. 3Lions Publ'g, Inc.*, No. 14 C 5280, 2015 WL 1399038, at *5 (N.D. Ill. Mar. 25, 2015), *citing Lyssenko v. Int'l Titanium Powder, LLC,* No. 07 C 6678, 2008 WL 8625903 at *6, (N.D.Ill. May 6, 2008) ("While statements that impugn an individual's character or integrity in his or her profession may give rise to liability for defamation, statements that criticize 'the quality of one's goods or services' may properly be asserted under the UDTPA.").

Here, Plaintiffs claim that FloSports made deceptive representations regarding Plaintiffs' "character" and "immoral characteristics." Compl. ¶¶102–103. Such representations do not relate to the quality of Plaintiffs' goods or services, but rather, relate solely to Plaintiffs' character or integrity, which may not form the basis of the DTPA claim. *Lyssenko*, 2008 WL 8625903 at *6. Nor do Plaintiffs' allegation that FloSports represented "Plaintiffs' [*sic*] uses their goods and services in immoral and offensive ways." *Id*. ¶113. The ways in which Plaintiffs use their own "goods and services" bears no relation to the *quality* of Plaintiffs' goods and services. Plaintiffs have not identified a single false statement about the quality of Plaintiffs' goods or services. *See also Universal Gaming Grp.*, 2017 IL App (1st) 150878-U, ¶ 57(dismissing DTPA claim based on same statements as defamation claim, which were either substantially true or vague, unverifiable statements of opinion). Accordingly, Plaintiffs fail to state a claim under the DTPA and Count VI should be dismissed.

### G. Plaintiffs Fail to State a Claim of Misrepresentation under 17 USC § 512(f) (Count VII)

Plaintiffs argue in the spring of 2023, Connor Jaschen (a non-party), acting as a representative of FloSports, knowingly submitted false DMCA takedown notices for twenty of Gharavi's YouTube videos. Compl. ¶29. Plaintiffs further claim Gharavi successfully defended each of them. *Id*. In their Complaint, Plaintiffs do not provide any factual detail as to the material that FloSports allegedly claimed was copyrighted. While Plaintiffs attempt to obfuscate the facts in the Complaint, the Exhibits provide the factual detail the Complaint lacks. Exhibit C is a cease-and-desist demand from FloSports, stating that it holds exclusive media rights with respect to a number of events uploaded to the Midwest Wrestle YouTube channel, including certain videos that "were the subject of the takedown notices against which you subsequently counterclaimed." *Id*. at Ex. C. The letter continues with FloSports' further explanation of its exclusive right to record certain events. *Id*. This exhibit confirms that the subject matter of FloSports' takedown notices was not copyright – but rather, a violation of its contractual agreements with sports event operators.

17 U.S.C. § 512 provides for limitations on liability relating to material online. Specifically, §512(f) establishes liability for "any person who knowingly materially misrepresents under this section: (1) that material or activity is infringing, or; 2) that material or activity was removed or disabled by mistake or misidentification." Accordingly, to survive a motion to dismiss under 17 U.S.C. § 512(f), Plaintiffs must plead facts that FloSports "knowingly materially misrepresent[ed] ... that material or activity is infringing…." *Sunny Factory, LLC v. Chen*, No. 21 C 3648, 2022 WL 742429, at *4 (N.D. Ill. Mar. 11, 2022) (quoting 17 U.S.C. § 512(f)(1)). This "imposes a high standard for finding a violation of the DMCA by a copyright owner in infringement notifications." *Id*. "In § 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation. A copyright owner cannot be liable simply because an unknowing mistake is

made, even if the copyright owner acted unreasonably in making the mistake ... [r]ather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Id*. (*quoting Rossi v. Motion Picture Ass'n of America Inc.*, 391 F.3d 1000, 1004 – 05 (9th Cir. 2004)). Here, it is clear from Exhibit C that FloSports did not submit a takedown notice containing a knowing misrepresentation that material or activity is infringing on its copyrights. Rather, the subject of the takedown notice was a violation of FloSports' private contractual rights with event operators (i.e., tortious interference with a contractual relationship). YouTube accepts takedown notices for a variety of legal reasons, not just copyright.[10] Plaintiffs' vague assertions that a representative of FloSports "knowingly submitted false DMCA takedown notices" without describing the subject matter of the notice fails to state a claim for knowing misrepresentation under the DMCA. Accordingly, Count VII should be dismissed

### H. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count VIII)

Under Illinois law, Plaintiffs' unjust enrichment claim "does not stand on its own. Instead, unjust enrichment stands on the shoulders of some other claim." *Love v. Simmons*, 2024 WL 809107, at *16 (N.D. Ill. Feb. 27, 2024). If the other claim falls, so too does the claim for unjust enrichment. *Id.*; *see also Ass'n Benefit Servs. v. Caremark Rx, Inc.,* 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."); *Flores v. Aon Corp.*, 2023 WL 6333957, at *7 (Ill. Ct. App. 2023) ("Unjust enrichment is not an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by

---

[10] *See* e.g., You Tube Legal Complaints Policy, available at *https://support.google.com/youtube/answer /9996224? hl=en&ref_topic=6154211* (explaining YouTube "considers legal complaints when the party in question or their authorized legal representative contacts us.")

law, such as fraud, duress or undue influence, and may be redressed by a cause of action based upon that improper conduct."). The majority rule in Texas is that "[u]njust enrichment, itself, is not an independent cause of action. Rather, unjust enrichment characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *Landers v. Landers*, No. 02-19-00303-CV, 2021 WL 1570011, at *8 (Tex. App. Apr. 22, 2021) (internal quotations and citations omitted).[11] "Unjust enrichment occurs when a person has wrongfully secured or passively received a benefit which it would be unconscionable to retain . . . [such as] fraud, duress, or the taking of unfair advantage." *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 283 (Tex. App. 2021). Here, Plaintiffs' unjust enrichment claim fails because they have not articulated a single other claim upon which unjust enrichment may be based. Further, Plaintiffs must but fail to allege that FloSports financially benefited from statements about Plaintiffs' character. Plaintiffs argue FloSports financially benefitted by the "redirection of Plaintiffs' good and honorable reputation and Plaintiffs' goodwill within the wrestling community." Compl. ¶113. None of Plaintiffs' other allegations shed any light on what Plaintiffs means by "redirection" of goodwill or how this redirection financially benefitted FloSports. Accordingly, they fail to state a claim for unjust enrichment.

## VI. CONCLUSION

For the above reasons, FloSports respectfully requests that the Court dismiss the claims asserted against it in the Complaint, with prejudice, pursuant to Rule 12(b)(6).

---

[11] *But see Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App. 2007) (the First Court of Appeals has held unjust enrichment is an independent cause of action, however in *Pepi Corp. v. Galliford* the court held that pleading party's bare statement that the opposing party "unjustly enriched himself" did not establish any "separate unjust enrichment action" and thus the claim was an "equitable quantum meruit claim founded on unjust enrichment, rather than an independent cause of action for unjust enrichment.")

Dated: January 14, 2026.

Respectfully submitted,

**BLANK ROME LLP**

By: */s/ Anna E. Currier*
Adam V. Orlacchio (#5520)
Anna E. Currier (#6271)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 425-6431
adam.orlacchio@blankrome.com
anna.currier@blankrome.com

*Counsel for Defendant FloSports, Inc.*