**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF DELAWARE**

| | |
|---|---|
| NIMA GHARAVI, and RIGHT CALL OFFICIALS, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>FLOSPORTS, INC.<br><br>*Defendant*. | Case No. 1:25-cv-01472 RGA |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FLOSPORTS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Dated: January 28, 2026

**MARON MARVEL BRADLEY ANDERSON & TARDY LLC**

Stephanie A. Fox (DE Bar ID No. 3165)
Thomas J. Williams (DE Bar ID No. 6965)
1201 N. Market Street, Ste. 1100
P.O. Box 288
Wilmington, DE 19801
Phone: (302) 472-1739
saf@maronmarvel.com
twilliams@maronmarvel.com

Jeffrey S. Becker (*pro hac vice*)
Nicole O'Toole Peterson (*pro hac vice*)
Olivia E. Duggins (*pro hac vice*)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
npeterson@smbtrials.com
oduggins@smbtrials.com
*Attorneys for Plaintiffs*
*NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.*

# TABLE OF CONTENTS

I. STATEMENT AND NATURE OF THE PROCEEDINGS ........ 1
II. SUMMARY OF ARGUMENT ........ 1
III. STATEMENT OF FACTS ........ 2
IV. RELEVANT LEGAL STANDARD ........ 3
V. ARGUMENT ........ 4
A. Plaintiffs Sufficiently State a Claim for Defamation. ........ 4
1. FloSports' Defamatory Statements Were Not Opinions. ........ 5
2. FloSports' Defamatory Statements are not Substantially True. ........ 6
3. FloSports' Defamatory Statements are not Privileged. ........ 8
4. Plaintiffs Sufficiently State a Claim Under Defamation *Per Se* or *Per Quod*. ........ 10
b. Plaintiffs Sufficiently Stated a Claim for Defamation *Per Quod*. ........ 18
B. Plaintiffs Sufficiently State a Claim for Invasion of Privacy by False Light. ........ 19
C. Plaintiffs Sufficiently Stated a Claim for Intentional Infliction of Emotional Distress. 20
D. Plaintiffs Sufficiently Stated a Claim for Tortious Interference with Business Relationships. ........ 20
E. Plaintiffs Sufficiently Stated a Claim for Tortious Interference with Contractual Relations. ........ 21
F. Plaintiffs Sufficiently Stated a Claim for Violation of the Deceptive Trade Practices Act. 22
G. Plaintiffs Sufficiently State a Claim for Misrepresentation. ........ 23
H. Plaintiffs Sufficiently Stated a Claim for Unjust Enrichment. ........ 26
VI. CONCLUSION ........ 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Medical Association v. 3Lions Publishing, Inc.*,
2015 WL 1399038 (N.D. Ill. 2015) ........ 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 19

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544(2007) ........ 3, 19

*Black v. Wrigley*,
2017 WL 8186996 (N.D. Ill. 2017) ........ 11

*Brinley Holdings Inc. v. RSH Aviation, Inc.*,
580 F. Supp. 3d 520 (N.D. Ill. 2022) ........ 20-21

*Burlet v. Baldwin*,
452 F. Supp. 3d 801 (N.D. Ill. 2020) ........ 10

*Coghlan v. Beck*,
984 N.E.2d 132 (Ill. App. Ct. 2013) ........ 6

*Dowd & Dowd, Ltd. v. Gleason*,
693 N.E.2d 358 (Ill. 1998) ........ 21

*Dubinsky v. United Airlines*,
708 N.E.2d 441 (Ill. App. Ct. 1999) ........ 12, 14-15

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938). ........ 3

*Flava Works, Inc. v. Gunter*,
2013 WL 4734002 (N.D. Ill. Sept. 3, 2013) ........ 24

*Global Relief Foundation, Inc. v. New York Times Co.*,
390 F.3d 973 (7th Cir. 2004) ........ 8

*Green v. Rogers*,
917 N.E.2d 450 (Ill. 2009) ........ 4, 10, 16-17

*Hedges v. U.S.*,
404 F. 3d 744 (3d Cir. 2005) ........ 3

*Ho v. Donovan*,
569 F.3d 677 (7th Cir. 2009) .......... 25

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) .......... 22, 26-27

*In re Rockefeller Center Properties, Inc.*,
311 F.3d 198 (3d Cir. 2002) .......... 4

*Jones v. Res-Care, Inc.*,
613 F.3d 665 (7th Cir. 2010) .......... 13

*Kapotas v. Better Gov't Ass'n*,
30 N.E.3d 572 (Ill. App. Ct. 2015) .......... 10, 18-19

*Kumaran v. Brotman*,
617 N.E.2d 191 (Ill. App. Ct. 1993) .......... 6

*Kuwik v. Starmark Star Marketing & Administration, Inc.*,
619 N.E.2d 129 (Ill. 1993) .......... 9

*Lansing v. Carroll*,
2015 WL 3962345 (N.D. Ill. 2015) .......... 5

*Liggon-Redding v. Estate of Sugarman*,
659 F.3d 258 (3d Cir. 2011) .......... 3

*Love v. Simmons*,
2024 WL 809107 (N.D. Ill. Feb. 27, 2024) .......... 10-11, 19-20

*Lykowski v. Bergman*,
700 N.E.2d 1064 (Ill. App. Ct. 1998) .......... 8

*Lyssenko v. International Titanium Powder, LLC*,
2008 WL 8625903 (N.D. Ill. 2008) .......... 23

*MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic*,
2024 WL 1719347 (N.D. Ill. Apr. 22, 2024) .......... 25

*Milo Enterprises, Inc. v. Bird-X, Inc.*,
2022 WL 874625 (N.D. Ill. Mar. 24, 2022) .......... 23

*Osumdairo v. Glandian*,
591 F. Supp. 3d 353 (N.D. Ill. 2022) .......... 15-16

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008)........................................................................................ 3

*Powers v. Chicago Transit Auth.*,
890 F.2d 1355 (7th Cir. 1989) ...................................................................................... 9

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
288 F.3d 548 (3d Cir. 2002)........................................................................................ 4

*Solaia Technology, LLC v. Specialty Pub. Co.*,
852 N.E.2d 825 (Ill. 2006) ........................................................................................... 5

*Svanaco, Inc. v. Brand*,
417 F. Supp. 3d 1042 (N.D. Ill. 2019) ...................................................................... 13

*Tuite v. Corbitt*,
224 Ill.2d 490 (Ill. 2006)........................................................................................ 17-18

*Voyles v. Sandia Mortg. Corp.*,
751 N.E.2d 1126 (Ill. 2001) ....................................................................................... 21

*Yeftich v. Navistar, Inc.*,
722 F.3d 911 (7th Cir. 2013) ...................................................................................... 25

*Youssef v. Department of Health and Senior Services*,
423 Fed. Appx. 221 (3d Cir. 2011)............................................................................... 4

**RULES, STATUTES, AND OTHER AUTHORITIES**

720 ILCS 5/11-20.1 15
815 ILCS 510/2 *et seq*...................................................................................................... 22
17 U.S.C. § 512.......................................................................................................... 23, 25
18 U.S.C. § 2252.................................................................................................................. 15
Fed. R. Civ. P. 9(g) ............................................................................................................ 18
Fed. R. Civ. Pro 12(b)(6) ...................................................................................................... 3
Fed. R. Civ. P. 12(d) ............................................................................................................. 4
Kurt Hunt, *Copyright and YouTube: Pirate's Playground or Fair Use Forum?*,
14 MICH. TELECOMM. & TECH. L. REV. 197(2007) ................................................... 4

Plaintiffs, NIMA GHARAVI ("Gharavi") and RIGHT CALL OFFICIALS, INC. ("Right Call Officials, Inc.") (collectively, "Plaintiffs"), by their undersigned counsel, for their Response in Opposition to Defendant FLOSPORTS, INC.'s ("FloSports") Motion to Dismiss (D.I. 13; the "Motion") Plaintiffs' Complaint (D.I. 1; the "Complaint"), states as follows:

## I. STATEMENT AND NATURE OF THE PROCEEDINGS

FloSports has the exclusive rights to livestream certain sporting events, but this does not prevent its competitor, Plaintiffs, from attending and video recording at these sporting events to later post archival videos on Plaintiffs' YouTube channel. Plaintiffs' significantly higher quality YouTube videos garner a high number of views, and this has become a threat to FloSports. In a clear effort to eliminate Plaintiffs from the market, FloSports has developed a pattern and practice of disseminating false and inflammatory information about Plaintiffs, including attempting to convince the wrestling community that Gharavi is a threat to the safety of children. In doing so, FloSports repeatedly made false public statements that accuse Gharavi of vile criminal and sexual misconduct with knowledge of its falsity or with reckless disregard as to whether its statements were true, all for the purpose of intentionally injuring Plaintiffs, interfering with Plaintiffs' business, and causing Gharavi severe emotional distress. FloSports' conduct further constitutes deceptive trade practices in that it misrepresented to consumers that Plaintiffs have engaged in immoral conduct and that Plaintiffs have infringed on FloSports' copyrights, when they have not.

## II. SUMMARY OF ARGUMENT

In its Motion, FloSports' arguments for dismissal under Rule 12(b)(6) run contrary to both Plaintiffs' well-pled facts and the law. The Complaint sufficiently states causes of action for defamation, invasion of privacy by false light, intentional infliction of emotional distress, tortious interference with prospective business relations, tortious interference with contractual relations,

violation of the Illinois Deceptive Trade Practices Act, Misrepresentation under 17 USC § 512(f), and unjust enrichment. As such, the Motion should be denied in its entirety.

## III. STATEMENT OF FACTS

Plaintiff Nima Gharavi, individually and through his company, Right Call Officials, Inc., has officiated hundreds of wrestling matches for established organizations over a period of many years. D.I. 1, ¶¶1, 9. In addition, Gharavi regularly records wrestling matches across the United States and posts high-quality, edited videos of the matches on his popular Midwest Wrestle YouTube channel (hereinafter "Gharavi's YouTube Videos"). D.I. 1, ¶¶11-14.

FloSports also records and broadcasts sporting events. D.I. 1, ¶2. Beginning in the spring of 2023, FloSports began improperly targeting Gharavi by knowingly submitting false DMCA takedown notices on Gharavi's YouTube Videos. D.I. 1, ¶29. In June 2023, FloSports sent Gharavi a letter raising concerns that Gharavi's YouTube Videos were being "widely shared on pornographic web sites around the world" and further accused Gharavi of fabricating his videos' popularity by intentionally exploiting his videos containing youth wrestlers. D.I. 1, ¶35; D.I. 1-3. In July 2023, FloSports further clarified its intentions and beliefs when it sent an email to Gharavi accusing him of monetizing on the "distribution of child pornography." D.I. 1, ¶36; D.I. 1-4.

Gharavi responded to these letters by vehemently denying FloSports' accusations. D.I. 1, ¶37; D.I. 1-5. Even after having received a clear rejection of its accusations, FloSports knowingly forwarded false information about Gharavi and his alleged immoral character to numerous members of the wrestling community, including to third parties with whom FloSports knew Gharavi had business relationships based on the success of Gharavi's YouTube Videos. D.I. 1, ¶¶40-42, 43(f). Then, in December 2023 and January 2024, Pyles and Kozak, acting as representatives and at the direction of FloSports, knowingly published posts online that defamed

Plaintiffs by falsely accusing Gharavi of profiting from pornographic websites, among other things. D.I. 1, ¶¶43-44.

As a direct result of FloSports' conduct, Gharavi has been asked to stop filming a number of wrestling events, he has been asked to leave these events, and various wrestling organizations have cancelled contracts with Plaintiffs. D.I. 1, ¶¶50-51. Additionally, because of the inflammatory statements made about Gharavi, he is now in fear for his safety and is in legitimate danger of physical harm. D.I. 1, ¶¶52-54.

## IV. RELEVANT LEGAL STANDARD

When deciding a motion to dismiss under Fed. R. Civ. Pro 12(b)(6), the court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [Plaintiffs]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008).[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court will grant a Rule 12(b)(6) motion to dismiss only if the factual allegations in the complaint are insufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 545 (2007).

Further, on a Rule 12(b)(6) motion to dismiss, it is FloSports' burden to show that no claim has been presented. *Hedges v. U.S.*, 404 F. 3d 744, 750 (3d Cir. 2005).

[1] It is well-settled that a federal court sitting in diversity applies state substantive law and federal procedural law. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011) citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). *See also Ciemniecki v. Parker McCay P.A.*, 2010 WL 2326209, at *4 (D.N.J. June 7, 2010) (explaining that federal, not state, pleading standards govern the sufficiency of a complaint). Thus, while FloSports cited to Seventh Circuit case law in articulating the standard for its Rule 12(b)(6) motion, for purposes of consistency and because this action is venued within the Third Circuit, Plaintiffs apply the federal pleading standards as cited in the Third Circuit.

When considering a 12(b)(6) motion, it is not the court's province to decide whether the moving party will ultimately be successful on the merits, but rather "whether they should be afforded an opportunity to offer evidence in support of their claim." *In re Rockefeller Center Properties, Inc.*, 311 F.3d 198, 215 (3d Cir. 2002).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See also Youssef v. Department of Health and Senior Services*, 423 Fed. Appx. 221, 223-24 (3d Cir. 2011) (Third Circuit held the district court's improper consideration of matters outside face of complaint warranted vacation of the district court's dismissal of the complaint). *But see Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of a…12(b)(6) motion to dismiss to a…[Rule] 56 motion for summary judgment.")

## V. <u>ARGUMENT</u>

### A. Plaintiffs Sufficiently State a Claim for Defamation.

The Complaint sufficiently pled all of the elements required for a defamation claim (Count I) against FloSports. Under Illinois law,[2] defamatory statements are defined as "statement[s] that harm a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). To state a claim for defamation under Illinois law, Plaintiffs must plausibly plead: (1) FloSports made a false statement about the Plaintiffs; (2) FloSports made an unprivileged

[2] Plaintiffs maintain that their claims are subject to Illinois law. *See* Dkt. 1, ¶5.

publication of that statement to a third party; and (3) that this publication caused damages. *Id*. Plaintiffs sufficiently pled all of these elements. Moreover, FloSports' defamatory statements were not opinions, substantially true, or privileged, they are not excused from liability.

**1. <u>FloSports' Defamatory Statements Were Not Opinions.</u>**

FloSports' defamatory statements contain actionable statements of fact – not opinions – sufficient for pleading Plaintiffs' defamation claims. *See Lansing v. Carroll*, 2015 WL 3962345 at *6 (N.D. Ill. 2015) (First Amendment only protects from defamation liability those who make statements of opinion–that is, comments "that cannot 'reasonably [be] interpreted as stating actual facts.") (applying Illinois law). FloSports misapplies Illinois law and misstates the well-pled allegations in the Complaint in arguing that FloSports' statements were "hyperbolic speech" making them "inactionable opinions."

To determine whether a given statement is one of fact or opinion, Illinois courts consider several criteria, including: whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether its social context signals that it has factual content. *Solaia Technology, LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 840 (Ill. 2006). Even statements of insinuation, allusion, irony, or question, may be considered defamatory. *Id.* And even hyperbolic statements may still be considered statements of fact, and not opinion. *Id*.

Here, Kozak and Pyles' statements are clearly factual in nature.[3] Even if these statements are hyperbolic, they were made in support of FloSports' false statement of fact that Gharavi monetized his videos of minors on pornographic websites. Even more, FloSports stated that it had

[3] FloSports also argues that because Plaintiffs allege in Paragraphs 39-40 of the Complaint that "upon information and belief" FloSports published defamatory statements about Plaintiffs to third parties in the wrestling community, this is insufficient for the "precision and particularity" required of defamation claims. However, Paragraphs 39-40 were just introductory paragraphs to Plaintiffs' claims. Plaintiffs also pled actual instances of FloSports' publishing of defamatory statements to third parties in the wrestling community. *See, e.g.* Dkt. 1, ¶42.

done "everything in its power" to eliminate Gharavi from the industry; characterized Gharavi as "true evil"; and called Gharavi a "parasite." D.I. 1, ¶¶43-44. FloSports' statements directly impute that Plaintiffs have committed a crime, lack integrity in performing their duties, and otherwise prejudice Plaintiffs in their profession. *See Kumaran v. Brotman*, 617 N.E.2d 191, 200-201 (Ill. App. Ct. 1993) (holding that a newspaper article suggesting the plaintiff was "working a scam" by filing "frequent, unwarranted lawsuits to procure pecuniary settlements" was not an opinion and thus actionable). As such, FloSports' statements are statements of *fact*, not opinion, and FloSports' motion must be denied.

**2. <u>FloSports' Defamatory Statements are not Substantially True.</u>**

FloSports argues that its statements are not defamatory because they are "substantially true." Not only is this false but even if this Court were to consider this argument, it creates a question of fact for the jury, and Plaintiffs' defamation claim could not be disposed of on a motion to dismiss. *See Coghlan v. Beck*, 984 N.E.2d 132, 146 (Ill. App. Ct. 2013) (determining "substantial truth" is a question for the jury). Notwithstanding this, FloSports' statements are alleged to be false and are therefore actionable.

Specifically, FloSports argues that its statements are substantially true because "[Plaintiffs'] videos (of minors) are embedded on porn sites" (D.I. 1-6 at p. 15) and Plaintiffs leave the "embed (and monetization) function on so the videos can be embedded on OTHER sites." (D.I. 1-7 at p. 27). FloSports' "substantial truth" argument rests on a deliberate mischaracterization of the Complaint's allegations. FloSports repeatedly cites ¶¶21-23 of the Complaint to claim that Plaintiffs "admit" their videos are "embedded" on pornographic websites and that Gharavi "enable[es] embeddings" knowing this will occur. See D.I. 13 at pp. 4–6, 11, 14, 19, and 22. This is false. Paragraphs 21-23 discuss *piracy*—the illegal copying and redistribution of videos without

Gharavi's permission or control—not embedding.

The Complaint explicitly states: "Mr. Gharavi has identified a number of websites that have ***pirated*** (illegally copied or distributed without the permission of the content creator) the Midwest Wrestle YouTube videos." D.I. 1, ¶21 (emphasis added). It continues: "Mr. Gharavi is in no way affiliated with any of these pornographic and offensive external websites and has *never consented* to his videos being posted on these Third-Party Websites. Rather, the issue of wrestling match videos being ***pirated*** to pornographic websites is unfortunate but common in the wrestling industry." *Id.*, ¶23 (emphasis added). The Complaint uses the word "pirated" three times in these paragraphs and never mentions "embedding" in connection with pornographic websites.

FloSports deliberately conflates these concepts to create a false "admission."[4] The Complaint alleges piracy (which Gharavi cannot prevent), yet FloSports characterizes this as admitting to enabling embedding (which Gharavi could theoretically control). This distinction is critical: FloSports accuses Gharavi of *intentionally* enabling pornographic website use of his videos, yet cites allegations about piracy—something entirely beyond his control.

Moreover, FloSports has never identified a single pornographic website that actually embeds Plaintiffs' videos. The one example FloSports widely disseminated—"MyPornVid.fun"—*pirated* the videos; it did not embed them, and FloSports' entire "substantial truth" argument therefore collapses. Accepting all facts in the Complaint as true, those facts concern piracy (no control, no intent, no consent), not the intentional cooperation with pornographic websites of which FloSports falsely accuses Gharavi.

[4] FloSports' mischaracterization is not mere carelessness—it is deliberate. Piracy and embedding are fundamentally different. Piracy occurs when third parties illegally copy and re-upload videos to their own servers without the content creator's permission. A creator has *no control* over piracy—it can be combated through DMCA takedown notices, but cannot be prevented. Whereas embedding occurs when third parties use YouTube's "embed" feature to display videos hosted on YouTube's servers. A creator *could* disable YouTube's embedding function if desired. *See, e.g.* Kurt Hunt, *Copyright and YouTube: Pirate's Playground or Fair Use Forum?*, 14 MICH. TELECOMM. & TECH. L. REV. 197, 198 (2007).

Under Illinois defamation law, when the "gist" or "sting" of a statement is false, the statement will be defamatory even if the inoffensive, immaterial details to the statement are true. *Global Relief Foundation, Inc. v. New York Times Co.*, 390 F.3d 973, 986-87 (7th Cir. 2004). When taking the allegations of the Complaint in light most favorable to the Plaintiffs, this Court must find that Plaintiffs pled FloSports' statements are *not* substantially true and FloSports' motion therefore must be denied.

**3. <u>FloSports' Defamatory Statements are not Privileged.</u>**

FloSports argues its DMCA takedown notices for Gharavi's YouTube Videos are *absolutely* privileged and therefore not actionable for defamation. However, the DMCA takedown notices are not the only basis of the statements pertaining to Plaintiffs' defamation claim. Moreover, where statements were made to *third parties*, no such privilege exists. FloSports also argues the Kozak and Pyles' social media posts were subject to qualified privilege for the "importance of reporting exploitation within the wrestling community and online communities self-regulating by identifying inappropriate conduct." However, this is not the proper application of the law.

This Court should look to *Lykowski v. Bergman*, 700 N.E.2d 1064 (Ill. App. Ct. 1998) for clarity. There, the plaintiff who was running for judge sued a campaign chairman for defamation based on charges the chairman had made to the Attorney Registration and Discipline Commission ("ARDC") and subsequently disclosed to third parties. *Id*. at 1067. The court held that while the statements in the preliminary complaint to the ARDC were privileged against plaintiff's defamation claim, the statements made to ***third parties*** and the media were *not*. *Id.* at 1070. In so holding, the court wrote: "Unlike the absolute privilege which attaches to statements made preliminarily to a judicial or quasi-judicial proceedings, the fair reporting privilege asserted by

[defendant] is merely a qualified privilege which does not serve to bar defamation claims." *Id.*

Even if qualified privilege applied to the categories of speech at issue here, privilege is an affirmative defense requiring factual development regarding whether Plaintiffs can prove malice. *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 619 N.E.2d 129, 132-33 (Ill. 1993). Qualified privilege is defeated by showing the defendant published statements "while knowing the matter was false" or with "reckless disregard as to the matter's falseness." *Id.* Here, Plaintiffs specifically alleged that FloSports acted with knowledge of falsity: Gharavi sent a letter vehemently denying the accusations (D.I. 1, ¶37, D.I. 1-5), yet FloSports continued knowingly forwarding false information about Gharavi and his alleged immoral character to numerous members of the wrestling community (D.I. 1, ¶¶40-42, 43(f)).[5] Whether FloSports acted with the requisite malice to defeat qualified privilege requires a factual inquiry that cannot be resolved on a Rule 12(b)(6) motion to dismiss. *See, e.g. Kuwik*, 619 N.E.2d at 133.

Even assuming *arguendo* the DMCA takedown notices were privileged–which Plaintiffs maintain they are not–FloSports' *dissemination* of the notices (and mentions of them in Pyles' and Kozak's social media posts) would not be. *See, e.g., Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989) (any "voluntary disclosure" by the holder of the privilege waives the privilege); *see* D.I. 1-6 at pp. 4, 6 (Pyles posts on December 30, 2023, that "Flo has done everything in its power, leveraging partners, etc to get [Plaintiffs] out"…."we (Flo staff) felt we 'got em!' Despite all the evidence present to law enforcement, governing bodies"); D.I. 1-7 at p. 27 (Kozak posts on January 1, 2024, that FloSports has "tried to strike [Plaintiffs'] channel for copyright infringement because that's what [FloSports] ***can actually prove***") (emphasis added); and D.I. 1-

[5] In fact, FloSports' own general counsel confirmed in a June 7, 2023 email that "the user's content does not infringe a FloSports copyright." Dkt. 1-2 at p. 2. Yet FloSports continued making public statements claiming copyright infringement for months afterward, including Kozak's January 2024 statement that FloSports could "actually prove" copyright infringement. This constitutes knowledge of falsity sufficient to defeat any qualified privilege.

7 at p. 27 (FloSports employee Andy Hamilton falsely tells third party that Plaintiffs "ha[ve] a bunch of match footage from events [FloSports has] exclusive rights to"). As such, FloSports' statements are not privileged and its motion must be denied.

### 4. <u>Plaintiffs Sufficiently State a Claim Under Defamation *Per Se* or *Per Quod*.</u>

Defamatory statements are divided into those statements which are defamatory *per se* and defamatory *per quod*.[6] The difference between defamation *per se* and *per quod* is whether the listener would need an explanation to understand the harm inflicted by the statement. *Love v. Simmons*, 2024 WL 809107, at *4 (N.D. Ill. Feb. 27, 2024). Plaintiffs' defamation claim is sufficiently pled to proceed as a defamation *per se* or, alternatively, as a *per quod* claim.

#### ***a. Plaintiffs Sufficiently State a Claim for Defamation Per Se.***

Plaintiffs sufficiently pled each of the elements necessary to sustain a defamation *per se* claim against FloSports. Under Illinois law, statements are considered defamatory *per se* when the defamatory character of the statement is apparent on its face — when the words used are "so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 587 (Ill. App. Ct. 2015). Complaints for defamation *per se* do not require the defamatory words be pled in their exact language, but must be pled with sufficient particularity "so as to permit judicial review of [the] defamatory content." *Green,* 917 N.E.2d at 459.

##### ***i. <u>FloSports' Defamatory Per Se Statements Sufficiently Identify the Plaintiffs</u>.***

FloSports argues that Plaintiffs' defamation *per se* claim fails because FloSports "fails to identify either Plaintiff." D.I. 13 at pp. 15-16. First, this is not true as FloSports did in fact mention

[6] To the extent this Court finds FloSports' statements are not defamatory *per se*, Plaintiffs may alternatively proceed on their Count I under defamation *per quod*. *See, e.g. Burlet v. Baldwin*, 452 F. Supp. 3d 801, 813 (N.D. Ill. 2020) (plaintiffs may plead defamation *per quod* in the alternative to *per se*).

Plaintiffs by name. FloSports wrote in a May 25, 2023 email its intention to contact wrestling authorities and leadership to alert them as to Gharavi's "sinister" conduct. D.I. 1, ¶33. FloSports then followed through with its threat and contacted third parties identifying Plaintiff Nima Gharavi by name and forwarded false information regarding Plaintiffs to these third parties. D.I. 1, ¶¶40-41. For example, on December 29, 2023, FloSports contacted Northwestern University's Head Wrestling Coach Matt Storniolo, and provided him with false information regarding Plaintiffs' character, resulting in Plaintiffs' expulsion from the 2023 Midlands Championship. D.I. 1, ¶42.

Moreover, as to FloSports' social media posts concerning Plaintiffs, FloSports misapplies the law. Under Illinois law, a statement is not defamatory *per se* if it may "reasonably be interpreted as referring to someone ***other*** than the plaintiff." *Black v. Wrigley*, 2017 WL 8186996, at *9 (N.D. Ill. 2017) (emphasis added). Illinois law does not require that defamation *per se* claims identify the plaintiff "by name." Rather, "statements are considered defamatory *per se* when the defamatory character of the statement is apparent on its face." *See Love v. Simmons*, 2024 WL 809107, at *4 (N.D. Ill. Feb. 27, 2024). Here, FloSports' social media posts could not reasonably be interpreted as referring to anyone other than Plaintiffs. The longstanding attacks by FloSports against Plaintiffs became well known in the wrestling community (*see, e.g.* D.I. 1, ¶¶39-42) and thus it became obvious to third parties that the "he" references in Pyles' and Kozak's social media posts were in reference to Gharavi (*see, e.g.* D.I. 1-6 at p. 3: "There's one just as bad, if not worse who is scarily enough an official. Flo has done everything in power, leveraging partners, etc to get him out. He threatens to sue constantly."; D.I. 1-6 at p. 15: "His videos (of minors) are embedded on porn sites…. He films and uploads videos without having permission/rights to the events…."). In fact, other social media users quote-tweeted Pyles' post specifically identifying Plaintiffs by name and others identify Plaintiffs to be the subject of FloSports' posts. *See, e.g.* D.I. 1-7 at pp. 4-

7, 9-10, 29, 39, 58-59, 65-66, 75-79, 82, and 85.

FloSports attempts to argue that *Dubinsky v. United Airlines*, 708 N.E.2d 441 (Ill. App. Ct. 1999) stands for the proposition that failing to identify Plaintiffs by name in FloSports' posts thwarts Plaintiffs' defamation *per se* claim. However, this conclusion is flatly incorrect. First, under FloSports' theory, any potential defendant could merely omit the plaintiff's name in making defamatory statements about a person to avoid liability. Moreover, in *Dubinsky*, the Court found that the plaintiff's defamation *per se* claim failed because the allegedly defamatory statements must have been read with extrinsic facts in order to make it "totally clear to [the] reader" who defendant was referring to. *Dubinsky*, 708 N.E.2d at 447. This is not the case here. Rather, here, it is ***so apparent*** who FloSports is referring to that dozens of social media users pointed it out in comments on FloSports' posts.

Kozak's January 1, 2024 post on InterMatWrestle.com provides an even more direct example of this. His post appeared in a forum thread that began with the original poster embedding posts from X that identified Gharavi by his full name, home state, and the "Midwest Wrestle" channel. D.I. 1-7 at p. 4. From the thread's first post, every participant understood the discussion's subject to be Gharavi—the thread context made identification unmistakable to any reader. This is the opposite of *Dubinsky*, where readers required extrinsic facts to identify the plaintiff; here, the thread itself provided immediate and unambiguous identification.

FloSports fundamentally mischaracterizes *Dubinsky's* holding. *Dubinsky* does not hold that statements requiring extrinsic facts for identification cannot be defamatory at all—it holds they cannot be defamatory *per se*. Dubinsky explicitly states that "only statements that are defamatory *per quod* may rely on extrinsic facts." *Dubinsky*, 708 N.E.2d at 447 (emphasis added). This distinction is critical: *Dubinsky* forecloses defamation *per se* claims when extrinsic facts are

required for identification, but expressly contemplates that such claims may proceed as defamation *per quod*. To the extent FloSports' posts require community knowledge to identify Plaintiffs, that simply means the claim proceeds under the *per quod* framework—exactly as *Dubinsky* permits.

#### *ii.* ***Kozak and Pyles' Defamatory Per Se Statements May Be Imputed to FloSports.***

FloSports next attempts to argue that Kozak's and Pyles' posts cannot be "imputed to FloSports as a Defendant." D.I. 13 at pp. 16-17. FloSports cites no legal authority in support of this argument, because there is none. On the contrary, "it is well-established that a principal may be held vicariously liable for his agent's defamatory statements." *Svanaco, Inc. v. Brand*, 417 F. Supp. 3d 1042, 1062 (N.D. Ill. 2019) (applying Illinois law) quoting *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010). The *Svanaco* court denied the defendant's motion for summary judgment as to plaintiff's defamation claim because the court accepted as true the plaintiff's well-pled facts that the defendant's agent "defame[d the plaintiff] on the internet." *Id.* at 1062-63. The court held the defendant employer liable for the defendant agent's defamatory statements made "within the scope of his employment" even despite the defendant agent not being an "official" employee of defendant employer. *Id.* at 1062.

Here, Plaintiffs have sufficiently alleged that Kozak and Pyles are employees of FloSports (D.I. 1, ¶¶27-28) and that Kozak and Pyles' statements were made within the scope of their employment (D.I. 1, ¶29). Moreover, Pyles authored his posts from his X account which explicitly states that he is the Content Director at FloSports in his biography and he used the terms "We (Flo)" (D.I. 1-6 at p. 3) and "we (Flo staff)" (D.I. 1-6 at p. 6) in his posts, signaling that the statements are coming from FloSports.[7] Similarly, Kozak authored his posts from his

[7] Kozak is also widely known in the wrestling community as co-host of "FloWrestling Radio Live (FRL)"—FloSports' flagship amateur wrestling show—where he regularly appears alongside Pyles. His public association with FloSports as the face of their wrestling coverage makes unmistakable that his statements using "we" refer to his employer.

InterMatWrestle account stating: "We've tried to strike his channel for copyright infringement because that's what we can actually prove. We're still working through it but things have gotten tricky where we've had to bring in legal," also clearly referencing that the actions and statements are coming from FloSports.[8] D.I. 1-7 at p. 27. As such, FloSports' position that Pyles and Kozak's social media posts cannot be "imputed" to FloSports as a defendant is completely unsupported by both the law and the facts in this case.[9]

***iii. <u>FloSports' Statements Fall into the Defamation Per Se Categories</u>.***

FloSports finally argues that Plaintiffs' defamation *per se* claim fails because FloSports' defamatory statements do not fit within one of the categories Illinois considers defamatory *per se*. On the contrary, FloSports' statements: (1) accuse and/or impute that Gharavi has committed criminal offenses, including, but not limited to, dissemination of child pornography, nonconsensual dissemination of pornographic images, creation of pornography, and/or contribution to the creation of child pornography, and/or encouragement of the creation of nonconsensual pornography; (2) impute the inability of Gharavi to perform or a want of integrity in the discharge of his duties as a wrestling official and video producer; and (3) prejudice Gharavi in his profession or business and malign him in his business. *See Dubinsky*, 708 N.E.2d at 449.

It appears FloSports is attempting to argue that its statements do not impute that Plaintiffs committed a crime. First, this is false. *See* D.I. 1, ¶¶ 39-44. FloSports then cites to *Dubinsky* to argue that a defendant's statements are not defamatory *per se* when it merely states that a plaintiff

---

[8] FloSports argues that "Kozak's post does not identify Plaintiffs by name, nor does it refer to YouTube or include any affiliation Kozak has with FloSports." Dkt. 13 at 13-14. However, Kozak's statement references striking "his channel" for "copyright infringement"—terminology that exclusively applies to YouTube's copyright strike system. No reasonable reader could interpret this as anything other than Gharavi's YouTube channel, Midwest Wrestle.

[9] FloSports takes contradictory positions on whether Kozak spoke for FloSports. *Compare* Dkt. 13 at 9 (arguing "there is nothing . . . that indicate[s] Kozak made statements on behalf of FloSports") *with id.* at 19 (arguing "Kozak's statement that FloSports submitted takedown requests . . . is substantially true"). FloSports cannot simultaneously claim Kozak was not speaking for it and also that his statements on behalf of FloSports' are true.

may be investigated by the authorities, rather then explicitly stating that the plaintiff had already committed a crime. *See Dubinsky*, 708 N.E.2d at 449. However, this is not the case here. Rather, here, Pyles (D.I. 1-6 at p. 11) and Kozak (D.I. 1-7 at p. 27) both posted that Gharavi distributes and/or monetizes child pornography. Additionally, FloSports accused Gharavi of this crime on a number of occasions,[10] and stated its intention to alert "wrestling leadership" about Gharavi's criminal conduct (*see, e.g.* D.I. 1, ¶33). FloSports then carried out its threat and forwarded false information that Gharavi was engaged in the monetization of child pornography to wrestling coaches attending events where Gharavi was also in attendance (D.I. 1, ¶41), including, but not limited to, notifying Northwestern University's Head Wrestling Coach Matt Storniolo on December 29, 2023 (D.I. 1, ¶42).

FloSports' statements unequivocally accuse Gharavi of the crime of monetizing child pornography, specifically violations of 720 ILCS 5/11-20.1 (Illinois child pornography statute) and 18 U.S.C. § 2252 (federal child pornography distribution statute). These statutes criminalize the knowing dissemination and monetization of child pornography—precisely what FloSports accused Gharavi of doing, and are therefore defamatory *per se* under Illinois law.

FloSports also argues that Plaintiffs cannot show that FloSports' statements impute a lack of integrity in the performance of Plaintiffs' profession or otherwise prejudiced Plaintiffs in their business. FloSports cites to *Osumdairo v. Glandian*, 591 F. Supp. 3d 353 (N.D. Ill. 2022) in support of its argument that "extrinsic evidence would be required to understand how FloSports' statements were allegedly damaging to Plaintiffs' business model." *See* D.I. 13 at p. 11.

[10] For example, on May 25, 2023 Pyles called Gharavi "a guaranteed predator who shoots videos of [high school] events and posts them on porn sites." *See* Dkt. 1, ¶¶31-32 and Dkt. 1-2. On June 10, 3013 FloSports' attorney emailed Gharavi accusing Gharavi of "cho[osing] to monetize [on the] distribution of child pornography." *See* Dkt. 1, ¶36.

In *Osumdairo*, the plaintiffs alleged that a defendant falsely stated during a podcast episode that plaintiffs were involved in illegal steroid trafficking for their fitness clients. *Id.* at 360. However, the court found that there was no indication during the podcast episode that the plaintiffs' business model was "all-natural" and "steroid free" and therefore "extrinsic evidence" was needed to "explain why [the] statement was damaging." *Id.* (internal quotations omitted). FloSports argues the same logic should apply here because a reader could not have known how FloSports' statements were "allegedly damaging to Plaintiffs' business model." D.I. 13 at p. 11.

This is not the case here. First, Plaintiffs' statements are defamatory *on their face* in that they explicitly imply that Plaintiffs should not be permitted to continue in their business of officiating at and recording at youth wrestling events ***by actually stating that FloSports intends to alert wrestling authorities regarding Plaintiffs' immoral and dangerous conduct.*** *See, e.g.* D.I. 1, ¶¶41-42, 43-44. Because the accusation is so heinous, no extrinsic evidence is required for a third-party to read a post accusing Plaintiffs of monetizing child pornography in order to come to the conclusion that Plaintiffs should not be able to perform their job of recording youth wrestling matches, and no additional information regarding "Plaintiffs' business model" is necessary for an ordinary reader to understand that such a statement would damage Plaintiffs' business. As such, Plaintiffs sufficiently pled that FloSports' statements are defamatory *per se*, and FloSports' motion must be denied.

Moreover, even if the crime category were somehow insufficient, FloSports strategically ignores Illinois' fourth category of defamation *per se*: "words that impute a person lacks ability or otherwise prejudices that person in her or his profession." *Green*, 917 N.E.2d at 459. Statements accusing Gharavi of running an exploitation operation, calling him a "parasite," and claiming he poses a danger to the community in the youth wrestling context directly prejudice him in his

profession as a wrestling official and videographer. These are not mere character attacks—they strike at Gharavi's ability to function professionally. A wrestling official accused of exploitation and posing a danger to the community cannot officiate youth events. A videographer accused of collaboration with pornographic websites cannot obtain filming permissions from event organizers. This constitutes direct professional prejudice within the meaning of Illinois' fourth category of defamation *per se*, providing an independent basis for defamation *per se*.

***iv. FloSports' Defamatory Per Se Statements are Not Capable of Innocent Construction.***

FloSports argues that FloSports' statements made by Kozak and Pyles are not actionable *pe se* because they are capable of innocent construction.[11] On the contrary, these statements contain actionable statements that are clearly defamatory and are not reasonably capable of an innocent construction. *See Tuite v. Corbitt*, 224 Ill.2d 490, 502 (Ill. 2006). Specifically, FloSports accuses Gharavi of intentionally profiting from the dissemination of child pornography which imputes upon him either criminal activity, a want of integrity in the discharge of his duties as a wrestling official, or both. D.I. 1, ¶¶43-44; D.I. 1-6; D.I. 1-7.

In *Tuite*, the Illinois Supreme Court found the defendants' statements – accusing plaintiff, an attorney, of being involved with the Chicago mafia – were not capable of innocent construction, holding:

> In considering allegedly defamatory statements under the innocent construction rule, we reemphasize that courts must interpret the words as they *appeared to have been used* and according to the idea *they were intended to convey* to the reasonable reader….Courts are not required to strain to find an unnatural innocent meaning for words when a defamatory meaning is far more reasonable….[T]he context of a statement is critical in determining its meaning…. A given statement may convey entirely different meanings when presented in different contexts. Thus, the innocent

[11] FloSports states in § V(A)(iv) of its Motion that Plaintiffs fail to allege defamation *per se* or *per quod* because the alleged statements are capable of innocent construction. However, innocent construction rule only applies to *per se* actions. *See, e.g. Green v. Rogers*, 917 N.E.2d 450, 458 (Ill. 2009).

construction rule requires a writing to be read as a whole.

*Id.* at 511-512 (internal quotations omitted) (emphasis added). The *Tuite* Court held that given the "overwhelming focus" of the defendants' statements concerned corruption, the statements clearly accused the plaintiff of being corrupt and therefore could not reasonably be construed to have an innocent meaning. *Id.* at 513. Similarly, here, the overwhelming focus of FloSports' posts focused on Plaintiffs' alleged intent to profit from the dissemination of child pornography. As such, FloSports' statements are not reasonably capable of any innocent construction and FloSports' motion must be denied.[12]

**b. Plaintiffs Sufficiently Stated a Claim for Defamation *Per Quod*.**

Alternatively, Plaintiffs sufficiently pled a defamation *per quod* claim against FloSports. *See, e.g. Kapotas,* 30 N.E.3d at 593. In its Motion, FloSports argues that Plaintiffs' defamation *per quod* claim fails because Plaintiffs do not allege sufficient facts to plead special damages with the particularity required under Fed. R. Civ. P. 9(g). In support, FloSports states that "Plaintiffs do not identify a specific event or opportunity that was revoked or denied because of any statement made by Defendant." D.I. 13 at p. 12. This is incorrect. Plaintiffs specifically allege that FloSports forwarded false information about Plaintiffs to Northwestern University's Head Wrestling Coach Matt Storniolo on December 29, 2023 during the 2023 Midlands Championships collegiate wrestling tournament at "NOW Arena" in Hoffman Estates, Illinois, resulting in the revocation of Mr. Gharavi's media credential, his expulsion from the tournament, and his prohibition from returning to film not only the second day of the 2023 tournament, but future instances of the annual tournament as well. D.I. 1, ¶42.

[12] FloSports also appears to repeat its argument that its statements cannot be defamatory *per se* because they fail to identify Plaintiffs by name. In response, Plaintiffs reassert their arguments in § IV(A)(4)(a)(i).

These allegations satisfy both all relevant pleading standards. Unlike the vague allegations in *Kapotas*, 30 N.E.3d at 594 (allegation that plaintiff "can no longer expect valid business relationships to form" was found insufficient), here, Plaintiffs identify: (1) the specific event (Midlands Championship tournament), (2) the specific person who received the false information (Matt Storniolo), (3) the specific date (December 29, 2023), (4) the specific location (the "NOW Arena" in Hoffman Estates, Illinois), and (5) the specific harms (credential revocation, tournament expulsion, prohibition from future tournaments, cancellation of organizational contracts). D.I. 1, ¶¶42, 50-51. This level of detail surpasses the particularity required under Fed. R. Civ. P. 9(g) and Illinois law and satisfies federal notice pleading under *Ashcroft*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 545. As Plaintiffs sufficiently pled that FloSports' statements are defamatory *per quod*, and FloSports' motion must be denied.

**B. Plaintiffs Sufficiently State a Claim for Invasion of Privacy by False Light.**

To state a claim for false light (Count II) under Illinois law, Plaintiffs must plead: (1) they were placed in a false light before the public by FloSports; (2) the false light would be offensive to a reasonable person; and (3) FloSports acted with actual malice. *See Love*, 2024 WL 809107 at *6. Plaintiffs clearly and sufficiently allege these elements. *See* D.I. 1, ¶¶1-78.

In its Motion, FloSports argues–with no citation to legal authority or Plaintiffs' well-pled facts–that Plaintiffs' false light claim should be dismissed because its statements are: (1) capable of innocent construction; (2) based on opinions and not facts; and (3) substantially true. For the same reasons set forth above, Plaintiffs state that FloSports' statements are: (1) incapable of innocent construction (*see supra* § (IV)(A)(4)(a)(iv)); (2) not opinions (*see supra* § (IV)(A)(1)); and (3) not substantially true (*see supra* § (IV)(A)(2)). As such, Plaintiffs sufficiently state a claim for invasion of privacy by false light and FloSports' motion must be denied.

### C. Plaintiffs Sufficiently Stated a Claim for Intentional Infliction of Emotional Distress.

To state a claim for intentional infliction of emotional distress ("IIED") (Count III) under Illinois law, Plaintiffs must plead that FloSports (1) engaged extreme and outrageous conduct; (2) with knowledge that there was a high probability this conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *See Love*, 2024 WL 809107 at *12. Plaintiffs sufficiently allege each of these elements.

FloSports argues that Plaintiffs' IIED claim fails because it is based upon FloSports' defamatory statements. However, under Illinois law, "[t]here is no bright-line rule about what satisfies the extreme and outrageous conduct; it is judged by an objective standard, based on all the facts and circumstances of an individual case." *Id.* Moreover, as FloSports points out, "extreme and outrageous conduct" is conduct that "extend[s] beyond the bounds of human decency" such that it is "considered intolerable in a civilized community." *Id*. Surely, here, FloSports knowingly posting false statements accusing Plaintiffs of the heinous crime of intentionally profiting from child pornography is considered intolerable in a civilized community. As such, FloSports' motion should be denied.

### D. Plaintiffs Sufficiently Stated a Claim for Tortious Interference with Business Relationships.

To state a claim for tortious interference with prospective business relationships (Count IV) under Illinois law, Plaintiffs must allege: (1) a reasonable expectancy of entering into a valid business relationship, (2) defendants' knowledge of the expectancy, (3) an intentional and unjustified interference by defendants that induced or caused a breach or termination of the expectancy, and (4) damage resulting from this interference. *See Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022) (applying Illinois law). Plaintiffs sufficiently allege these elements.

FloSports argues that Plaintiffs "do not identify any particular event in which Gharavi had a reasonable expectation of officiating but was denied because of Defendant." This argument fabricates a requirement that appears nowhere in Illinois law. FloSports cites no authority requiring plaintiffs to "identify any particular event" by name with contractual specificity. Neither *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358 (Ill. 1998), nor *Brinley Holdings*, 580 F. Supp. 3d at 520 impose such a requirement. Illinois law requires a "reasonable expectancy" of entering into valid business relationships—not named identification of each specific opportunity lost. *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133 (Ill. 2001). The heightened specificity FloSports demands would improperly require discovery-level detail at the pleading stage.

Notwithstanding, Plaintiffs *do* identify specific events and opportunities. Plaintiffs specifically pled that, following FloSports' actions, Gharavi has been asked to cease filming wrestling events and had his press credentials revoked during these events. *See* D.I. 1, at ¶¶41-42, 50. Plaintiffs also alleged that FloSports' conduct caused any future contracts with various organizations including, but not limited to, IESA, IHSA, and NCAA, to be *cancelled. See* D.I. 1, at ¶ 51. These allegations are sufficient to overcome FloSports' motion to dismiss. *See also Voyles*, 751 N.E.2d at 1133 (under Illinois law plaintiff must allege a reasonable expectancy of entering into a valid business relationship for a claim for tortious interference with business relations claim). As such, Plaintiffs sufficiently state a claim for tortious interference with business expectancy and FloSports' motion must be denied.

### E. Plaintiffs Sufficiently Stated a Claim for Tortious Interference with Contractual Relations.

To state a claim for tortious interference with contractual relations (Count V) under Illinois law, Plaintiffs must allege: (1) the existence of valid and enforceable contracts between the Plaintiff and third parties; (2) FloSports' awareness of these contractual relation; (3) FloSports'

intentional and unjustified inducement of a breach of the contracts; (4) a subsequent breach by the third parties, caused by the FloSports' wrongful conduct; and (5) damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). FloSports argues Plaintiffs' tortious interference with contractual relations claim fails because "Plaintiffs do not identify any particular event in which Gharavi had a reasonable expectation of officiating but was denied because of Defendant." This is simply false. Plaintiffs specifically allege that FloSports forwarded false information about Plaintiffs to Northwestern University's Head Wrestling Coach Matt Storniolo on December 29, 2023 during the 2023 Midlands Championships collegiate wrestling tournament at "NOW Arena" in Hoffman Estates, Illinois, resulting in the revocation of Mr. Gharavi's media credential, his expulsion from the tournament, and his prohibition from returning to film not only the second day of the 2023 tournament, but future instances of the annual tournament as well. D.I. 1, ¶42. *See also* § IV(D). As such, Plaintiffs sufficiently state a claim for tortious interference with contractual relations and FloSports' motion must be denied.

### F. Plaintiffs Sufficiently Stated a Claim for Violation of the Deceptive Trade Practices Act.

Plaintiffs have sufficiently alleged that FloSports violated the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2 *et seq.*, (Count VI) by misrepresenting to consumers that Gharavi's YouTube Videos are used in immoral and offensive ways; disparaging Plaintiffs by publishing false or misleading representation of fact; and publishing its statements knowing and/or hoping they would harm Plaintiffs' business, or with reckless disregard for the falsity of said statements. Thus, at the heart of this claim is FloSports' disparagement of Plaintiffs' business through "false or misleading representation[s] of fact." *American Medical Association v. 3Lions Publishing, Inc.*, 2015 WL 1399038 at *5 (N.D. Ill. 2015).

FloSports argues that Plaintiffs' UDTPA claim fails because FloSports merely disparaged

Plaintiffs' "character" and not Plaintiffs' "goods or services." On the contrary, disparaging statements "may simultaneously attack both the quality of one's goods or services and the character or integrity of the person, in which case both a defamation claim and a UDTPA claim may lie." *See Lyssenko v. International Titanium Powder, LLC*, 2008 WL 8625903 at *6 (N.D. Ill. 2008). Here, Gharavi is the sole officer and employee of Right Call Officials. When FloSports impugns Gharavi's character by arguing that he records wrestling matches in order to make money from his videos of minors on pornographic websites, this is a direct attack on Right Call Officials. If Gharavi, the individual, is accused of heinous crimes, then he will not be invited to officiate events, and Right Call Officials will not be invited to film these events. Moreover, people will not watch Gharavi's YouTube Videos if they believe doing so will compensate someone involved in child pornography. As such, Plaintiffs sufficiently state a claim for violation of the UDTPA and FloSports' motion must be denied.

**G. Plaintiffs Sufficiently State a Claim for Misrepresentation.**

To plead a claim of misrepresentation under 17 U.S.C. § 512(f) (Count VII), Plaintiffs must allege that: (1) FloSports knew it was materially misrepresenting that an activity was infringing and (2) that the material misrepresentation caused Plaintiffs' harm. *Milo Enterprises, Inc. v. Bird-X, Inc.*, 2022 WL 874625, at *9 (N.D. Ill. Mar. 24, 2022). FloSports blatantly misapplies the law and misstates the allegations of the Complaint in arguing that Plaintiffs' misrepresentation claim should be denied.

Contrary to FloSports' arguments, Plaintiffs' Complaint sufficiently alleges the elements of misrepresentation. First, it states that FloSports intentionally and unjustifiably sent DCMA takedown notices in an effort to remove from the Internet videos FloSports knew it did not film and in which it held no copyright interest, all in an effort to eliminate one of its competitors. *See*

D.I. 1-7 at pp. 27 (Kozak states "We've tried to strike his channel for copyright infringement because that's what we can actually prove"); D.I. 1-7 at pp. 23-24 (stating that Plaintiffs are "running a YouTube page that has a bunch of match footage from events [FloSports] have exclusive rights to"). FloSports claims YouTube "took no action with respect to Plaintiffs' videos," suggesting no harm occurred. D.I. 13 at p. 5. This mischaracterizes the Complaint. Plaintiffs allege YouTube banned Gharavi from posting new content for nearly three weeks, and it took roughly four months to restore the viewership and revenue he was generating prior to FloSports' false DMCA notices. D.I. 1, ¶30. This alleged harm—the temporary ban and prolonged revenue loss—is precisely the material injury § 512(f) protects against. Moreover, Kozak's January 1, 2024 claim that FloSports "can actually prove" copyright infringement is demonstrably false. Six months earlier, on June 7, 2023, FloSports' own general counsel stated in an internal email: "Please note, the user's content does not infringe a FloSports copyright." D.I. 1-2 at p. 2. Kozak's public statement claiming FloSports could "actually prove" infringement—made months after FloSports' own lawyer confirmed no infringement existed—constitutes direct evidence of knowledge of falsity under § 512(f).

This Court should follow the Court's decision in *Flava Works, Inc.*, where the court denied the defendant's motion to dismiss the plaintiff's §512(f) claim, holding that the plaintiff had "sufficiently pleaded that [defendant] intentionally and unjustifiably sent [DCMA] notices in order to induce the three companies' termination of its contracts with [plaintiff]." *Flava Works, Inc. v. Gunter*, 2013 WL 4734002, at *2 (N.D. Ill. Sept. 3, 2013). The court held that the plaintiff "pleaded that it suffered harm as a result of its outlay of resources when on three occasions, it had to search for a new company to host its web site." *Id.* Here, FloSports also argues that the subject of its DMCA takedown notices was a violation of FloSports' private contractual rights with event

operators and further argues that this is permitted by YouTube. This is false and FloSports fails to submit any sort of affidavit verifying this false statement.[13] As such, in taking the allegations in the Complaint as true, this Court should disregard this statement.[14] *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

It is also well-established that the DMCA protects the rights of *copyright owners* – not the rights of a party to a contract. "A copyright owner who submits a takedown notice to a service provider must include a statement, under penalty of perjury, that it has 'a good faith belief that use of the material in the manner complained of is not authorized by the ***copyright owner***.'" *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic*, 2024 WL 1719347, at *5 (N.D. Ill. Apr. 22, 2024) (*citing* 17 § 512(c)(3)(A)(v)–(vi)) (emphasis added). FloSports therefore seemingly concedes in its motion that it issued its DMCA takedown notices without a sufficient legal basis, and misrepresented that it did have a copyright interest in the videos it had taken down when it, in fact, did not. Thus, to the extent this Court considers FloSports' arguments even though they fail to accept the allegations of the Complaint as true, its motion to dismiss should still be denied.

FloSports finally argues that Plaintiffs fail to allege the knowledge requirement of its misrepresentation claim. The knowledge requirement of § 512(f) can be met not only through a showing of actual knowledge, but also through a showing of willful blindness. *MFB Fertility, Inc.*, 2024 WL 1719347, at *6. A person is willfully blind to a fact if the person: (1) subjectively believes that there is a high probability that the fact exists; and (2) takes deliberate actions to avoid learning of that fact. *Id*. at *7 (*citing Ho v. Donovan*, 569 F.3d 677 (7th Cir. 2009)). Here, Plaintiffs sufficiently allege FloSports knew or should have known that Plaintiffs did not infringe on

---

[13] Rather, FloSports merely provides a broken link to a purported Google/YouTube support page.

[14] Moreover, where this Court finds a question of fact regarding the subject of the DMCA takedown notices, this Court should still deny FloSports' Motion.

FloSports' copyrights. As such, Plaintiffs sufficiently state a claim for misrepresentation and FloSports' motion must be denied.

**H. Plaintiffs Sufficiently Stated a Claim for Unjust Enrichment.**

Under Illinois law, to state a claim for unjust enrichment (Count VIII), Plaintiffs must allege that: (1) FloSports unjustly retained a benefit to Plaintiffs' detriment; and (2) FloSports' retention of the benefit violates fundamental principles of justice, equity, and good conscience. *HPI Health Care Servs.*, 545 N.E.2d at 679. Plaintiffs adequately pled precisely this.

In its Motion, FloSports argues that Plaintiffs' unjust enrichment claim fails because Plaintiffs "have not articulated a single other claim upon which unjust enrichment may be based." This argument fails on multiple grounds. First, as explained above, Plaintiffs plausibly alleged claims of defamation, false light, intentional infliction of emotional distress, tortious interference with business relationships, tortious interference with contractual relations, violation of the UDTPA, and Misrepresentation – and Plaintiffs incorporates these claims in its claim for unjust enrichment. *See* D.I. 1, ¶112. Because Plaintiffs have sufficiently pled causes of action for their other pending claims, their unjust enrichment claim cannot be dismissed.

Notwithstanding this, Plaintiffs' claim for unjust enrichment also proceeds on a distinct theory—competitive benefit through market redirection and competitor elimination—separate from the reputational harm theory underlying defamation. FloSports' assertion that no benefit was conferred ignores this competitive benefit theory: FloSports received a benefit through the redirection of Plaintiffs' customers, viewers, and subscribers; appropriation of Plaintiffs' good reputation and goodwill in the wrestling community; and competitive advantage gained by eliminating a primary rival through false statements. This satisfies unjust enrichment's requirement that "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that

defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs.*, 545 N.E.2d at 679. Plaintiffs sufficiently state a claim for unjust enrichment, and FloSports' Motion must be denied.

## VI. CONCLUSION

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully request the entry of an order denying Defendant FLOSPORTS, INC.'s Motion to Dismiss Plaintiffs' Complaint and granting Plaintiffs such other and further relief deemed fair and reasonable by this Honorable Court.

Dated: January 28, 2026

**MARON MARVEL BRADLEY ANDERSON & TARDY LLC**

*/s/ Stephanie A. Fox*
Stephanie A. Fox (DE Bar ID No. 3165)
Thomas J. Williams (DE Bar ID No. 6965)
1201 N. Market Street, Ste. 1100
P.O. Box 288
Wilmington, DE 19801
Phone: (302) 472-1739
saf@maronmarvel.com
twilliams@maronmarvel.com

Jeffrey S. Becker (*pro hac vice*)
Nicole O'Toole Peterson (*pro hac vice*)
Olivia E. Duggins (*pro hac vice*)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
npeterson@smbtrials.com
oduggins@smbtrials.com
*Attorneys for Plaintiffs*
*NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.*