**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FLOSPORTS, INC.,<br><br>Defendant. | Case No. 1:25-cv-01472 RGA |

**DEFENDANT FLOSPORTS, INC.'S**
**REPLY BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION**
**<u>TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6)</u>**

Dated: February 4, 2026.

**BLANK ROME LLP**

Adam V. Orlacchio (#5520)
Anna E. Currier (#6271)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 425-6431
adam.orlacchio@blankrome.com
anna.currier@blankrome.com

*Counsel for Defendant FloSports, Inc.*

## TABLE OF CONTENTS


**Page**

I. Plaintiffs' Response Confirms the Complaint Fails to Plead a Claim Upon Which Relief May be Granted ..... 1

A. Plaintiffs Fail to State a Claim for Defamation Because the Statements Are Substantially True, Can be Innocently Construed, or are Privileged ..... 1

i. The YouTube Takedown Requests, Related Comments, and Statements made to Wrestling or Legal Authorities are Privileged Statements ..... 1

ii. The Allegedly Defamatory Statements Were Substantially True ..... 2

iii. The Social Media Posts are Non-Actionable Opinion Statements ..... 3

iv. Plaintiffs Still Fail to State a Claim of Defamation Per Se or Per Quod ..... 5

1. Failure to Allege Defamation Per Se ..... 5

2. Plaintiffs Fail to Allege Defamation Per Quod Because They Fail to Allege Special Damages with Heightened Particularity ..... ..8

B. Plaintiffs Concede Their Invasion of Privacy by False Light Claim Must Be Dismissed if the Court dismisses their Defamation Claims ..... 9

C. Plaintiffs Intentional Infliction of Emotional Distress Claim Fails ..... 10

D. Plaintiffs' Claims for Tortious Interference with Prospective Business Relationships (Count IV) and Contractual Relationships Fail (Count V) Because They are Based Upon the Failed Defamation Claim ..... 10

E. Plaintiffs Fail to State a UDTPA Claim ..... 12

F. Plaintiffs Fail to State a DMCA Misrepresentation Claim ..... 13

G. Plaintiffs Fail to State a Claim for Unjust Enrichment ..... 14

II. Conclusion ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Ass'n v. 3Lions Publ'g, Inc.*,
No. 14 C 5280, 2015 WL 1399038 (N.D. Ill. Mar. 25, 2015) ....13

*Andrews v. At World Properties LLC*,
2023 IL App (1st) 122095....3, 10

*Antonacci v. Seyfarth Shaw*,
LLP, 2015 IL App (1st) 142372 ....10

*Brinley Holdings Inc. v. RSH Aviation, Inc.*,
580 F. Supp. 3d 520 (N.D. Ill. 2022) ....11

*Coghlan v. Beck*,
2013 IL App (1st) 120891, 984 N.E.2d 132 ....3, 5

*Dubinsky v. United Airlines*,
708 N.E.2d 441 (1999)....6

*Fox v. Crain Commc'ns Inc.*,
2021 IL App (1st) 200153- ....9

*Glob. Relief Found., Inc. v. New York Times Co.*,
390 F.3d 973 (7th Cir. 2004) ....3

*Green v. Rogers*,
234 Ill. 2d 478, 917 N.E.2d 450 (2009) ....7

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) ....11, 15

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
227 Ill.2d 381, 397-98 (2008) ....5

*Jacobson v. CBS Broadcasting, Inc.*,
2014 IL App (1st) 132480....11

*Kuwik v. Starmark Star Marketing & Administration, Inc.*,
156 Ill.2d 16 (1993) ....1

*Little v. JB Pritzker for Governor*,
No. 18 C 6954, 2019 WL 1505408 (N.D. Ill. Apr. 5, 2019)....7

*Lykowski v. Bergman*,
700 N.E.2d 1064 (Ill. App. Ct. 1998) ....................................................................4

*Lyssenko v. Int'l Titanium Powder, LLC*,
No. 07 C 6678, 2008 WL 8625903 (N.D. Ill. May 6, 2008) ...................................12

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010)....................................................................................1

*Muzikowski v. Paramount Pictures Corp*.,
322 F.3d 918 (7th Cir. 2003) ..................................................................................10

*Pension Benefit Guar. Corp. v. White Consol. Indus. Inc*.,
998 F.2d 1192 (3d Cir.1993)....................................................................................1

*Reflection Window & Wall, LLC v. Talon Wall Holdings, LLC*,
2024 WL 1376135 (N.D. Ill. Mar. 31, 2024).............................................................9

*Sunny Factory, LLC v. Chen*,
No. 21 C 3648, 2022 WL 742429 (N.D. Ill. Mar. 11, 2022) ...................................13

*Voyles v. Sandia Mortg. Corp*.,
196 Ill. 2d 288, 751 N.E.2d 1126 (2001) ................................................................12

**Statutes**

17 U.S.C. § 512(f)(1) ..............................................................................................13

**Other Authorities**

Fed. R. Civ. P. 9 .........................................................................................................9

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 15

Plaintiffs assert eight claims against FloSports (Counts I–VIII) based on: (1) FloSports allegedly reporting Plaintiffs to authorities; (2) FloSports requesting that YouTube remove certain of Plaintiffs' videos; and (3) Pyles' and Kozak's social media posts. Whether taken alone or in combination, none of these allegations state a claim upon which relief may be granted and the Complaint should be dismissed with prejudice under Rule 12(b)(6).

## I. Plaintiffs' Response Confirms the Complaint Fails to Plead a Claim Upon Which Relief May be Granted

In this jurisdiction, "[i]n order to withstand a motion to dismiss, a complaint's factual allegations must be enough to raise a right to relief above the speculative level . . . [t]his requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010) (internal quotations and citations omitted). On a motion to dismiss, the Court is must consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer,* 605 F.3d at 230; *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993); Thus, the Court may, and should, consider not just Plaintiffs' Complaint but the Exhibits provided in support.

### A. Plaintiffs Fail to State a Claim for Defamation Because the Statements Are Substantially True, Can be Innocently Construed, or are Privileged

#### i. The YouTube Takedown Requests, Related Comments, and Statements made to Wrestling or Legal Authorities are Privileged Statements

Plaintiffs do not dispute that under *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill.2d 16, 27 (1993) (Defendant's Opening Brief ("Op. Br.") p. 20–21), any reports FloSports made to legal or wrestling authorities are subject to qualified privileged and non-

actionable. Nor could they, as Plaintiffs' own authority, cited in the Response, confirms an "absolute privilege exists for any statements made during any step preliminary and necessary to a judicial or quasi-judicial proceeding . . . [this] privilege provides a complete bar to any claim alleging defamation, regardless of the speaker's motive or the unreasonableness of his conduct." *See Lykowski v. Bergman*, 299 Ill. App. 3d 157, 165 (Ill. App. 1st1998) (citing Prosser and Keeton on Torts, (5th ed.1984), § 114 at p. 819); Resp. p. 8. The policy reason for this privilege is obvious; it "assures that individuals are in no way discouraged from lodging complaints with the appropriate disciplinary authorities." *Id*. Plaintiffs nevertheless claim FloSports acted with "reckless disregard" of the statements' falsity. Response ("Resp.") p. 9. This is rebutted by the fact that the statements, as alleged in the Complaint, are substantially true. *See* Section I(A)(ii), *infra*. Plaintiffs further contend even if FloSports' reports were privileged, FloSports waived that privilege through its "dissemination" of the reports to third parties through the social media posts. Resp. p. 9. But, a review of the social media posts shows that Pyles' post does not mention Plaintiffs, what was reported, any crime, or to whom specifically anything was reported to. Compl. Ex F pp. 4, 6. Kozak's post is even more vague–it does not mention Plaintiffs, what (if anything) was reported and to whom or what authorities. Compl. Ex. G p. 27; *see* Op. Br. at 10-11 (discussing case law showing vague statements about committing crimes are not defamation per se). As such, it is not logical to infer that any privileged statements would have been waived by "dissemination."

**ii. The Allegedly Defamatory Statements Were Substantially True**

Plaintiffs allege that FloSports, through the social media posts, stated: (1) Plaintiffs enable embeddings on their YouTube videos; (2) Plaintiffs are aware that when embeddings are enabled, their videos can become embedded in third-party pornography sites; and (3) Plaintiffs obtain profit

from this arrangement through increased view counts. Plaintiffs' filings confirm all three statements are substantially true. Gharavi acknowledges that, to his "great dismay," third-party websites copy and distribute or otherwise re-post his videos on pornographic and offensive external websites. Compl. ¶21–22. Plaintiffs admit that this is a common problem in the wresting industry. *Id.* at ¶23. The fact that Gharavi is not "affiliated" with the websites, or does not explicitly consent to it, does not change the fact that Gharavi's YouTube videos are able to be re-posted to third-party pornography sites, which in turn increases views, and necessarily increases profits– thus, the statements are substantially true.[1] Substantial truth is a complete defense to defamation where, as here, the "gist" or "sting of the alleged statement is true." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 42, 984 N.E.2d 132, 146.

Plaintiffs' citation to *Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973 (7th Cir. 2004) does not help their argument, considering the court affirmed the grant of summary judgment for defendants based on truth of the reports. *Id.* at 986-87. Here, "plaintiffs[]essentially admitted the gist or sting of the hurtful utterance, of which they now complain." *Andrews v. At World Properties LLC*, 2023 IL App (1st) 122095 ¶ 24. This Court should dismiss Plaintiffs' defamation claims against FloSports on the basis that they are substantially true.

### iii. The Social Media Posts are Non-Actionable Opinion Statements

Plaintiffs argue the social media posts were not opinion-based because they are "clearly"

---

[1] To sanitize Gharavi's knowledge of these embeddings and circumvent Defendants' motion to dismiss, Plaintiffs now claim that the YouTube videos are "pirated" or "otherwise re-posted". However, in Plaintiffs' Second Amended Complaint filed in the District Court for the Northern District of Illinois, Eastern Division, Plaintiffs admitted that "**Mr. Gharavi has identified a number of websites that have embedded the Midwest Wrestle YouTube videos or otherwise re-posted his videos (the "Third-Party Websites")**. C.A. No. 1:24-cv-1969, D.I. 69, ¶27. (emphasis added).

factual in nature, and even if hyperbolic, they make the false statement of fact that Gharavi monetized his videos of minors on pornographic websites. Resp. p.5. Plaintiffs' Complaint (and Response) mischaracterizes the actual content of the social media posts. The Court should disregard Plaintiffs' argument that the social media posts were made in "support" of FloSports' "false statement of fact that Gharavi monetized his videos of minors on pornographic websites" (*id.*) because that statement refers to a litigation hold email from FloSports' counsel to Gharavi's counsel that Gharavi monetized his videos of minors on pornographic websites (*see* Compl. ¶36, Ex. D). Unlike a social media post, this alleged statement was never "published" – until Plaintiffs filed this lawsuit. FloSports' counsel's statement to Gharavi's own legal representative, about Gharavi, could never be an unprivileged publication to a third party to support a defamation claim. Indeed, Plaintiffs' own Response admits that the statement was not published to a third party but was sent directly "to Gharavi." Resp. p.3. Additionally, as a litigation hold email, the statement is privileged as it was made during a preliminary step necessary for judicial proceedings. *See Lykowski*, 299 Ill. App. 3d at 165. Thus, this statement and Plaintiffs' dubious position that it somehow "supports" a defamation claim based on the social media posts should be rejected.

To the extent Plaintiffs are referring to Pyles' social media posts (Compl. Ex. F at p. 11), that statement does not even identify Gharavi, explicitly mention or refer to pornographic sites, or even mention the term child pornography. *Id*. And, the comments under the post demonstrate the public had no idea who this social media post was even referring to. *Id.* ("Why not just put his name out there?" "if you know who he is . . . why don't you…call them out for who they are?"). Plaintiffs claim Defendant "mischaracterizes" Illinois law but make no attempt to dismantle the

case law or analysis for this argument besides citing to the allegations in the Complaint where Defendant used language characterizing Plaintiff as "true evil" and a "parasite," the exact type of figurative, hyperbolic language that is protected under the first amendment and Illinois law. *Coghlan,* 2013 IL App (1st) 120891, ¶ 40 (baring defamation action "based on loose, figurative language that no reasonable person would believe presented facts" and finding exaggerated, figurative and hyperbolic speech are protected by the first amendment) (citing *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc*., 227 Ill.2d 381, 397–98 (2008)). Additionally, theories from other, independent individuals regarding Gharavi's motives in continuing to post videos on YouTube despite knowing they are embedded on pornographic sites cannot be imputed to FloSports, and are statements of opinion. Plaintiffs' defamation claims should be dismissed.

**iv. Plaintiffs Still Fail to State a Claim of Defamation *Per Se* or *Per Quod***

**1. Failure to Allege Defamation *Per Se***

Plaintiffs attempt to support their defamation *per se* claim by arguing that Plaintiffs were sufficiently identified in the social media posts, and further that Defendant defamed Plaintiffs by purportedly contacting a wrestling coach with "false information," which allegedly resulted in Plaintiffs' expulsion from a wrestling match. Resp. p.16; Compl. ¶42. First, the alleged statement made to a wrestling official is an absolutely qualified statement that cannot form the basis of defamation. *See* Section I(A)(i), *supra*. Second, Plaintiffs argue that Gharavi was identified by name in a May 25, 2023 email from FloSports' counsel to Gharavi pursuant to a litigation hold email. *See* Compl. ¶36, Ex. D. This argument should be dismissed, as Plaintiffs own Response admits that this statement was not published to any third party but was sent directly "to Gharavi" pursuant to a litigation hold email exchanged between counsel. Resp. p.3; *see* Compl. Ex. D.

Regarding the social media posts, Defendant has never argued that a defamation *per se*

claim always requires an identification of plaintiff by name. Rather, a defamation *per se* claim cannot survive **when it does not identify a specific person and requires extrinsic evidence to determine the identity of the subject**. *See Dubinsky v. United Airlines*, 708 N.E.2d 441, 447 (1999). This is exactly the case here–an actual review of the social media posts shows that the Plaintiffs were not explicitly identified in the social media posts, and commentors on the posts had no indication as to who the social media posts were in reference to ("a little bit lost here," "name names," "name the guy," "why not just put his name out there?," "if you know who he is . . . why don't you. . .call them out for who they are?"). Compl. Ex. F pp. 4, 7, 11. And, Plaintiffs concede, extrinsic evidence from other social media accounts/posts was required to determine the identity of the subject. *See* Response pp. 11–12 (admitting that **other** social media users identified Plaintiffs by name, and **another poster** identified Gharavi by name). Plaintiffs are attempting to extract a tortured reading of *Dubinsky*, when the holding is quite simple–a defamation *per se* claim fails if the statement is required to be read with extrinsic data to make it clear who the defendant was referring to. *Dubinsky*, 708 N.E. 2d at 447. That is quite literally the case here.

Additionally, Plaintiffs miss the mark in citing vicarious liability authority in response to Defendants' argument that the Kozak's social media posts cannot be imputed to FloSports. Plaintiffs failed to name Pyles and Kozak individually (despite previously naming them as individual Defendants in a prior Illinois action, C.A. No. 1:24-cv-1969). Defendant does not argue there are no facts under which it could be held vicariously liable for Kozak's conduct, but instead maintains that Plaintiffs' allegations fall short of establishing Kozak was acting on behalf of FloSports when posted on "IntermatWrestle.com" under username "Jon_Kozak" (with no reference to FloSports). *Id.* ¶¶ 28, 44 (alleging, upon information and belief, Kozak authored social media statements "acting in his capacity as [employee] of Defendant," but citing to Compl. Exs.

B & F, which do not support Kozak was acting in his capacity as an employee of FloSports). Plaintiffs concede this point in the Response by citing to a social media post in which FloSports is not named or referenced. *See* Resp. p.14 (citing to Compl. Ex. G, p. 27).

Plaintiffs also argue they sufficiently pled a defamation *per se* claim because Defendant's statements purportedly impute the commission of a crime or damage, or negatively impact Gharavi's ability to perform his business duties. Resp. p.14. In order to state a defamation *per se* claim based on "words that impute a person lacks ability or otherwise prejudices that person in her or his profession," the defamatory statements "must be directly associated with job skills or functions." *Green v. Rogers*, 234 Ill. 2d 478, 491–92 (2009); *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2019 WL 1505408, at *8 (N.D. Ill. Apr. 5, 2019). Here, none of the allegedly defamatory statements relate to the quality of Plaintiffs' goods or services. In their Complaint, Plaintiffs emphasize the "high-quality" of their videos and content, (which is the basis of Plaintiffs' business from their YouTube channel) (Compl. ¶¶14, 16), and Gharavi's experience and expertise as a wrestling officiator. Compl. ¶9–11. But Plaintiffs do not allege that Defendant challenged the quality of Plaintiffs' videos or content, nor Gharavi's skills officiating. Importantly, Defendants have *never* stated that Plaintiffs created pornography or distributed it. Moreover, alleging that Gharavi intentionally allows pornographic websites to embed his videos into their own websites does not directly accuse Plaintiffs of committing a particular crime. *See* Compl. ¶43(g). And, a "mere inference of illegal activity" is not enough; rather, "[t]o allege *per se* defamation for imputing a criminal act the defendant's statement must be an express accusation of a specific indictable offense, not a mere inference of illegal activity." *Little,* 2019 WL 1505408, at *8 (holding "extortion" could refer to a criminal act or "a coercive frivolous lawsuit which is an abuse

of process civil offense and not an indictable criminal offense.”). Indeed, the Exhibits confirm some commentors’ interpretation that they did not perceive a crime. *See* Ex. G, p. 17.[2]

Kozak’s statement that FloSports attempted to remove Plaintiffs’ videos for copyright infringement is also not defamatory *per se* and Plaintiffs fail to allege any special damages arising from it. This comment also does not impugn Plaintiffs’ integrity or ability to perform their profession as a wrestling official. Nor does it accuse Plaintiffs of committing a crime as opposed to a civil violation. Further, contrary to Plaintiffs’ assertion, Pyles and Kozak did not “disseminate” the YouTube takedown notices through the social media posts. Kozak merely referenced trying to strike Gharavi’s YouTube channel due to infringement. *See* Ex. G, p. 27. And, Pyles’ social media statement does not refer to a YouTube takedown notice at all. *See* Ex. F., pp. 6, 10.

Plaintiffs additionally argue that FloSports’ statement accusing Gharavi of “intentionally profiting from the dissemination of child pornography” (Resp. p. 17) is not reasonably capable of innocent construction. *Id.* But, this statement is from a communication to Gharavi (through his counsel), which was not published to a third party (until this lawsuit) and is subject to absolute privilege. *See* Section A.i, *supra*. A review of the social media posts show that they do not actually accuse Plaintiffs of intentionally profiting off, distributing, or creating child porn. Plaintiffs’ characterization, because they were offended by Defendant’s purported statements, does not turn non-actionable protected statements into actionable ones.

**2. Plaintiffs Fail to Allege Defamation *Per Quod* Because They Fail to Allege Special Damages with Heightened Particularity**

[2] *See also* Ex. G, p. 65 (“The activities noted may not constitute a crime by the letter of the law but it’s pretty shitty.”); Ex. G, p. 64 (“Maybe he’s not breaking any laws but the fact that he not only hasn’t taken down most of the video, but is posting ‘new’ ones (from some random Christmas tournament in 2021, wtf? to me proves he’s a creep at best, probably worse.”).

Plaintiffs devote little attention to saving their defamation *per quod* claim, merely arguing they have alleged sufficient facts to pled special damages. *See* Resp. p.18; Compl. ¶42. To establish defamation *per quod*, special damages must be alleged. General allegations that indicate "damage to one's health or reputation, **economic loss [*i.e.*, loss of salary]**, and emotional distress are insufficient to state a cause of action for defamation *per quod*." *Fox v. Crain Commc'ns Inc.*, 2021 IL App (1st) 200153- U, ¶ 58 (emphasis added). Claiming that unidentified persons requested that Gharavi cease filming wrestling matches and/or unspecified contracts were cancelled are general statements of loss that are not sufficient. *See Reflection Window & Wall, LLC v. Talon Wall Holdings, LLC*, 2024 WL 1376135, at *7 (N.D. Ill. Mar. 31, 2024) (dismissing defamation *per quod* claims because allegations of damage to reputation and business of at least 150 million dollars were too vague to satisfy Rule 9). A plaintiff must itemize losses to plead specific damages of actual injury. *Id.* (internal citations and quotations omitted). Importantly, Plaintiffs do not (and cannot not) allege with particularly any special damages that resulted from the social media posts. Plaintiffs' vague and conclusory "loss of reputation" and "diminished future prospects" allegations (Compl. ¶¶55, 60-61) are too general to adequately plead special damages.

**B. Plaintiffs Concede Their Invasion of Privacy by False Light Claim Must Be Dismissed if the Court dismisses their Defamation Claims.**

Plaintiffs cite no legal authority to salvage their invasion of privacy claim, refer only to the "well-pled facts" in their Complaint, and list the inverse of FloSports' arguments dismantling Plaintiffs' poorly pled defamation claim. Resp. p.33. Plaintiffs thus concede that without a sufficient defamation claim, an invasion of privacy claim cannot survive. *See id.* In contrast, FloSports' set forth the necessary pleading requirements for an invasion of privacy claim and

explains why Plaintiffs failed to meet them–most critically, because the social media posts do not actually identify Plaintiffs, and the same reasons Plaintiffs' defamation claim fails: because the statements are opinion statements that are substantially true. *Muzikowski v. Paramount Pictures Corp*., 322 F.3d 918, 927 (7th Cir. 2003) (explaining if social media posts forming basis of plaintiff's defamation claim could "reasonably be construed" as referring to someone other than plaintiff, they would not be concerning plaintiff and therefore cannot support a false light claim). Plaintiffs make zero effort to provide a single case demonstrating they have sufficiently plead an invasion of privacy claim. Accordingly, Count II should be dismissed for failure to state a claim.

### C. Plaintiffs' Intentional Infliction of Emotional Distress Claim Fails

Plaintiffs concede the extremely "high hurdle" a plaintiff has in establishing this claim, and ignore well established Illinois (and Texas) cited in the Opening Brief authority that using an IIED as a catch-all tort, when the claim is based on the same conduct as a defamation claim, is improper and dismissing the IIED claim will accordingly. *See* Op. Br. pp. 22-23. Plaintiffs also do not cite a single case demonstrating a social media post can constitute extreme and outrageous conduct. Accordingly, Count III should be dismissed for failure to state a claim.

### D. Plaintiffs' Claims for Tortious Interference with Prospective Business Relationships (Count IV) and Contractual Relationships Fail (Count V) Because They are Based Upon the Failed Defamation Claim

Because Plaintiffs' defamation claim fails, their claims for tortious interference with prospective business relationships (Count IV) and tortious interference with contractual relations (Count V) likewise fail. *Andrews v. At World Properties LLC*, 2023 IL App (1st) 122095 ¶ 36 (dismissing intentional interference with business expectancy claim on the basis that plaintiffs' defamation claim was dismissed); *see also Antonacci v. Seyfarth Shaw*, LLP, 2015 IL App (1st)

142372, ¶ 33 (same); *Jacobson v. CBS Broadcasting, Inc.*, 2014 IL App (1st) 132480, ¶ 54 (same).

Plaintiffs also ignore the specific requirements of both claims, which is an additionally reason they fail. First, a claim of tortious interference with business relationships requires the defendant's *knowledge* of plaintiff's expectancy to enter into the business relationship or contract. *Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022). A "reasonable expectancy" of a business opportunity is more than mere "hope or opportunity of a future business relationship." *Id.* Rather, the plaintiff must show the defendant committed "purposeful interference," such as fraud, deceit, intimidation, or deliberate disparagement. *Id.* at 557. Here, Plaintiffs do not point to any allegation which shows that FloSports had any knowledge of Plaintiffs' expectancy for these purported relationships. The allegations that Plaintiffs do point to in supporting this Count are conclusory and admit they cannot identify or specify any particular individual who allegedly caused Ghavari's "expulsion" from wrestling events. *See* Compl. ¶¶41-42 ("upon information and belief, defendant, through Mr. Pyles, Mr. Kozak and/or other representatives of Defendant …."). And, critically, Paragraphs 41, 42, 50, and 51, upon which Plaintiffs rely, **do not establish any sort of business expectancy of which Defendant was aware**. *See* Compl. ¶¶41, 42, 50, 51. Plaintiffs' citations to *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) does not change this result. Resp. pp. 36-37. In *HPI*, it was undisputed that (1) a contract existed with a particular entity, (2) the defendant was aware of the contract. *HPI Health Care Servs*., 545 N.E.2d at 676. In contrast, those elements have not been properly plead here. Plaintiffs' Complaint fails to allege that FloSports had any knowledge of prospective business relationships or contracts; Plaintiffs' Complaint cannot even decide who

"interfered" with these alleged business relationships or contracts. *See* Compl. ¶¶41-42. And, despite pleading that Gharavi's profession as a wrestling official entails officiating "hundreds of wrestling matches across the United States" (Compl. ¶¶1,9) Plaintiffs do not identify a single event in which Gharavi had a reasonable expectation of officiating but was denied because of FloSports. Plaintiffs argue that because Defendant challenged Plaintiffs failure to identify a particular event in which Gharavi had a reasonable expectation of officiating but was denied, FloSports is "fabricating a requirement." Resp. p.35. But, FloSports is merely demonstrating how Plaintiffs' allegations fail to meet the legal standard in Plaintiffs' own authority, *Voyles v. Sandia Mortg. Corp*., 196 Ill. 2d 288, 300–01 (2001), where a tortious interference claim failed because it involved defendant forwarding information that was "accurate." *Id.* at 1134. Accordingly, Counts IV and V should be dismissed for failure to state a claim.

**E. Plaintiffs Fail to State a UDTPA Claim.**

The only argument that Plaintiffs set forth to salvage this claim is that FloSports allegedly misrepresented to consumers that Gharavi's YouTube videos were used in immoral ways and that these false representations were published knowing/hoping they would harm Plaintiffs' business. Resp. p. 38. First, a claim under the UDTPA is "fundamentally intended to cover unfair trade practices, not [alleged defamatory statements]." *Lyssenko v. Int'l Titanium Powder, LLC*, No. 07 C 6678, 2008 WL 8625903, at *6 (N.D. Ill. May 6, 2008). While Plaintiffs argue the alleged defamatory statements may still attack the quality of goods or services and a person's character, that ignores the actual statements and allegations in the Complaint. The social media posts only referenced an anonymous individual's conduct and character; it did not attack the actual quality of anyone's goods or services – let alone Plaintiffs'. *See* Compl., Exs. F, G. Plaintiffs rely on

speculative arguments that assume if Gharavi is accused of "crimes" (which he has not been) he will not be invited to film wrestling events or people will not watch his videos. Resp. p. 38. These specious arguments are not sufficient to establish a claim under the UDTPA because Plaintiffs cannot actually point to any statements that impugn the quality of Plaintiffs' good/services rather than Plaintiffs' integrity. *See Am. Med. Ass'n v. 3Lions Publ'g, Inc.*, No. 14 C 5280, 2015 WL 1399038, at *5 (N.D. Ill. Mar. 25, 2015). Accordingly, Count VI should be dismissed for failure to state a claim.

### F. Plaintiffs Fail to State a DMCA Misrepresentation Claim

Plaintiffs' Complaint does not support the argument that FloSports ever *knowingly* made a material misrepresentation in a takedown notice. To state a misrepresentation claim, Plaintiffs must plead facts that FloSports "knowingly materially misrepresent[ed]... that material or activity is infringing..." *Sunny Factory, LLC v. Chen*, No. 21 C 3648, 2022 WL 742429, at *4 (N.D. Ill. Mar. 11, 2022) (quoting 17 U.S.C. § 512(f)(1)) (emphasis added). A "copyright owner cannot be liable simply because an **unknowing mistake** is made, **even if the copyright owner acted unreasonably in making the mistake** . . . [r]ather, there must be a demonstration of **some actual knowledge of misrepresentation** on the part of the copyright owner." *Id.* Plaintiffs' Complaint and Exhibits show that on May 25, 2023, a "social media specialist" from FloSports submitted a copyright takedown notice for certain of Gharavi's videos was issued by FloSports. Compl. Ex. A. On June 2, 2023, FloSports' counsel sent Gharavi a cease and desist letter regarding his interference with FloSports' exclusive media rights agreements. *Id.* at Ex. C. On June 7, 2023, FloSports counsel clarified that the content does not infringe on FloSports' copyright, but rather violate FloSports' "exclusive right" to record and publish content from certain sporting events. *Id.*

at Ex. B. p.2. Plaintiffs have set forth no allegations or evidence that FloSports *knew* the content did not infringe on a copyright, *and then* submitted the takedown notice alleging that it did. Rather, it is clear based on the cease and desist letter (Ex. C) and email chain (Ex. B) that a social media specialist mistakenly submitted a copyright takedown notice to YouTube, but then counsel clarified it was concerned about FloSports' exclusive streaming rights, not its copyrights. The Complaint only shows that FloSports was aware *after* the takedown notice was issued that the content did not infringe its copyright. This "unknowing mistake" even if "unreasonable" is not sufficient to support a misrepresentation claim. *Sunny Factory,* , 2022 WL 742429, at *4. Further, YouTube's policies permit takedown requests for violations of private contractual rights as well as copyright infringement.[3] And, Kozak's stray, mistaken remark about the nature of the takedown request does not demonstrate actual knowledge of the misrepresentation on behalf of FloSports. Compl. ¶28. Accordingly, Count VII should be dismissed for failure to state a claim.

**G. Plaintiffs Fail to State a Claim for Unjust Enrichment**

Plaintiffs claim they have plausibly alleged Counts I–VII, and thus the unjust enrichment claim can piggyback off these other claims. Resp. p. 42. But, Plaintiffs have not sufficiently pled any cause of action, and their deficient pleading and Defendant's arguments in support of dismissal establish that. *See Love*, 2024 WL 809107, at *16 (noting unjust enrichment is a "theory of recovery when a plaintiff prevails on some other claim."). Plaintiffs then argue they have established a claim for unjust enrichment because they have sufficiently alleged that defendant

[3] *See e.g.*, You Tube Legal Complaints Policy, available at https://support.google.com/youtube/topic/2803176?hl=en&ref_topic=6151248&sjid=1118051620370571 4589-NC (explaining discussing various "legal complaints" that can be submitted to YouTube)

unjustly retained a benefit to plaintiffs' detriment, which violates "fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs.* 545 N.E.2d at 679. Predictably, Plaintiffs do not (and cannot) point to any allegation in their Complaint that supports this standard is met, and instead attempt to speculate that FloSports received some type of benefit through re-directing Plaintiffs' customers and gaining a competitive advantage. Merely arguing that a competitor achieved some sort of competitive advantage through conclusory allegations of "market re-direction," without actually pleading specific facts to explain what kind of competitive advantage was obtained, is not sufficient. Plaintiffs do not allege they provided FloSports anything they profited from–vague assertions that "FloSports received a benefit through the redirection of Plaintiffs' customers" is a tortured reading of "conferring a benefit" under an unjust enrichment theory. Accordingly, Count VIII should be dismissed for failure to state a claim.

## II. Conclusion

For the aforementioned reasons, FloSports respectfully request that the Court dismiss the claims asserted against it, with prejudice, for failure to state a claim pursuant to Rule 12(b)(6).

Dated: February 4, 2026.

Respectfully submitted,

**BLANK ROME LLP**
By: */s/ Anna E. Currier*
Adam V. Orlacchio (#5520)
Anna E. Currier (#6271)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 425-6431
adam.orlacchio@blankrome.com
anna.currier@blankrome.com

*Counsel for Defendant FloSports, Inc.*