**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **NIMA GHARAVI, RIGHT CALL OFFICIALS, INC.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-1472-MAK** |
| | : | |
| **FLOSPORTS INC.** | : | |

# MEMORANDUM

**KEARNEY, J.** **September 23, 2026**

An Illinois wrestling official video records wrestling matches for posting on his YouTube channel. Agents of a Delaware corporation also posting sporting events commented about the official's videos including describing his allowing third party pornographers to embed his videos onto their websites. The Delaware corporation issued takedown notices affecting the official's distribution of his videos for a few weeks. It also allegedly characterized his video business in a way which affected the official's ability to work a late December 2023 wrestling tournament as an official. The official and his video company sued for damages caused by the alleged statements made by agents of the Delaware corporation. The Delaware corporation moves to dismiss arguing the Illinois wrestling official and his company do not plead facts allowing us to infer a plausible basis for a variety of tort claims relating to alleged defamatory statements which do not identify the official by name. We first define the governing law for each alleged claim. We then analyzed each claim. We dismiss several of the Illinois wrestling official's claims without prejudice to plead facts once we move into discovery. But the official can move forward now on claims of tortious interference with one officiating opportunity in late December 2023 as well as a claim under the Deceptive Trade Practices Act based on alleged harm to his video business.

## I. Alleged facts

Nima Gharavi is a registered wrestling official with the National Collegiate Athletic Association (NCAA), the Illinois High School Association, the Illinois Elementary School Association, USA Wrestling, and other wrestling organizations.

[1] Mr. Gharavi officiates wrestling matches all over the country.[2] He also attends local and regional wrestling matches hosted by high schools, colleges, and universities across the United States.[3] Mr. Gharavi video records the wrestling matches he attends and posts edited videos of wrestling matches to his YouTube channel "Midwest Wrestle."[4] Midwest Wrestle has over 175,000 followers on YouTube.[5] Mr. Gharavi holds the copyrights to all original video content posted to Midwest Wrestle.[6]

***FloSports expressed concern with Mr. Gharavi's videos.***

Mr. Gharavi is not the only company publishing wrestling videos. For example, online platform FloSports specializes in streaming exclusive sports content including wrestling matches also allegedly recorded by Mr. Gharavi.[7] It uses social media such as YouTube and "X" (formerly Twitter) to post its content.[8] This content includes wrestling coverage.[9]

A FloSports representative submitted takedown notices under the Digital Millennium Copyright Act for twenty videos posted on MidWest Wrestle's YouTube channel.[10] Mr. Gharavi successfully defended each takedown notice for three weeks.[11]

FloSports employees emailed among themselves about Mr. Gharavi.[12] They described Mr. Gharavi as a "guaranteed predator who shoots videos of [high school] events and posts them on porn sites[,]" claimed Mr. Gharavi intentionally "enables the embed function" for the "purpose" of allowing others to post videos on pornography websites, and claimed Mr. Gharavi films wrestling matches "for a deviant purpose."[13] These internal emails show a FloSports's

representative's intent to contact wrestling authorities and leadership alerting them to Mr. Gharavi's "sinister" conduct.[14]

FloSports's Executive Vice President and General Counsel sent Mr. Gharavi a letter informing Mr. Gharavi of FloSports's exclusive rights to record and distribute the wrestling events it broadcasts and demanded Mr. Gharavi remove all content Mr. Gharavi filmed at FloSports events from his YouTube channel.[15] FloSports's General Counsel told Mr. Gharavi the videos posted to his YouTube channel are shared on pornographic websites and accused Mr. Gharavi of failing to block embedding or take other actions to prevent the content's exploitation.[16]

FloSports's counsel also emailed Mr. Gharavi's former counsel claiming Mr. Gharavi "has chosen to monetize [] distribution of child pornography."[17]

***FloSports's social media activity.***

FloSports's agents authored and published public social media posts discussing Mr. Gharavi in an unfavorable light.[18] But none mentioned Mr. Gharavi by name. One FloSports agent: (1) identified Mr. Gharavi as an official within the wrestling industry; (2) stated FloSports has "done everything in its power to eliminate Mr. Gharavi" from the wrestling industry; (3) characterized Mr. Gharavi as "true evil"; (4) "paint[ed] Mr. Gharavi's motives in recording and posting his videos as coming from a person 'with twisted desires'"; (5) called Mr. Gharavi a "parasite" and confirmed FloSports has taken steps to alert the public of Mr. Gharavi's danger to the community; (6) "confirm[ed] [] FloSports published statements about Mr. Gharavi's alleged immoral and dangerous conduct to 'various authorities and wrestling leadership'"; (7) "accus[ed] Mr. Gharavi of intentionally allowing pornographic websites to embed his videos into their own website"; and (8) "accus[ed] Mr. Gharavi of intentionally profiting from pornographic websites embedding his videos."[19] Another FloSports agent (1) "[s]tat[ed] [] Mr. Gharavi's YouTube videos

are embedded on pornographic websites;" and (2) "admitted" FloSports issued knowingly false takedown notices "against Mr. Gharavi in retaliation against Mr. Gharavi for his allegedly inappropriate behavior."[20]

None of the social media posts identify Mr. Gharavi by name.

***FloSports's effect on Mr. Gharavi.***

FloSports and its agents' actions caused Mr. Gharavi financial damage, reputational harm, and danger of physical harm.[21] Mr. Gharavi could not post new content during the pending takedown notices.[22] It took him four months to restore the viewership and revenue generated before the takedown notices.[23]

FloSports's agents forwarded information about Mr. Gharavi's character to Northwestern University's Head Wrestling Coach, Matt Storniolo, during the two-day 2023 Midlands Championships collegiate wrestling tournament beginning on December 29, 2023.[24] The tournament revoked Mr. Gharavi's media credentials, expelled him from the tournament, and prohibited him from attending any future Midlands Championship tournaments after FloSports emailed Coach Storniolo.[25]

Wrestling coaches and/or employees of the organizations hosting wrestling events asked Mr. Gharavi to cease filming and/or leave the premises in response to FloSports's social media statements about Mr. Gharavi.[26] Wrestling organizations cancelled contracts with Mr. Gharavi in response FloSports's social media statements.[27] Mr. Gharavi experienced an attempted break-in at his home after third parties published his address.[28] Mr. Gharavi fled the state for his own safety after the attempted break-in.[29] Mr. Gharavi continues to suffer reputational damage because of the accusations made against him on social media.[30]

***Mr. Gharavi sued.***

Mr. Gharavi sued several persons and entities including FloSports in the Northern District of Illinois.[31] Mr. Gharavi sued FloSports for: (1) defamation per se; (2) defamation per quod (in the alternative); (3) invasion of privacy by false light; (4) intentional infliction of emotional distress; (5) tortious interference with business relationships; (6) violation of the Uniform Deceptive Trade Practices Act; (7) misrepresentation under the Digital Millennium Copyright Act; and (8) unjust enrichment.[32] FloSports moved to dismiss these claims for lack of personal jurisdiction.[33] Judge Seeger granted FloSports's motion dismissing FloSports in Illinois.[34]

Mr. Gharavi turned around and sued FloSports here because FloSports is a Delaware corporation.[35] He sues FloSports for: (1) defamation; (2) invasion of privacy by false light; (3) intentional infliction of emotional distress; (4) tortious interference with prospective business relationships; (5) tortious interference with contractual relations; (6) violation of the Uniform Deceptive Trade Practices Act; (7) misrepresentation under the Digital Millennium Copyright Act; and (8) unjust enrichment.[36]

## II. Analysis

FloSports now moves to dismiss all eight claims pending here arguing Mr. Gharavi does not plead sufficient facts to allow us to infer a plausible basis for a single claim.[37]

We must first determine which state law applies to Mr. Gharavi's state law claims. The first question asked in a choice of law analysis under Delaware law is whether the laws of the competing jurisdictions actually conflict on a relevant point.[38] "A genuine conflict does not exist if 'application of the competing laws would yield the same result.'"[39] We are not bound to consider Delaware law in our choice-of-law analysis when neither party argues Delaware law should apply to a tort suit and Delaware has no interest in the case apart from being the place of the trial.[40] But

the Restatement (Second) of Conflict of Laws guides our choice-of-law analysis if we determine a genuine conflict exists.[41]

The Reporters in the Restatement (Second) of Conflict of Laws instruct us to apply the laws of the state with the most significant relationship to the occurrence and the parties.[42] We consider several factors in determining which state has the most significant relationship including: 1) "the place where the injury occurred," 2) "the place where the conduct causing the injury occurred," 3) "the domicil [sic], residence, nationality, place of incorporation and place of business of the parties," and 4) "the place where the relationship, if any, between the parties is centered."[43] Our Court of Appeals further instructs we must consider whether parties have waived choice of law issues if they do not argue them.[44] "[A] party abandons any objection [] it does not make."[45] We must instead require parties to identify and argue legal issues before us so our Court of Appeals has a record to review.[46]

Neither party argues Delaware law should apply to Mr. Gharavi's tort suit. Delaware has no interest in the case. Delaware law will not be considered in the choice of law analysis. But the parties dispute the applicable law. Mr. Gharavi argues Illinois has the most significant relationship to his state law claims.[47] FloSports argues Texas has the most significant relationship to Mr. Gharavi's state law claims.[48] We conduct our choice of law analysis on a count-by-count basis to determine whether Illinois or Texas law applies.

**A. We dismiss Mr. Gharavi's claim for defamation under Illinois law.**

Mr. Gharavi alleges FloSports and its agents defamed him in social media posts and statements made to the wrestling community.[49] Illinois law applies to Mr. Gharavi's defamation claim. None of the social media posts identify Mr. Gharavi by name. Mr. Gharavi does not plead facts allowing us to plausibly infer a claim for defamation under Illinois law.

**1. Illinois law applies to Mr. Gharavi's claim for internet defamation.**

We must define the governing law. We have no basis to apply Delaware law as neither party argues it should apply. A conflict exists between Illinois and Texas law for defamation. Texas requires negligence when making a false statement when Illinois does not.[50] We apply the Restatement because a conflict exists.

The Reporters in the Restatement presume the state of the person's domicile is the state with the most significant relationship in a claim for defamation by a communication published in two or more states.[51] The law of the injured person's home state usually applies in an internet defamation case because "defamation produces a special kind of injury [which] has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence."[52]

Illinois law governs Mr. Gharavi's internet defamation claims because FloSports caused Mr. Gharavi harm in Illinois. Mr. Gharavi and his company, Right Call, are domiciled in Illinois. There is a presumption the law of Illinois will apply to Mr. Gharavi's claim unless there is significantly sufficient consideration to overcome this presumption. While FloSports argues Texas law applies because its headquarters are in Texas, and Mr. Pyles and Mr. Kozak made the allegedly defamatory statements on social media from FloSports's headquarters in Texas, these factors are not sufficiently significant to overcome this presumption. We apply Illinois law.

**2. Mr. Gharavi does not plead facts allowing us to infer a plausible claim for defamation under Illinois law.**

FloSports argues Mr. Gharavi did not plead a defamatory *per se* statement because the statements do not identify Mr. Gharavi, do not fit into one of the recognized categories of defamatory *per se* statements, and cannot be imputed to FloSports.[53] FloSports also argues the statements are not defamatory under the innocent construction rule, are mere opinions, are

substantially true, and are privileged.[54] FloSports further argues Mr. Gharavi did not plead special damages required for defamation *per quod*.[55] Mr. Gharavi counters FloSports misconstrues Illinois law, the statements identify Mr. Gharavi, fit into a recognized category, are imputed to FloSports, and are otherwise actionable.[56] Mr. Gharavi argues he pleaded special damages required for defamation *per quod*.[57] We find Mr. Gharavi does not plead facts allowing us to plausibly infer a defamation claim.

Illinois law requires Mr. Gharavi to plead facts allowing us to infer a plausible basis to find: (1) FloSports made a false statement about Mr. Gharavi, (2) FloSports made an unprivileged publication of the false statement to a third party, and (3) FloSports's publication caused damage to Mr. Gharavi.[58] "A defamatory statement is a statement [which] harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him."[59] "A complaint for defamation must set forth the words alleged to be defamatory 'clearly and with particularity.'"[60]

Illinois recognizes two types of defamatory statements: *per se* and *per quod*.[61] The difference between defamation *per se* and defamation *per quod* is whether the listener would need an explanation to understand the harm inflicted by the statement.[62] The elements of a defamation claim are the same whether Mr. Gharavi alleges defamation *per se* or *per quod*.[63] Mr. Gharavi does not specify the type of defamation he seeks relief for.[64] But both FloSports and Mr. Gharavi address both defamation *per se* and *per quod* in their arguments.[65] We address both in turn.

"A statement is defamatory *per se* if its defamatory character is obvious and apparent on its face…"[66] We may presume Mr. Gharavi's injury to his reputation.[67] The five categories of defamatory *per se* statements are: "(1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing

an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or [] otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication."[68]

But even if a statement falls into one of the five categories it will not be actionable *per se* if it is reasonably capable of an innocent interpretation.[69] Whether a statement is reasonably capable of an innocent interpretation is a question of law for the court to decide.[70] A statement is also inactionable if it is an expression of opinion.[71] An opinion statement is protected by the First Amendment "only if it cannot be reasonably interpreted as stating actual fact."[72] We consider: 1) whether the statement has a precise and readily understood meaning; 2) whether the statement is verifiable; and 3) whether the statement's literary or social context signals it has factual content in determining whether a statement is constitutionally protected.[73]

A defamatory statement is also not actionable if it is privileged.[74] A privilege may be "absolute" or "qualified."[75] No cause of action for defamation lies against the person making the statement even if it is made with actual malice when an absolute privilege exists.[76] Absolute privilege exists when public policy favors the free and unhindered flow of information.[77] A qualified privilege requires FloSports show: 1) good faith in making the statement; 2) an interest or duty to uphold; 3) a statement limited in its scope to the purpose; 4) a proper occasion; and 5) publication in a proper manner and to proper parties only.[78] FloSports loses its qualified privilege if Mr. Gharavi shows 1) FloSports made the false statements with malice or a reckless disregard for their truth; 2) the statements are not limited in scope; or 3) publication is not limited to proper parties.[79] "The question of whether privilege is absolute or qualified is a matter of law to be decided by the court."[80]

Damage to Mr. Gharavi's reputation is not presumed in a defamation *per quod* action.[81] Mr. Gharavi must plead and prove special damages with particularity to recover.[82] General allegations as to damages are insufficient.[83]

**i. Mr. Gharavi did not plead defamatory social media statements.**

Mr. Gharavi alleges FloSports, through its representatives, defamed Mr. Gharavi through social media posts.[84] Mr. Gharavi pleaded one FloSports agent: (1) identified Mr. Gharavi as an official within the wrestling industry; (2) stated FloSports has "done everything in its power to eliminate Mr. Gharavi" from the wrestling industry; (3) characterized Mr. Gharavi as "true evil"; (4) "paint[ed] Mr. Gharavi's motives in recording and posting his videos as coming from a person 'with twisted desires'"; (5) called Mr. Gharavi a "parasite" and confirming FloSports has taken steps to alert the public of Mr. Gharavi's danger to the community; (6) "confirm[ed] [] FloSports published statements about Mr. Gharavi's alleged immoral and dangerous conduct to 'various authorities and wrestling leadership'"; (7) "accus[ed] Mr. Gharavi of intentionally allowing pornographic websites to embed his videos into their own website"; and (8) "accus[ed] Mr. Gharavi of intentionally profiting from pornographic websites embedding his videos."[85] Mr. Gharavi pleaded another FloSports agent (1) "[s]tat[ed] [] Mr. Gharavi's YouTube videos are embedded on pornographic websites;" and (2) "admitted" FloSports issued knowingly false takedown notices "against Mr. Gharavi in retaliation against Mr. Gharavi for his allegedly inappropriate behavior."[86] None of the social media posts identify Mr. Gharavi by name.

The parties urge us to follow the Appellate Court of Illinois's ruling in *Dubinsky v. United Airlines Master Executive Council*.[87] But the parties dispute what guidance we should take from the Appellate Court in *Dubinsky*.[88] Our reading of *Dubinsky* is instructive as to the social media posts. The court in *Dubinsky* addressed defamation claims in the context of an article not naming

plaintiffs.[89] Plaintiffs argued the article needed to be read in conjunction with a separate report to make it "totally clear to any reader" the article referred to plaintiffs.[90] The court held the assertion "would preclude the publication from being considered defamatory *per se*" because defamatory *per quod* statements may rely on extrinsic facts.[91] The court held plaintiffs did not plead the special damages needed to state a claim for defamation *per quod*.[92] Mr. Gharavi argues *Dubinsky* is inapplicable because it is "so apparent" who the social media posts are referring to because "dozens of social media users pointed it out in comments on FloSports'[s] posts."[93]

Mr. Gharavi does not plead facts allowing us to infer a plausible claim of defamation *per se* regarding the social media posts. A defamatory *per se* statement must be injurious on its face.[94] A statement not naming an individual is not injurious to the person on its face.[95] The social media posts do not mention Mr. Gharavi. Where a statement does not name Mr. Gharavi "it should appear on the face of the complaint [] persons other than [Mr. Gharavi] and [FloSports] must have reasonably understood that the" social media posts referred to Mr. Gharavi.[96] Mr. Gharavi pleads no facts showing persons other than Mr. Gharavi and FloSports knew the social media posts referred to Mr. Gharavi. We cannot infer people knew the social media posts referred to Mr. Gharavi from the face of the allegations. Mr. Gharavi points to exhibits to show the community knew the posts referred to Mr. Gharavi.[97] But Mr. Gharavi asks us to read the exhibits as a pleaded allegation showing persons outside of Mr. Gharavi and FloSports knew the social media posts referred to Mr. Gharavi. We cannot.[98] Mr. Gharavi does not plead facts allowing us to plausibly infer persons other than Mr. Gharavi and FloSports knew the social media posts referred to Mr. Gharavi.[99]

And neither party addresses whether Mr. Gharavi pleaded special damages required for a defamation *per quod* claim for the social media posts.[100] Our independent study of the allegations

shows Mr. Gharavi only pleaded general allegations regarding his harm. The general allegations are insufficient for special damages giving rise to a defamation *per quod* claim.[101]

We dismiss Mr. Gharavi's claim for defamation arising from the social media posts.[102]

**ii. Mr. Gharavi did not plead defamatory statements to the wrestling community.**

Mr. Gharavi alleges FloSports defamed him by publishing "false statements regarding Mr. Gharavi's character to members of the wrestling community" and "knowingly forwarded false information about Mr. Gharavi and his alleged immoral character to wrestling coaches attending events where Mr. Gharavi was also in attendance."[103] Mr. Gharavi alleges FloSports's agents forwarded information about Mr. Gharavi's immoral character to Northwestern University's Head Wrestling Coach, Matt Storniolo, during the two-day 2023 Midlands Championships collegiate wrestling tournament beginning on December 29, 2023.[104] The tournament revoked Mr. Gharavi's media credentials, expelled him from the tournament, and prohibited him from attending future Midlands Championship tournaments after FloSports emailed Mr. Storniolo.[105] FloSports argues Mr. Gharavi's allegations are "too unspecific to satisfy the 'precision and particularity' required of defamation claims."[106] We agree with FloSports.

We find guidance from the Appellate Court of Illinois in *Prakash v. Parulekar*.[107] The court studied generalized, summary allegations pleaded in a defamation claim.[108] The court held many of the allegations "set forth only a summary of the types of statements [] defendant allegedly made instead of a precise and particular account of defendant's alleged statements. This lack of specificity prevents the court from determining as a question of law if the alleged statement is defamatory and prevents defendant from properly formulating a response."[109] The court remanded the case allowing plaintiff to amend their complaint.[110]

We face similar allegations. Mr. Gharavi alleges FloSports "had every intention of widely disseminating to the wrestling community [] Mr. Gharavi is an immoral and dangerous character."[111] Mr. Gharavi pleaded "upon information and belief…[FloSports] knowingly publishing false statements regarding Mr. Gharavi's character to members of the wrestling community."[112]

These statements are insufficient to support a claim for defamation as they are not pleaded "with sufficient precision and particularity so as to permit initial judicial review of its defamatory content."[113] Mr. Gharavi's allegations regarding the statements made to Head Coach Storniolo are similarly insufficient as they are not pleaded with precision and particularity. We dismiss Mr. Gharavi's claim for defamation arising from the alleged statements made to the wrestling community.

**iii. The takedown notices are not the subject of the claims.**

FloSports argues the takedown notices are protected from defamation claims.[114] But Mr. Gharavi's defamation claim does not include the takedown notices.[115] Mr. Gharavi's bases for his defamation claim are the social media posts and statements made to members of the wrestling community. We need not address briefing for unpleaded claims.

**B. We dismiss Mr. Gharavi's claim for invasion of privacy by false light under Illinois law.**

Mr. Gharavi alleges FloSports and its agents invaded his privacy by false light through the social media posts and statements made to the wrestling community.[116] Illinois law applies to Mr. Gharavi's invasion of privacy by false light claim. Mr. Gharavi does not plead facts allowing us to plausibly infer a claim for invasion of privacy by false light under Illinois law.

**1. Illinois law applies to Mr. Gharavi's claim for invasion of privacy by false light.**

We must again define the governing law. We have no basis to apply Delaware law. A conflict exists between Illinois and Texas law for invasion of privacy by false light. Illinois recognizes invasion of privacy by false light as a cause of action.[117] Illinois also bases a false light claim on showing an underlying false statement.[118] Texas does not recognize invasion of privacy by false light as a cause of action.[119] We will apply the Restatement because a conflict exists.

The Restatement (Second) of Conflict of Laws Section 153 governs our analysis for multistate invasions of privacy.[120] The Reporters in section 153 instruct the state with the most significant relationship is the state of plaintiff's domicile at the time he files his complaint.[121] Mr. Gharavi's domicile is Illinois at the time he filed his Complaint. We apply Illinois law.

**2. Mr. Gharavi did not plausibly allege a claim for invasion of privacy by false light under Illinois law.**

FloSports argues Mr. Gharavi did not plead an invasion of privacy claim because Mr. Gharavi does not plead the truthfulness or untruthfulness of FloSports's statements.[122] FloSports contends its statements are capable of innocent construction; based on opinions and not facts; and substantially true.[123] Mr. Gharavi argues the same and adduces FloSports's reasoning proves his invasion of privacy by false light claim.[124] We agree with FloSports.

The Illinois Supreme Court adopted the Restatement (Second) of Torts Section 652E almost forty years ago to define false light claims.[125] A claim for invasion of privacy by false light requires the false light to be "highly offensive to a reasonable person" and "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."[126] Mr. Gharavi must plead facts allowing us to plausibly infer: (1) he "'was placed in a false light before the public by [FloSports]; (2) the false light would be offensive to a reasonable person; and (3) [FloSports] acted with actual malice'"[127] Mr. Gharavi

must also demonstrate FloSports made a false statement about him to succeed with his false light claim.[128]

Mr. Gharavi does not plead facts allowing us to plausibly infer FloSports's conduct constitutes an invasion of privacy by false light under Illinois law. FloSports's actions on social media and over email communicated information about Mr. Gharavi.[129] But Mr. Gharavi does not plead facts to show FloSports knew its communications contained false information. Illinois law requires Mr. Gharavi to plead FloSports made a false statement about him.[130] He does not. Mr. Gharavi does not plead FloSports knew the untruthful nature of the accusations made in its communications. Mr. Gharavi himself denying the accusations is not enough.[131] Mr. Gharavi does not plead facts showing FloSports disregarded the falsity of the matter.

Nor does Mr. Gharavi plead how FloSports acted in a reckless disregard to the alleged falsity in its communications. A plaintiff must demonstrate a reckless disregard of the falsity of the statements for a false light claim if the defendant has no knowledge of the falsity of the statements.[132] Mr. Gharavi does not plead facts allowing us to plausibly infer FloSports's reckless disregard in its communications. Accepting all facts as true Mr. Gharavi pleaded FloSports communicated offensive materials regarding his reputation. His allegations do not rise to a reckless disregard.[133] We grant FloSports's motion to dismiss Mr. Gharavi's claim for invasion of privacy by false light.

### C. We dismiss Mr. Gharavi's claim for intentional infliction of emotional distress under Illinois law.

Mr. Gharavi alleges FloSports intended to inflict emotional distress on him by posting on social media.[134] Illinois law applies to Mr. Gharavi's intentional infliction of emotional distress claim. Mr. Gharavi does not plead facts allowing us to plausibly infer a claim for intentional infliction of emotional distress under Illinois law.

**1. Illinois law applies to Mr. Gharavi's intentional infliction of emotional distress claim.**

We must again define the governing law to address Mr. Gharavi's intentional infliction of emotional distress claim. We have no basis to apply Delaware law. A conflict exists between Illinois and Texas law for intentional infliction of emotional distress because Texas requires acting with intent or recklessness while Illinois does not.[135] We will apply the Restatement because a conflict exists.

The Reporters in the Restatement (Second) of Conflict of Laws instruct us to apply the laws of the state with the most significant relationship to the occurrence and the parties.[136] We find Illinois has the most significant relationship to Mr. Gharavi's claim for intentional infliction of emotional distress because Mr. Gharavi is domiciled in Illinois, his injury occurred in Illinois, and the relationship between the parties is centered in Illinois. We apply Illinois law.

**2. Mr. Gharavi does not plead facts allowing us to infer a plausible claim for intentional infliction of emotional distress under Illinois law.**

FloSports argues Mr. Gharavi did not plead an intentional infliction of emotional distress claims because the aftermath of FloSports's statements cannot be considered reasonably foreseeable to or caused by FloSports.[137] Mr. Gharavi does not address FloSports's causation argument and instead argues FloSports's conduct when judged based on an objective standard reaches the level of extreme and outrageous.[138] We agree with FloSports.

Mr. Gharavi must plead facts allowing us to infer a plausible basis to find: (1) FloSports's conduct was extreme and outrageous, (2) FloSports intended to inflict or knew there was a high probability its conduct would cause severe emotional distress, and (3) FloSports's conduct in fact caused severe emotional distress to survive a motion to dismiss.[139] The standard in Illinois is high as the tort does not extend to insults, indignities, threats, annoyances, petty oppressions, or

trivialities.[140] Conduct is extreme and outrageous if the average person would find it so shocking they would call it outrageous.[141] The distress inflicted must be so severe no reasonable person could be expected to endure it.[142] We may consider the intensity and duration of the distress when determining the severity of the emotional distress.[143] We recognize there may not be a "bright-line rule about what satisfies . . . extreme and outrageous conduct" but we evaluate the alleged facts based on an objective standard.[144]

Mr. Gharavi does not plead facts showing FloSports's conduct is extreme and outrageous. Mr. Gharavi does not cite any case where social media postings are deemed extreme and outrageous conduct.[145] Our study of Illinois law shows the same. We find *Mufarreh v. Google, Inc.* instructive.[146] The Appellate Court reversed the decision to allow pre-suit discovery.[147] The court did not find the defendant's conduct of posting a video on YouTube of a child having an emotional response to missing a penalty shot in a youth hockey game extreme and outrageous.[148] Posting the video needed to "be characterized as 'atrocious, and utterly intolerable in a civilized community'" to be considered extreme and outrageous.[149] The Appellate Court declined to classify the conduct this way.[150]

FloSports's actions are not extreme and outrageous conduct. Posting on social media speculations about Mr. Gharavi does not reach the level of "utterly intolerable in a civilized community."[151] In today's world airing one's grievances online has become commonplace. Illinois law does not find posting on social media is extreme and outrageous conduct. We find the same.

We grant FloSports's motion to dismiss Mr. Gharavi's claim for intentional infliction of emotional distress.

### D. We dismiss Mr. Gharavi's claim for tortious interference with prospective business relationships under Illinois law.

Mr. Gharavi alleges FloSports's actions interfered with his prospective business relationships.[152] Illinois law applies to Mr. Gharavi's claim for tortious interference with prospective business relationships. Mr. Gharavi does not plead facts allowing us to plausibly infer a claim for tortious interference with prospective business relationships under Illinois law.

#### 1. Illinois law applies to Mr. Gharavi's claim for tortious interference with prospective business relationships.

We must again define the governing law because Delaware law does not apply. We find a conflict exists between Illinois and Texas law for tortious interference with prospective business relationships. Texas requires the interfering conduct to be independently tortious or unlawful while Illinois does not.[153] We will apply the Restatement because a conflict exists.

The Reporters in the Restatement (Second) of Conflict of Laws instruct us to apply the laws of the state with the most significant relationship to the occurrence and the parties.[154] We find Illinois has the most significant relationship to Mr. Gharavi's claim for tortious interference with prospective business relationships given Mr. Gharavi's Illinois domicile and injury. We apply Illinois law.

#### 2. Mr. Gharavi does not plead facts allowing us to infer a claim for tortious interference with prospective business relationships under Illinois law.

FloSports argues Mr. Gharavi does not plead a tortious interference with prospective business relationships claim because Mr. Gharavi does not identify particular events or opportunities where he had a reasonable expectation of officiating.[155] It also argues Mr. Gharavi does not plead how FloSports's actions denied business relationships.[156] Mr. Gharavi argues particularity is not necessary at the pleading stages.[157] Mr. Gharavi contends he identified specific events and opportunities impacted by FloSports' actions.[158] We agree with FloSports.

Illinois law requires Mr. Gharavi to plead facts allowing us to infer a plausible basis to find: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or cause a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference."[159] Not every lost business opportunity needs pleaded, but he must plead facts allowing us to plausibly infer a "reasonable expectancy" of a business opportunity—more than the "hope or opportunity of a future business relationship."[160]

We find *Muhammad v. Riverside Healthcare* instructive.[161] The Appellate Court affirmed the dismissal of the plaintiff's tortious interference with prospective business relationships claim.[162] The plaintiff relied only upon proof of past business relationships to demonstrate a reasonable expectancy of future business relationships.[163] Proof of past business relationships is not enough.[164] The Appellate Court held the showing of a past relationship does not show a reasonable expectancy of future business relationships under Illinois law.[165]

Mr. Gharavi does not plead facts allowing us to infer a reasonable expectancy of entering into a business relationship under Illinois law. Mr. Gharavi adduced FloSports's actions interfered with business relationships from his YouTube channel and from his wrestling officiating.[166] Mr. Gharavi asserted FloSports "knew or should have known . . . Mr. Gharavi enters into business relationships with third-parties based on his successful Midwest Wrestle YouTube channel."[167] Mr. Gharavi himself agrees FloSports may not have knowledge of the expectancy of prospective business relationships between Midwest Wrestle and third-parties.[168] But FloSports's knowledge of the expectancy is required under Illinois law.[169] Mr. Gharavi does not plead facts allowing us to plausibly infer a claim for tortious interference with prospective business relationships with his YouTube channel.

Mr. Gharavi relies on earlier business relationships as a registered wrestling official with the NCAA, the Illinois High School Association, and the Illinois Elementary School Association to show a reasonable expectancy of future business relationships.[170] History itself does not establish reasonable expectancy.[171] Previous stints as a wrestling official do not create a reasonable expectancy for future business relationships.[172] Mr. Gharavi does not plead elements of tortious interference with prospective business relationships against FloSports.

We dismiss Mr. Gharavi's claim for tortious interference with prospective business relationships.

**E. Mr. Gharavi may proceed with his tortious interference with contractual relations claim.**

Mr. Gharavi alleges FloSports interfered with his existing contractual relations.[173] Illinois law applies to Mr. Gharavi's claim for tortious interference with contractual relations. Mr. Gharavi pleaded facts allowing us to plausibly infer a claim for tortious interference with contractual relations.

**1. Illinois law applies to Mr. Gharavi's claim for tortious interference with contractual relations.**

We must again define the governing law because Delaware law does not apply. We find a conflict exists between Illinois and Texas law for tortious interference with existing contractual relations. Texas requires a showing of a willful act of interference while Illinois does not.[174] We will apply the Restatement because a conflict exists.

The Reporters in the Restatement (Second) of Conflict of Laws instruct us to apply the laws of the state with the most significant relationship to the occurrence and the parties.[175] We find Illinois has the most significant relationship to Mr. Gharavi's claim for tortious interference with existing contractual relations given Mr. Gharavi is domiciled in Illinois. Mr. Gharavi's injury also occurred in Illinois. We apply Illinois law.

**2. Mr. Gharavi pleaded facts allowing us to plausibly infer a claim for tortious interference with contractual relationships under Illinois law.**

FloSports argues Mr. Gharavi did not plead a tortious interference claim because Mr. Gharavi does not identify events where he had a reasonable expectation of officiating.[176] FloSports also argues Mr. Gharavi did not plead the details of how FloSports interfered with his officiating.[177] Mr. Gharavi argues the events on December 29, 2023 during the 2023 Midlands Championship allow us to plausibly infer a claim for tortious interference with contractual relationships.[178] We agree with Mr. Gharavi as to his officiating.

Illinois law requires Mr. Gharavi to plead facts allowing us to infer a plausible basis to find: '"(1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages."'[179] Mr. Gharavi must also plead a showing of impropriety by FloSports.[180] Mr. Gharavi can show impropriety by pleading facts allowing us to plausibly infer FloSports's purposeful interference.[181] FloSports's deliberate disparagement would also create a showing of impropriety.[182]

We look again to *Muhammad v. Riverside Healthcare*.[183] The plaintiff alleged business relations but did not further allege binding contracts regarding those relations.[184] The Appellate Court held the failure to plead contractual relations made it impossible to proceed on a breach of contract claim.[185] Existence of contractual relations must be clear to plead a claim for tortious interference with contractual relationships.[186]

Mr. Gharavi pleaded the five elements under Illinois law for a tortious interference with contractual relations regarding his officiating but not his YouTube channel's business relationships.[187] Mr. Gharavi pleaded contractual business relationships as a registered wrestling official with the NCAA, the Illinois High School Association, the Illinois Elementary School

Association, and USA Wrestling.[188] This is sufficient to allow us to plausibly infer a contractual relationship.[189] FloSports knew about Mr. Gharavi's contractual relationships with these organizations as a wrestling official as shown in its May 25, 2023 email thread.[190] This email thread along with FloSports's social media posts as pleaded by Mr. Gharavi allow us to infer a plausible basis for an intentional and unjustified inducement by FloSports to get third-parties to breach their contracts with Mr. Gharavi.[191] Mr. Gharavi pleaded the damage to his relationships as a result of FloSports's actions.[192] Mr. Gharavi also pleaded these organizations ended their contracts in response to FloSports's social media posts.[193] Mr. Gharavi pleaded the elements of contractual relations interference with prospective business relationships against FloSports in regard to contractual business relationships as a registered wrestling official.

But Mr. Gharavi did not plead contractual business relationships regarding his YouTube channel. Like in *Muhammad*, Mr. Gharavi did not allege anyone breached contractual relationships with his YouTube channel.[194] The absence of these allegations makes it impossible for us to determine the tortious interference with contractual relationships regarding Mr. Gharavi's YouTube channel. We allow Mr. Gharavi to proceed on his claim for tortious interference with contractual relationships regarding his officiating contracts.

### F. Mr. Gharavi may proceed with his claim under the Uniform Deceptive Trade Practices Act.

Mr. Gharavi alleges FloSports violated the Uniform Deceptive Trade Practices Act.[195] We need not conduct a choice of law analysis because there no conflict exists. Mr. Gharavi pleaded facts allowing us to plausibly infer a claim for violation of the Uniform Deceptive Trade Practices Act.

**1. No choice of law analysis is necessary as both Texas and Illinois adopted the Uniform Deceptive Trade Practices Act.**

Both Texas and Illinois adopted the Uniform Deceptive Trade Practices Act under its code.[196] No choice of law analysis is needed.

**2. Mr. Gharavi pleads facts allowing us to plausibly infer FloSports violated the Uniform Deceptive Trade Practices Act.**

FloSports argues Mr. Gharavi's claim under the Act against FloSports is rooted in FloSports's deceptive representation of Mr. Gharavi's "character" and "immoral characteristics."[197] FloSports contends representations must attack Mr. Gharavi's goods or services, and not Mr. Gharavi's integrity, to be brought under the Uniform Deceptive Trade Practices Act.[198] Mr. Gharavi argues as the sole officer and employee of Right Call, a direct attack on himself is a direct attack on Right Call's goods and services.[199] We agree with Mr. Gharavi.

The state legislatures through the Uniform Deceptive Trade Practices Act mandate a person can be liable for deceptive trade practices when in the course of business the person "disparages the goods, services, or business of another by false or misleading representation of fact."[200] Mr. Gharavi must plead FloSports disparaged the quality of his goods or services and not just his integrity.[201] A statement can be considered "disparaging" when it "simultaneously attack[s] both the quality of one's goods or services and the character or integrity of the person[.]"[202]

We find Judge Wood's analysis in *Mackie v. Awtry* instructive.[203] Judge Wood denied dismissal of a claim under the Illinois Uniform Deceptive Trade Practices Act.[204] The defendant posted online content describing plaintiff "as a liar and a cheater."[205] The defendant posted these statements on a website with the same name as plaintiff's business.[206] The statements attacked plaintiff's personal integrity but defendant argued it did not attack plaintiff's business offerings.[207] Judge Wood disagreed.[208] Judge Wood found a statement can attack both one's personal integrity

and business offerings.[209] The allegations raised a reasonable inference the defendant's statements disparage both.[210]

Mr. Gharavi pleaded sufficient facts to show FloSports disparaged Mr. Gharavi's individual integrity, which encompasses his business. The alleged false statements FloSports made online regarding Mr. Gharavi attacks his integrity.[211] Like Judge Wood found in *Awtry*, disparagement of Mr. Gharavi's integrity can be simultaneously imputed onto his goods or services as Right Call's sole officer and employee.[212] We find Mr. Gharavi's allegations support the simultaneous disparagement of Mr. Gharavi and business.[213]

Mr. Gharavi may proceed on his claim under the Deceptive Trade Practices Act.

**G. We dismiss Mr. Gharavi's claim under the Digital Millennium Copyright Act.**

Mr. Gharavi alleges FloSports violated the Digital Millenium Copyright Act through misrepresentations submitted with its takedown notices.[214] But Mr. Gharavi does not plead facts allowing us to plausibly infer a violation of the Digital Millenium Copyright Act.

FloSports argues Mr. Gharavi does not plead a claim under the Digital Millennium Copyright Act because Mr. Gharavi leaves out details as to how the videos contain copyrighted content.[215] FloSports argues it did not file takedown notices on Mr. Gharavi's videos solely for copyright infringement as required for liability under the Act.[216] FloSports submitted the takedown notices because Mr. Gharavi violated FloSports's private contractual relations.[217] Mr. Gharavi argues FloSports misapplies the law and misconstrues his allegations.[218] Mr. Gharavi argues he pleaded facts showing FloSports's submitted the takedown notices for copyright infringement when it knew the videos contained no infringing content.[219] We agree with FloSports.

Congress defines copyright protections for original works of authorships.[220] Congress through section 512 of the Digital Millennium Copyright Act sets limits on liability relating to

material online.[221] Congress under section 512(f) of the Act imposes liability when the "copyright owner's notification is a knowing misrepresentation."[222] Improper copyright strikes must be known by FloSports for liability to be imposed.[223]

Mr. Gharavi must plead facts allowing us to plausibly infer: (1) FloSports "knew [it] was materially misrepresenting that an activity was infringing; and (2) [] the material misrepresentation caused [Mr. Gharavi's] harm."[224] There must be facts pleaded showing FloSports had actual knowledge Mr. Gharavi infringed on its copyrights.[225] A violation exists in addition to actual knowledge under the Digital Millennium Copyright Act when FloSports does not confirm a "high probability" the alleged copyrighted "material is not infringing."[226]

Mr. Gharavi urges us to follow Judge Grady's analysis in *Flava Works, Inc. v. Gunter* when Judge Grady denied a Motion to dismiss a misrepresentation claim finding sufficient allegations to support a claim.[227] Judge Grady held pleading "[defendant] knowingly misrepresented [] certain infringing content was available on [the] web site despite having received notification from [website owner] [] the content had been removed and [] [defendant] did so purposefully, in an effort to 'improperly exaggerate the actual amount of infringing content available on [the] website'" allowed him to "draw a reasonable inference of liability…sufficient to hold a story that holds together."[228]

Mr. Gharavi's allegations differ from the allegations before Judge Grady. Mr. Gharavi pleads no facts telling us if FloSports knew it submitted false takedown notices. Judge Grady faced evidence the submitter knew the allegedly infringing content had already been removed when it submitted the takedown notices. Mr. Gharavi pleads no similar facts. Mr. Gharavi instead pleads he "successfully defended each of the False [takedown] Notices."[229] He pleads no information showing FloSports knew Mr. Gharavi's content did not infringe on a copyright held by FloSports

and submitted takedown notices anyway. We dismiss Mr. Gharavi's claim for misrepresentation under the Digital Millenium Copyright Act.

### H. We dismiss Mr. Gharavi's unjust enrichment claim under Texas law.

Mr. Gharavi alleges FloSports is unjustly enriched because of redirected financial benefits from publicizing statements about Mr. Gharavi.[230] Texas law applies to Mr. Gharavi's claim for unjust enrichment. Mr. Gharavi does not plead facts allowing us to plausibly infer a claim for unjust enrichment under Texas law.

#### 1. Texas law applies to Mr. Gharavi's claim for unjust enrichment.

We must again define the governing law for unjust enrichment. Delaware law does not apply. We find a conflict exists between Illinois and Texas law for unjust enrichment. Texas requires the benefit to be obtained by "fraud, duress, or the taking of an undue advantage" while Illinois does not.[231] We apply the Restatement because a conflict exists.

The Reporters in the Restatement (Second) of Conflict of Laws instruct us to apply the laws of the state with the most significant relationship to the occurrence and the parties.[232] A factor we can consider when determining which state has the most significant relationship is "the place where the conduct causing the injury occurred."[233] We find Texas has the most significant relationship to Mr. Gharavi's claim for unjust enrichment because FloSports is unjustly enriched in Texas which allegedly caused FloSports to be unjustly enriched. FloSports's principal place of business is in Texas. We apply Texas law.

#### 2. Mr. Gharavi does not allege facts allowing us to plausibly infer a claim for unjust enrichment under Texas law.

FloSports argues Mr. Gharavi does not plead an unjust enrichment claim because Mr. Gharavi did not plead facts allowing us to plausibly infer FloSports benefitted financially from the statements it made about Mr. Gharavi.[234] FloSports also argues Mr. Gharavi did not articulate any

claims he can base his unjust enrichment upon under Texas law.[235] Mr. Gharavi's argument is rooted in Illinois law.[236] He argues FloSports received a competitive benefit from its actions against Mr. Gharavi because the actions redirected Mr. Gharavi's customers, appropriated Mr. Gharavi's good reputation, and granted FloSports a competitive advantage by eliminating Mr. Gharavi from the market.[237] Mr. Gharavi also argues his unjust enrichment claim is based in the seven other plausibly alleged claims and we cannot dismiss his unjust enrichment claim.[238] We agree with FloSports.

A claim for "'[u]njust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain.'"[239] An individual or entity is unjustly enriched when they benefit through fraud, duress, or an undue advantage.[240] There must be a showing of this obtained benefit.[241] Some Texas courts also recognize unjust enrichment claims as an independent cause of action.[242]

We find Judge Rodriguez's analysis in *Aguirre v. Powerchute Sports, LLC* instructive.[243] The plaintiff and defendant created similar golf swing devices with separate patents.[244] The defendants obtained the patent application through fraud.[245] The plaintiff adduced the defendants received a benefit from this fraud.[246] But the plaintiff did not plead facts showing the defendants received a benefit otherwise due to the plaintiff.[247] Judge Rodriguez dismissed the plaintiff's unjust enrichment theory because no pleaded fact allowed a plausible inference plaintiff conferred some form of benefit on the defendants.[248]

We interpret Mr. Gharavi's unjust enrichment claim as an independent cause of action for purposes of ruling on a Motion to dismiss.[249] We recognize the spilt within the Texas courts and interpret the unjust enrichment claim independently.

Mr. Gharavi does not plead sufficient facts for an unjust enrichment claim. We agree with FloSports Mr. Gharavi did not allege how FloSports received a benefit from its statements.[250] Like in *Aguirre*, Mr. Gharavi did not plead facts showing how FloSports obtained a benefit otherwise due to Mr. Gharavi.[251] Stating a lost benefit based on the redirection of customers, appropriation of one's reputation, and elimination of oneself from the marketplace does not meet the threshold for an unjust enrichment claim.[252] It is necessary for Mr. Gharavi to show he lost a benefit.[253] Mr. Gharavi does not plead facts showing a lost benefit. We dismiss Mr. Gharavi's claim for unjust enrichment.

## III. Conclusion

We dismiss Mr. Gharavi's claims for defamation, invasion of privacy by false light, tortious interference with prospective business relationships, misrepresentation under the Digital Millennium Copyright Act, and unjust enrichment without prejudice. We dismiss Mr. Gharavi's claim for intentional infliction of emotional distress with prejudice. Mr. Gharavi may proceed with his claims for tortious interference with contractual relations relating to officiating opportunities and violation of the Uniform Deceptive Trade Practices Act.

---

[1] D.I. 1 ¶ 1.

[2] *Id.*

[3] *Id.* ¶ 11.

[4] *Id.* ¶ 12. Mr. Gharavi manages his YouTube channel through his company Right Call Officials, Inc.

[5] *Id.* ¶ 15.

[6] *Id.* ¶ 16.

[7] D.I. 13 at 3.

[8] *Id.* at 3–4.

[9] *See id.* at 3–6.

[10] D.I. 1 ¶ 29; D.I. 1-1. Congress through the Digital Millenium Copyright Act allows a copyright holder to send a formal request to remove or disable access to content allegedly infringing on their copyright material. *See generally* 17 U.S.C. § 512. The notice demands the website hosting the content to remove or disable the content. *Id.*

[11] D.I. 1 ¶ 30.

[12] *Id.* ¶¶ 31–33.

[13] *Id.* ¶ 33; D.I. 1-2.

[14] *Id.*

[15] D.I. 1 ¶ 34; D.I. 1-3.

[16] D.I. 1-3.

[17] *Id.*

[18] *Id.;* D.I. 1 ¶¶ 43–44; D.I. 1-6; D.I. 1-7. Christian Pyles is FloSports's Content Director. D.I. 1 ¶ 27. Director Pyles posts on the social media platform X (formerly Twitter) under the handle "@CPyles8." *Id.* Jon Kozak is a Ranker at FloSports. *Id.* ¶ 28. Ranker Kozak posts on the social media platform InterMatWrestle.com under the username "Jon_Kozak." *Id.*

[19] *Id.* ¶ 43.

[20] *Id.* ¶ 44.

[21] *Id.* ¶¶ 6, 30, 42, 50–63.

[22] *Id.* ¶ 30.

[23] *Id.*

[24] *Id.* ¶ 42.

[25] *Id.*

[26] *Id.* ¶ 50.

[27] *Id.* ¶ 51.

[28] *Id.* ¶ 52.

[29] *Id.* ¶ 53.

[30] *Id.* ¶ 55.

---

[31] *Gharavi v. FloSports, Inc.*, N.D. Ill, No. 24-1969, ECF 1.

[32] *Id.* at ¶¶ 76–127.

[33] *Gharavi*, N.D. Ill, No. 24-1969, D.I. 31.

[34] *Id.* at ECF 80. Claims against another party continued in Illinois. D.I. 28.

[35] D.I. 1. We will refer to only Mr. Gharavi for ease of reference although all claims are asserted by both Mr. Gharavi and Right Call.

[36] *Id.* ¶¶ 64–117.

[37] D.I. 13; A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[38] *Toptal, LLC v. Bloomberg L.P.*, No. 01-266, 2025 WL 2172609, at *3 (Del. Super. July 31, 2025) (quoting *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 773–74 (Del. Ch. 2014)).

[39] *Id.*

[40] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1048 (Del. 2015) ("Here, Delaware's only connection to the litigation, other than being the place of the trial, is an entirely unrelated one: [the defendant helicopter manufacturer] is incorporated here. No party has suggested that Delaware law should apply to this tort suit. According to the Restatement [of Conflicts], when 'the state of the forum has no interest in the case apart from the fact that it is the place of the trial ... the only

relevant policies of the state of the forum will be embodied in its rules relating to trial administration.'" (quoting Restatement (Second) of Conflicts § 6 cmt. e)).

[41] *Toptal*, 2025 WL 2172609, at *3 n.43 ("Delaware adopts and follows the Restatement (Second) of Conflicts in a choice of law analysis." (citing *Smith v. Del. State Univ.*, 47 A.3d 472, 480 (Del. 2012))).

[42] Restatement (Second) of Conflict of Laws § 145 (A.L.I. 1971).

[43] *Id.*

[44] *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) ("Our review of the law in this area convinces us [] parties may waive choice-of-law issues. Permitting waiver accords with the law of every other circuit. It also makes sense.").

[45] *Id.*

[46] *Id.*

[47] D.I. 1 ¶ 5.

[48] D.I. 13 at 3.

[49] D.I. 1 ¶¶ 64–71.

[50] *Compare* "[t]he elements of a defamation claim under Illinois law include, '(1) the defendant made a false statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) this publication caused damages.'" *Stoller v. Dart*, No. 12-4928, 2013 WL 2156049, at *6 (N.D. Ill. May 17, 2013) (quoting *Coghlan v. Beck*, 984 N.E.2d 132, 145, (Ill. App. Ct. 2013)) *with* "[t]o maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

[51] Restatement (Second) of Conflict of Laws § 150(2) (A.L.I. 1971).

[52] *Armenta v. G/O Media Inc.*, No. 2-51, 2024 WL 4433946, at *5 (Del. Super. Ct. Oct. 7, 2024) (quoting *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.,* No. 10046, 2015 WL 5724838, at *11 (Del. Ch. Sep. 30, 2015) (quoting *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 765 (D. Del. 2012))).

[53] D.I. 13 at 15–19.

[54] *Id.* at 20–28.

[55] *Id.* at 19–20.

[56] D.I. 15 at 4–23.

[57] *Id.* at 23–24. Two types of defamatory statements exist under Illinois law: *per se* and *per quod*. The difference between defamation *per se* and defamation *per quod* is whether the listener would need an explanation to understand the harm inflicted by the statement. *Love v. Simmons*, No. 23-2392, 2024 WL 809107, at *4 (N.D. Ill. Feb. 27, 2024). A claim for defamation *per quod* requires a plaintiff to plead special damages with particularity. *Tuite v. Cortbitt*, 866 N.E.2d 114, 121 (Ill. 2006).

[58] *Love*, 2024 WL 809107, at *4.

[59] *Id.* (quoting *Green v. Rogers*, 917 N.Ed.2d 450, 459 (Ill. 2009)).

[60] *Prakash v. Parulekar*, 177 N.E.3d 1, 18 (Ill. App. Ct. 2020) (citing *Krueger v. Lewis*, 794 N.E.2d 970, 972 (Ill. App. Ct. 2003) (quoting *Lykowski v. Bergman*, 700 N.E.2d 1064, 1069 (Ill. App. Ct. 1998))).

[61] *Love*, 2024 WL 809107, at *4.

[62] *Id.*

[63] *Id.*

[64] D.I. 1 ¶¶ 64–71.

[65] D.I. 13 at 7–12; D.I. 15 at 10–12.

[66] *Tuite*, 866 N.E.2d at 121.

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.* at 126.

[71] *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839–40 (Ill. 2006).

[72] *Id.* at 840.

[73] *Id.*

[74] *Id.* at 842.

[75] *Id.*

[76] *Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 881 (Ill. App. Ct. 2013).

[77] *Id.* at 882 (quoting *Zych v. Tucker*, 844 N.E.2d 10041, 1008 (Ill. App. Ct. 2006)).

---

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Tuite*, 866 N.E.2d at 121.

[82] *Id.*

[83] *Rivera v. Allstate Ins. Co.*, 189 N.E.3d 982, 994, 999 (Ill. App. Ct. 2021).

[84] D.I. 1 ¶¶ 43–44, 65.

[85] *Id.* ¶ 43.

[86] *Id.* ¶ 44.

[87] 708 N.E.2d 441 (Ill. App. Ct. 1999).

[88] D.I. 13 at 15–18; D.I. 15 at 15–18.

[89] *Dubinsky*, 708 N.E.2d at 449.

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] D.I. 15 at 17.

[94] *Rivera*, 189 N.E.3d at 994–95 (collecting cases).

[95] *Moore v. Streit*, 537 N.E.2d 408, 415 (Ill. App. Ct. 1989).

[96] *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1218 (Ill. 1996).

[97] D.I. 15 at 17–18.

[98] *See RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, No. 13-77, 2013 WL 1338309, at * 2 (D.N.J. April 1, 2013) ("Plaintiff cannot meet its *pleading* requirements under Rule 8(a) by attaching numerous exhibits to its Complaint. While Plaintiff may ultimately rely on such exhibits to support its claim on the merits, Rule 8(a) requires that a complaint 'contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible ***on its face***.'' *Iqbal*, 556 U.S. at 678.") (emphasis in original).

[99] *See generally* D.I. 1.

[100] D.I. 13; D.I. 15. The parties dispute whether Mr. Gharavi pleaded special damages generally.

[101] *See Rivera*, 189 N.E.3d at 994, 999.

[102] We need not address the defenses including the innocent construction rule, opinion, truth, or privilege as to the social media posts. We need not address the arguments claiming the social media posts cannot be imputed to FloSports.

[103] D.I. 1 ¶¶ 40–41.

[104] *Id.* ¶ 42.

[105] *Id.*

[106] D.I. 13 at 24 (citing *Green*, 917 N.Ed.2d at 492).

[107] 177 N.E.3d 1, 6–8, 18 (Ill. App. Ct. 2020).

[108] *Id.* at 18 ("Stripped of all allegations of conduct before November 6, 2013 concerning released claims, and accepting all well-pleaded facts as true, count II of the complaint essentially alleges that defendant sent an e-mails on March 4, 2018 to numerous third parties both inside and outside of [Illinois Institute of Technology (IIT)]; this e-mails included a March 2, 2018 letter; defendant stated in these materials that the federal government was investigating federal grants awarded to plaintiff; defendant implied in these materials, knowingly and falsely, that plaintiff was involved in embezzlement and a financial conspiracy to defraud the government; many of the third-party recipients of defendant's March 2018 materials were not aware of IIT's prior investigation of this matter, which had concluded that plaintiff had not engaged in any wrong doing; the publication of defendant's March 2018 materials prejudiced plaintiff in his profession and suggested he lacked integrity in the performance or discharge of his employment duties; and this publication caused plaintiff to suffer emotionally and financially.").

[109] *Id.*

[110] *Id.* at 19.

[111] D.I. 1 ¶ 39.

[112] *Id.* ¶ 40.

[113] *See Green*, 917 N.E.2d at 492.

[114] D.I. 13 at 27.

[115] D.I. 1 ¶¶ 64–71.

[116] *Id.* ¶¶ 72–78.

[117] *Love*, 2024 WL 809107, at *6 ("To sustain [an invasion of privacy by false light] cause of action, a plaintiff must plead: (1) [s]he was placed in a false light before the public by the

defendant; (2) the false light would be offensive to a reasonable person; and (3) the defendant acted with actual malice." (quoting *Seith v. Chicago Sun-Times, Inc.*, 861 N.E.2d 1117, 1130 (Ill. App. Ct. 2007))).

[118] "A plaintiff must show that the defendant made a *false* statement about her to prevail on a false light claim." *Id.* (emphasis in original) (citing *Fei Wang v. Bd. Of Trs. of Univ. of Illinois*, 612 F. Supp. 3d 739, 752 (N.D. Ill. 2020)).

[119] *Black v. BBVA/Compass Bank*, No. 19-1218, 2020 WL 2499597 at *4 (S.D. Tex. Mar. 31, 2020); *see also Cain v. Hearst Corp.*, 878 S.W.2d 577, 579–580 (Tex. 1994) ("We reject the false light invasion of privacy tort for two reasons: 1) it largely duplicates other rights of recovery, particularly defamation; and 2) it lacks many of the procedural limitations that accompany actions for defamation, thus unacceptably increasing the tension that already exists between free speech constitutional guarantees and tort law.").

[120] *Copeland v. Netflix, Inc.*, No. 24-164, 2025 WL 775500, at *6 (D. Del. Mar. 11, 2025) (Bibas, J.) ("Where, as here, a publisher allegedly invades someone's privacy by disseminating a publication across many states, the state with the most significant relationship is typically the injured party's domicile." (citing Restatement (Second) of Conflict of Laws § 153)).

[121] Restatement (Second) of Conflict of Laws § 153.

[122] D.I. 13 at 22.

[123] *Id.*; D.I. 15 at 19.

[124] D.I. 15 at 19.

[125] *See Sarmont v. DeWitt*, 254 N.E.3d 491, 501 (Ill. App. Ct. 2024) (stating the Illinois Supreme Court adopted Section 652E Restatement (Second) of Torts to define the "privacy tort of placing another in a false light."); *Lovgren v. Citizens First Nat. Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989) (adopting Section 652E Restatement (Second) of Torts).

[126] *Sarmont*, 254 N.E.3d at 501 (quoting Restatement (Second) of Torts § 652E).

[127] *Love*, 2024 WL 809107, at *6 (quoting *Seith*, 861 N.E.2d at 1130).

[128] *Fei Wang*, 612 F. Supp. 3d at 752.

[129] D.I. 1 ¶¶ 28, 31, 42.

[130] *See Sarmont*, 254 N.E.3d at 501; *Lovgren*, 534 N.E.2d at 989; *Fei Wang*, 612 F. Supp. 3d at 752.

[131] D.I. 1 ¶¶ 37–38.

[132] *See Sarmont*, 254 N.E.3d at 501; *Lovgren*, 534 N.E.2d at 989.

133 We need not address whether FloSports acted with actual malice because Mr. Gharavi did not plead facts showing FloSports recklessly disregarded the falsity of the statements.

134 D.I. 1 ¶¶ 79–83.

135 Illinois law requires Mr. Gharavi plead facts allowing us to find: (1) the defendant's conduct was truly extreme and outrageous, (2) the defendant either intended his conduct would cause severe emotional distress or knew there was a high probability his conduct would do so, and (3) the defendant's conduct did in fact cause severe emotional distress. *Taliani v. Resurreccion*, 115 N.E.3d 1245, 1254 (Ill. App. Ct. 2018) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). But Texas requires "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

136 Restatement (Second) of Conflict of Laws § 145 (A.L.I. 1971).

137 D.I. 13 at 23.

138 D.I. 15 at 20.

139 *See Benton v. Little League Baseball, Inc.*, 181 N.E.3d 902, 926 (Ill. App. Ct. 2020).

140 *See id.*

141 *See Mufarreh v. Google, Inc.*, No. 25-1340, 2026 WL 1192276, at *2 (Ill. App. Ct. May 1, 2020).

142 *See Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016).

143 *See id.*

144 *Love*, 2024 WL 809107, at *12 (quoting *Benton*, 181 N.E.3d at 927).

145 D.I. 15 at 20.

146 *See Mufarreh*, 2026 WL 1192276, at *2–*4.

147 *Id.*

148 *Id.*

149 *Id.* at *3 (quoting *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251 (Ill. App. Ct. 1990)).

150 *Id.* at *2–*4.

151 *Id.* at *3 (quoting *Pavilon*, 561 N.E.2d at 1251).

152 D.I. 1 ¶¶ 84–91.

[153] Illinois law requires Mr. Gharavi to meet five elements: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or cause a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022) (quoting *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015)). But Texas requires: (1) a reasonable probability the plaintiff would have entered into a business relationship with a third person, (2) intentional interference with the relationship, (3) independently tortious or unlawful conduct, (4) the interference proximately caused the injury, and 5) actual damage or loss. *See Wayne Dolcefino and Dolcefino Commc'ns, LLC v. Chaudhary*, No. 14-22-724, 2023 WL 7141149, at *16 (Tex. Ct. App. Oct. 31, 2023) (citing *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)).

[154] Restatement (Second) of Conflict of Laws § 145 (A.L.I. 1971).

[155] D.I. 13 at 24.

[156] *Id.* at 25.

[157] D.I. 15 at 21.

[158] *Id.*

[159] *Brinley*, 580 F. Supp. 3d at 556 (quoting *Foster*, 806 F.3d at 971).

[160] *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d. 1126, 1133 (Ill. 2001); *Brinley*, 580 F. Supp. 3d at 556.

[161] *Muhammad v. Riverside Healthcare*, 2026 WL 1721197, *10–*11 (Ill. App. Ct. June 15, 2026).

[162] *Id.* at *16.

[163] *Id.* at *11.

[164] *Id.*

[165] *Id.* at *10–*11.

[166] D.I. 1 ¶¶ 85–86.

[167] *Id.* at ¶ 49.

[168] *Id.*

[169] *See Brinley*, 580 F. Supp. 3d at 557 (quoting *Foster*, 806 F.3d at 971).

[170] D.I. 1 ¶ 1.

---

[171] *Muhammad*, 2026 WL 1721197 at *11 (Ill. App. Ct. 2026) (citing *Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1020 (N.D. Ill. 2014); *U.S. Data Corp. v. RealSource, Inc.*, 910 F. Supp. 2d 1096, 1109 (N.D. Ill. 2012)).

[172] *See Intervisual Commc'ns, Inc. v. Volkert*, 975 F. Supp. 1092, 1103 (N.D. Ill. 1997) ("[s]imply offering proof of a past customer relationship is not sufficient to prove a 'reasonable expectation' of a future business relationship.") (quoting *Celex Grp., Inc. v. The Exec. Gallery*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995)).

[173] D.I. 1 ¶¶ 92–98.

[174] Illinois requires a showing of: (1) the existence of a valid and enforceable contract between the plaintiff and a third party, (2) defendant's awareness of the contractual relation, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of the contract by the third party caused by the wrongful conduct, and (5) damages. *HPI Health Care Servs., Inc., v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). But Texas requires: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) proximate cause to the injury, and (4) actual damage or loss. *Allegiance Expl., LLC v. Davis*, No. 2-13-0349, 2016 WL 1164331, at *15 (Tex. App. Mar. 24, 2016).

We note FloSports incorrectly stated Illinois law for tortious interference with contractual relations. D.I. 13 at 25. FloSports repeated Illinois law for tortious interference with prospective business relationships. But the standard is different. We direct FloSports to the appropriate Illinois law. *See HPI Health Care*, 545 N.E.2d at 676.

[175] Restatement (Second) of Conflict of Laws § 145 (A.L.I. 1971).

[176] D.I. 13 at 33.

[177] *Id.*

[178] D.I. 15 at 26–27.

[179] *Brinley*, 580 F. Supp. 3d at 539 (quoting *HPI Health Care, Inc.*, 545 N.E.2d at 676; *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018)).

[180] *Id.* at 556–57 (citing *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998)).

[181] *Id.*

[182] *Id.* at 557 (citing *Soderlund Bros., Inc. v. Carrier Corp.*, 663 N.E.2d 1, 8 (Ill. App. Ct. 1995)).

[183] *Muhammad*, 2026 WL 1721197, *10–11.

[184] *Id.* at *10.

[185] *Id.*

[186] *Id.*; *RSA Properties Mission Hills, P.C. v. Mission Hills Homeowners Ass'n*, 264 N.E.3d 1041, 1051–52, (Ill. App. Ct. 2024) (quoting *HPI Health Care*, 545 N.E.2d at 676).

[187] The facts proving tortious interference with contractual relationships overlap with the facts for tortious interference with prospective business relationships. We reasserting the allegations for clarity. *See supra* Section III.D.2; *see also Muhammad*, 2026 WL 1721197, at *10 ("'The torts of interference with contractual relations and interference with prospective economic advantage are closely related.'" (quoting *Philip I. Mappa Ints., Ltd. v. Kendle*, 554 N.E.2d 1008, 1011 (Ill. App. Ct. 1990)).

[188] D.I. 1 ¶ 1.

[189] *Muhammad*, 2026 WL 1721197, at *10; *RSA Properties*, 264 N.E.3d at 1051–52 (quoting *HPI Health Care*, 545 N.E.2d at 676).

[190] D.I. 1 ¶ 33.

[191] *Id.*

[192] *Id.* at ¶ 89.

[193] *Id.* at ¶ 51.

[194] *Muhammad*, 2026 WL 1721197, at *10.

[195] D.I. 1 ¶¶ 99–106.

[196] 815 ILCS 510/2(a)(8) ("[D]isparages the goods, services, or business of another by false or misleading representation of fact"); Tex. Bus. & Com. Code Ann. § 17.46(b)(8)("[D]isparaging the goods, services, or business of another by false or misleading representation of facts").

[197] D.I. 13 at 27.

[198] *Id.*

[199] D.I. 15 at 23.

[200] 815 ILCS 510/2(a)(8); *see* Tex. Bus. & Com. Code Ann. § 17.46(b)(8) ("[D]isparaging the goods, services, or business of another by false or misleading representation of facts").

[201] *Am. Med. Ass'n v. 3Lions Publ'g, Inc.*, No. 14-5280, 2015 WL 1399038, at *5 (N.D. Ill. 2015) (citing *Kole v. Vill. of Norridge*, 941 F.Supp.2d 933, 963 (N.D. Ill. 2013) (citation omitted)).

[202] *Lyssenko v. Int'l Titanium Powder, LLC*, No. 7-6678, 2008 WL 8625903, at *6 (N.D. Ill. 2008).

[203] *Mackie v. Awtry*, No. 14-9206, 2016 WL 5391182, at *1, *3 (N.D. Ill. 2016).

[204] *Id.* at *1.

[205] *Id.*

[206] *Id.*

[207] *Id.* at *3.

[208] *Id.*

[209] *Id.*

[210] *Id.*

[211] D.I. 1 ¶ 43. We recognize the distinction between sufficiently pleading facts allowing us to infer defamation as opposed to the Deceptive Trade Practices Act. Defamation requires Mr. Gharavi to plead facts allowing us to plausibly infer persons other than Mr. Gharavi and FloSports knew the social media posts referred to Mr. Gharavi. *Bryson*, 672 N.E.2d at 1218. But liability under Deceptive Trade Practices Act relates to harm to the business regardless of who may have heard or read the statement impugning his integrity. Mr. Gharavi does not plead facts allowing him to proceed on defamation but may proceed under the Deceptive Trade Practices Act. *See generally Mackie*, 2016 WL 5391182.

[212] D.I. 15 at 23; *Mackie*, 2016 WL 5391182, at *3; *see also Lyssenko*, 2008 WL 8625903, at *6.

[213] D.I. 1 ¶ 43.

[214] *Id.* ¶¶ 107–111.

[215] D.I. 13 at 28.

[216] *Id.* at 28–29.

[217] *Id.* at 29.

[218] D.I. 15 at 23.

[219] *Id.* at 24.

[220] *See* 17 U.S.C § 102(a) ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.").

[221] 17 U.S.C. § 512.

[222] *Sunny Factory, LLC v. Chen*, No. 21-3648, 2022 WL 742429, at *4 (N.D. Ill. Mar. 11, 2022) (quoting *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004)). Congress through section 512(f) of the Digital Millennium Copyright Act mandates in relevant part: "Any person who knowingly materially misrepresents under this section (1) that material or

activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for damages."

[223] *Sunny Factory*, 2022 WL 742429, at *4 (quoting *Rossi*, 391 F.3d at 1004–05).

[224] *Milo Enters., Inc. v. Bird-X, Inc.*, No. 18-6315, 2022 WL 874625, at *9 (N.D. Ill. Mar. 24, 2022); *see Sunny Factory*, 2022 WL 742429, at *4.

[225] *Sunny Factory*, 2022 WL 742429, at *4.

[226] *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, 730 F.Supp.3d 740, 752 (N.D. Ill. 2024) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).

[227] *Flava Works, Inc. v. Gunter*, No. 10-6517, 2013 WL 4734002, at *2 (N.D. Ill. Sep. 3, 2013).

[228] *Id.* (quoting Counterclaim ¶¶ 43–44).

[229] D.I. 1 at ¶ 30.

[230] *Id.* at ¶¶ 112–17.

[231] *See Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. Houston 1st Dist). Illinois requires: (1) unjust retainer of a benefit to the other party's benefit and (2) the retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care Servs.*, 545 N.E.2d at 679.

[232] Restatement (Second) of Conflict of Laws § 145 (A.L.I. 1971).

[233] Restatement (Second) of Conflict of Laws § 145(2)(b) (A.L.I. 1971).

[234] D.I. 13 at 37.

[235] *Id.*

[236] D.I. 15 at 31.

[237] *Id.* at 31–32.

[238] *Id.* at 31.

[239] *Brooks v. Wycough*, 737 S.W.3d 690, 704 (Tex. App. 2026) (quoting *Eun Bok Lee*, 411 S.W.3d at 111).

[240] *Eun Bok Lee*, 411 S.W.3d at 111; *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 283 (Tex. App. 2021).

[241] *HCL Techs. Ltd. v. Atos S.E.*, No. 23-868, 2024 WL 1076821, at *6 (N.D. Tex. Jan. 31, 2024) (quoting *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 378 (5th Cir. 2020)).

[242] *Baylor Scott*, 633 S.W.3d at 283 (collecting Texas cases where unjust enrichment is recognized as an independent cause of action); *but see Landers v. Landers*, No. 19-303, 2021 WL 1570011, at *8 (Tex. App. Apr. 22, 2021) (collecting Texas cases where unjust enrichment is not recognized as an independent cause of action).

[243] *Aguirre v. Powerchute Sports, LLC*, No. 10-702, 2011 WL 3359554 (W.D. Tex. Aug. 4, 2011).

[244] *Id.* at *1.

[245] *Id.* at *1–2.

[246] *Id.* at *10.

[247] *Id.*

[248] *Id.*

[249] *See Baylor Scott*, 633 S.W.3d at 283; *see also Aguirre*, 2011 WL 3359554, at *10 (construing the plaintiff's unjust enrichment claim as an independent cause of action).

[250] D.I. 13 at 37.

[251] *Aguirre*, 2011 WL 3359554, at *10.

[252] D.I. 1 ¶¶ 113–15.

[253] *HCL Techs.*, 2024 WL 1076821, at *6 (quoting *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 378 (5th Cir. 2020)).